UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLENE ROYCE, as parent and guardian of TIFFANY M. WHEELER, a Minor,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS R. WHEELER, LISA W. HUZELLA, and MICHAELON A. WRIGHT, each individually and as acting successor trustee of the Thomas M. Wheeler Revocable Trust, u/a dated April 9, 1986, as Amended and Restated, 43 WEST 64TH STREET LLC, a Michigan corporation, and WHEELER FAMILY FOUNDATION, INC., a Delaware nonprofit corporation,<br><br>Defendants,<br><br>– and –<br><br>KRYSTAL WHEELER,<br><br>Nominal Defendant. | Civil Action No.: 07-CV-10968 (RWS) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, New York 10036
Phone: (212) 832-8300
Facsimile: (212) 763-7600

*Attorneys for Defendants Thomas R. Wheeler, Lisa W. Huzella, Michaelon A. Wright, 43 West 64th Street LLC, and Wheeler Family Foundation, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 2

FACTUAL BACKGROUND ............................................................................. 4

ARGUMENT ...................................................................................................... 10

I.   THE COURT SHOULD DISMISS THE CASE FOR LACK OF
     SUBJECT MATTER JURISDICTION. ................................................ 10

     A.   This Court Lacks Jurisdiction Under the Probate Exception
          to Federal Diversity Jurisdiction. ................................................ 10

     B.   This Court Lacks Jurisdiction Under The *Princess Lida*
          Rule. ................................................................................................ 15

II.  THIS COURT SHOULD ABSTAIN FROM EXERCISING ITS
     JURISDICTION UNDER THE *COLORADO RIVER*
     DOCTRINE ............................................................................................ 18

     A.   Both Courts Seek To Assume Jurisdiction Over The Same
          Res. ................................................................................................. 19

     B.   Texas Is A More Convenient Forum for the Parties To
          Resolve the Challenge To The Trust. .......................................... 20

     C.   Abstention Will Avoid Piecemeal Litigation. ............................. 20

     D.   The Probate Court Action Was Filed Before the Federal
          Court Action ................................................................................... 21

     E.   Texas, Not Federal, Law Provides the Rule of Law. .................. 21

     F.   The Texas Probate Court Has Jurisdiction To Address All
          of Plaintiff's Claims. ..................................................................... 22

CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

**Page**

## CASES

*American Alliance Ins. Co. v. Eagle Ins. Co,*
    961 F. Supp. 652 (S.D.N.Y. 1997) ................................................................. 21

*APWU v. Potter,*
    343 F.3d 619 (2d Cir. 2003) ........................................................................ 10

*Arbaugh v. Y & H Corp.,*
    546 U.S. 500 (2006) .................................................................................. 10

*Augienello v. F.D.I.C.,*
    310 F. Supp. 2d 582 (S.D.N.Y. 2004) ......................................................... 10

*Bailey v. Cherokee County Appraisal Dist.,*
    862 S.W.2d 581 (Tex. 1993) ......................................................... 15, 18, 20

*Barnes v. Brandrup,*
    506 F. Supp. 396 (S.D.N.Y. 1981) ............................................... 12, 16, 17

*Beach v. Rome Trust Co.,*
    269 F.2d 367 (2nd Cir. 1959) ...................................................... 12, 17, 18

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) .................................................................... 18, 19, 22

*Donovan v. City of Dallas,*
    377 U.S. 408 (1964) .................................................................................. 19

*Georges v. Glick,*
    856 F.2d 971 (7th Cir. 1988) ..................................................................... 12

*Groman v. Cola,*
    Case No. 07 CV 2635, 2007 WL 3340922, at *5 (S.D.N.Y. Nov. 7, 2007) ................ 15

*In re Constr. of an Indenture of Trust,*
    36 A.D.2d 488 (1st Dep't. 1971) ............................................................ 14, 22

*Klaxon Co. v. Stentor Electric Manufacturing Co.* ........................................... 14

*Lefkowitz v. Bank of New York,*
    -- F.3d --, 2007 WL 1839756, at *4 (2d Cir. 2007) ................................... 11, 13

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000) ....................................................................... 10

*Marshall v. Marshall,*
    547 U.S. 293 (2006) .............................................................................. 10, 11

*Morin v. Blevins,*
    Case No. CV F 97-1061, 2007 U.S. Dist. LEXIS 95422 (E.D. Cal. Dec. 21, 2007) .... 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ................................................................................... 19, 22

*Oliver v. Oliver,*
    No. 98-1460,1999 U.S. App. LEXIS 9347. at *3-*5 (4th Cir. May 17, 1999) ............. 14

*Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,*
    490 F.2d 509 (2d Cir. 1973) ................................................................... 18, 19

*Princess Lida of Thurn and Taxis v. Thompson,*
    305 U.S. 456 (1939) .............................................................................. 16, 17

*Rousseau v. United States Trust Co. of New York,*
    422 F. Supp. 447 (S.D.N.Y. 1976) ............................................................... 18

*Terwilliger v. Terwilliger,*
    206 F.3d 240 (2d Cir. 2000) ...................................................................... 22

*United States v. Bank of New York Co.,*
    296 U.S. 463 (1936) ................................................................................ 19

*United States v. Cotton,*
    535 U.S. 625 (2002) ................................................................................ 10

*Village of Westfield v. Welch's,*
    170 F.3d 116 (2d. Cir. 1999) ..................................................................... 19

*Weingarten v. Warren,*
    753 F.Supp. 491 (S.D.N.Y. 1990) ................................................................ 12

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) .............................................................................. 19, 21

## STATUTES

Tex. Prob. Code Ann. § 128 (2007) .................................................................. 8
Tex. Prob. Code Ann. § 5(h) (2007) .............................................................. 17, 22
Tex. Prob. Code Ann. § 5A (b) (2007) ............................................................... 17

## SECONDARY SOURCES

*Black's Law Dictionary* 46 (8th ed. 2004) ............................................... 13, 14, 16
Restatement (Second) Conflict of Laws § 268 ....................................................... 14

Defendants Thomas R. Wheeler, Lisa W. Huzella, Michaelon A. Wright, 43 West 64th Street LLC, and the Wheeler Family Foundation, Inc. (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiff Charlene Royce ("Royce"), on behalf of her minor daughter Tiffany M. Wheeler ("Tiffany"), brings this action to challenge the distribution for the benefit of Tiffany by her late father, Thomas M. Wheeler ("Mr. Wheeler"), a Texas businessman who died in Florida on February 9, 2007. Mr. Wheeler left behind a last will and testament dated January 6, 2007 (the "Will"), and a third amended and restated trust agreement dated January 6, 2007, as amended on January 22, 2007 (the "Trust"), to address the disposition of his assets. The Will and Trust are being administered in Texas under Texas law, within the exclusive jurisdiction of the Texas Probate Court (hereinafter, the "Texas Probate Proceedings").

Under the terms of the Trust, Tiffany and her sister Krystal Wheeler ("Krystal", a nominal defendant) are each entitled to a fixed amount of $5 million to be held in trust. Royce seeks to challenge the Trust, asserting that under a prior version of the Trust, namely a January 6, 2007 version, Tiffany and Krystal were entitled to a fixed dollar amount of $5 million each *and* an interest in a condominium apartment located at 43 West 64th Street, New York, New York (the "Apartment"). Royce asserts further that under a 2002 version of the Trust, Tiffany and Krystal were entitled to essentially an equal share of the Trust assets with their half-siblings, Thomas R. Wheeler, Lisa W. Huzella and Michaelon Wright, Defendants in this case. Each version of the Trust contains a no-contest provision, which operates to disinherit any beneficiary who commences an action to challenge the validity of the Trust.

Seeking to cherry-pick certain provisions from prior versions of the Trust, Royce brought suit invoking this Court's diversity jurisdiction, asserting claims for, *inter alia,* a construction of the no-contest provision in the Trust, an accounting, declaratory judgment as to ownership of the Apartment, and a constructive trust over the Apartment. The Amended Complaint asserts that Royce was not aware that Mr. Wheeler's Will was offered for probate.[1] However, since filing this suit, Royce has been made aware that the Will was admitted to probate in the Statutory Probate Court #2 of El Paso County, Texas ("Texas Probate Court"), and that the probate administration is currently pending in Texas.

In addition to the ongoing probate proceedings, the Co-Trustees of the Trust also filed a Petition for Declaratory Judgment in the Texas Probate Court. The Petition for Declaratory Judgment seeks approval of an interim accounting by the Co-Trustees, which details the insolvency of the probate Estate and significant liquidity issues faced by the Co-Trustees of the Trust. The Petition also asks the Court to confirm that, in accordance with the provisions of the Will and Trust, the Co-Trustees have the authority and obligation to use Trust assets to pay the debts, taxes and liabilities of the insolvent Estate and request ratification of a plan by the Trustees to deal with ongoing liquidity concerns. Plaintiff has been provided with notice of the Petition for Declaratory Judgment, and has an opportunity to participate in the Texas proceedings where she can raise all of the issues in the Amended Complaint. Nevertheless, Plaintiff has refused to withdraw this action. This Court should dismiss this action with prejudice for the following reasons:

*First*, this Court lacks subject matter jurisdiction under the "probate exception" to federal diversity jurisdiction. Under settled principles of law, this action must be dismissed because

---

[1]      Plaintiff filed an initial Complaint on December 3, 2007. Plaintiff filed an Amended Complaint on December 19, 2007, which shall be referred to herein as "Amended Complaint" or "Am. Cmplt."

Plaintiff is effectively seeking to have this court administer the Trust and Estate, which operate in tandem, and Plaintiff's requested relief will "directly interfere" with the pending probate proceedings in Texas by exercising jurisdiction over Trust assets which are subject to the exclusive jurisdiction of the Texas Probate Court. Moreover, because the Will and Trust operate in tandem, a construction of the Trust by this Court will necessarily infringe upon the Texas court's authority to construe the terms of the Trust and reach a determination regarding matters arising in the course of the administration of the Trust and Estate.

*Second*, this Court lacks subject matter jurisdiction under the well-established doctrine of *custodia legis*, which prohibits a federal court from asserting jurisdiction over a suit involving a res already in the custody of a state court.

*Finally*, if this Court were to determine that it could exercise subject matter jurisdiction over this dispute, the Court should decline to exercise jurisdiction under the *Colorado River* doctrine in light of the pending state proceedings in Texas concerning the same res.

## FACTUAL BACKGROUND

Mr. Wheeler, a Texas resident, died on February 9, 2007 in Florida. *See* Affidavit of Amy Stewart Sanders, dated March 14, 2008, at ¶¶ 5, 6 (hereinafter "Sanders Aff. ¶ []").
Mr. Wheeler left behind a will, dated January 6, 2007, which directed his personal representatives to first pay all of the debts, funeral and administrative expenses, and taxes related to his Estate and then deposit remaining assets into the Trust, which directed the disposition of his assets. Sanders Aff. ¶ 7, 8. As set forth in further detail below, the Will and Trust operate in tandem, with the Trust being used as a will substitute. *Id.* ¶ 10.

**Personal and Business Contacts with Texas**

Mr. Wheeler was a successful businessman and entrepreneur who had his principal residence in El Paso, Texas. *See* Affidavit of Robert T. Howard, dated March 14, 2008, at ¶¶ 4, 5 (hereinafter "Howard Aff. ¶ []"). Mr. Wheeler started the company now known as TMW Enterprises, Inc. ("TMW Enterprises," formerly known as Electro-Wire Products, Inc. ("Electro-Wire") in the early 1980s. *Id.* ¶ 5. From its inception through the sale of principally all of the operating assets in 1995, the company maintained its principal manufacturing headquarters in El Paso, Texas. *Id.* ¶ 6. From its headquarters, the company operated eight plants in Mexico, three in El Paso, and approximately five others around the U.S. and one in Canada. *Id.*

After selling the core operations of Electro-Wire, the successor company was renamed TMW Enterprises and engaged in a variety of business and real estate ventures. *Id.* ¶ 8. Separate from TMW Enterprises, Mr. Wheeler and his Trust engaged in different business activities, including the acquisition of certain businesses in El Paso, Texas, which were subsequently combined into what is today known as Millennium Plastics Technologies, LLC ("Millennium"). *Id.* ¶ 9. Millennium employs approximately one hundred people and operates from leased facilities in El Paso, Texas. *Id.* From the inception of Electro-Wire and up until his death, Mr. Wheeler had been actively involved as Chairman or Vice Chairman of the company. *See* Affidavit of Donald R. Brooks, dated March 14, 2008, at ¶ 4 (hereinafter "Brooks Aff. ¶ []").

Since approximately early 2006, Mr. Wheeler had been receiving treatment for kidney cancer. Brooks Aff. ¶ 10. Mr. Wheeler responded well to treatment and continued to operate his business and personal affairs. *Id.* ¶¶ 10-12. In or around September of 2006, Mr. Wheeler sought cancer treatment at the Mayo Clinic in Arizona. *Id.* ¶ 11. To avoid staying at a hotel, Mr.

Wheeler stayed at the Arizona vacation home of his son, Thomas R. Wheeler, in Fountain Hills, Arizona. *Id.*

In late January or early February 2007, with his doctor's permission, Mr. Wheeler traveled to Florida with the intention of buying property and to attend the Super Bowl with friends. *Id.* ¶ 13. During this visit, Mr. Wheeler discussed his business interests, and the administration of the Will and Trust, with his close business associate. *Id.* ¶ 14. Approximately a day after arriving in Juno Beach, Florida, Mr. Wheeler suddenly became ill and died on February 9, 2007. *Id.* ¶ 15.

**The Decedent's Will and Trust**

Mr. Wheeler initially created the Trust agreement on April 9, 1986, for the benefit of himself as the Settlor, during his lifetime, and for the benefit of the named beneficiaries upon his death. *See* Affidavit of Patryk J. Chudy, dated March 14, 2008, at ¶ 9 (hereinafter "Chudy Aff. ¶ []") (Exh. 7 ¶ 1.3).[2] The Trust was established in the State of Michigan and was to be governed by Michigan law. The Trust was revocable and amendable during Mr. Wheeler's lifetime and irrevocable upon his death. At that time, Mr. Wheeler had only three children, Thomas R. Wheeler, Lisa W. Huzella, and Michaelon A. Wright ("older children"), the individual defendants herein. The Trust provided for his three children and his only wife, Nancy. Chudy Aff. ¶ 9 (Exh. 7 ¶¶ 3.1, 4.1-4.4).

Mr. Wheeler's Trust was restated on December 14, 1995, to include a $2,000,000 distribution for the benefit of each of his daughters from his relationship with Royce (*i.e.*, Tiffany and Krystal). Chudy Aff. ¶ 8 (Exh. 6 ¶ 2.1). Shortly after the restatement, the Trust was amended on April 15, 1996, to include a no-contest clause which limits the distribution to any

---

[2] The Defendants have submitted the Chudy Affidavit with accompanying exhibits for *in camera* review and have requested permission to have it filed under seal.

beneficiary challenging the validity of the Trust or Will to $10,000.  Chudy Aff. ¶ 7 (Exh. 5 ¶ 2.1(f)).

From 1996 to 2007, Mr. Wheeler made numerous changes to the dispositive scheme under the Will and Trust, including changes in the amounts to be distributed to the Wheeler Family Foundation, Inc. (the "Foundation"), to his older children, to Tiffany and Krystal, to his brothers, friends and daughter-in-law, Patcy Wheeler.  Mr. Wheeler also made changes to the situs of the Trust and the governing law.  Despite these changes, certain provisions of the Will and Trust remained consistent over time, including the provisions which gave the Co-Trustees the authority to change the situs and governing law of the Trust, the authority and obligation of the Co-Trustees to pay expenses of the Estate if so directed by the personal representative, and the existence of a no-contest clause.  *See generally* Chudy Aff. ¶¶ 3-6.

The Will dated January 6, 2007 and the Trust amendment dated January 22, 2007 reflect Mr. Wheeler's final intent with respect to the disposition of his assets.  Sanders Aff. ¶ 7; Chudy Aff. ¶ 2.  The Will and Trust also reflected Mr. Wheeler's intent to relocate to Florida, and provided that Florida law shall govern the administration of the Estate.  *See* Brooks Aff. ¶ 16; Chudy Aff. ¶ 5 (Exh. 3 ¶ 10B(5)); Sanders Aff. ¶ 7 (Exh. 5 ¶ Introduction).  Consistent with prior versions, the Trust granted the authority to the Co-Trustees to change the situs and governing law of the Trust.  Chudy Aff. ¶ 5 (Exh. 3¶ 10B(6)).  The Will and Trust also contained the interlocking features of prior versions.  For example, the Will and Trust each provide for the use of Trust assets for the payment of debts, expenses and bequests under Mr. Wheeler's Will, if the Estate has insufficient assets.  *See* Chudy Aff. ¶ 4 (Exh. 2 ¶ 2A(3)); Chudy Aff. ¶ 5 (Exh. 3 ¶ 10A(4)); Sanders Aff. ¶ 7 (Exh. 5 ¶ 8A(1)(e)).  The Will and Trust each include interlocking no-

contest provisions which specifically reference a challenge to the Will or the Trust.  *See* Chudy

Aff. ¶ 5 (Exh. 3 ¶ 10B(*)); Sanders Aff. ¶ 7 (Exh. 5 ¶ 8B(4)).

## Administration of the Trust and Estate in Texas

Shortly after Mr. Wheeler's death, the Co-Executors and Co-Trustees began making

arrangements to administer the Estate and Trust, including the collection and disposition of

assets, payment of taxes, debts and liabilities.  Sanders Aff. ¶ 17.  Because Mr. Wheeler's intent

to relocate to Florida was not realized, the Co-Executors properly initiated probate proceedings

in El Paso County, Texas, Mr. Wheeler's domicile at the time of his death.  Brooks Aff. ¶¶ 16,

18.  Mr. Wheeler had lived in El Paso for the preceding twenty years, where he owned property,

paid Texas real property taxes, was registered to vote, and had a Texas driver's license.  Sanders

Aff. ¶ 6.  Although Mr. Wheeler had traveled to Florida to acquire property, he died before

establishing a residence or acquiring any other property.  Brooks Aff. ¶ 16.

On May 29, 2007, the Co-Executors of Mr. Wheeler's estate submitted his will to probate

in the Statutory Probate Court #2 of El Paso Country, Texas.  Sanders Aff. ¶ 18.  Although the

Amended Complaint alleges that Plaintiff was not notified of any pending probate proceedings,

Texas law at the time of filing did not require that all potential beneficiaries be notified.  Tex.

Prob. Code Ann. § 128 (2007).  In lieu of formal notice, the provisions of the Will and Trust, as

they relate to Royce, Tiffany and Krystal, were made known to them.  Duerr Aff. ¶ 6-7.  Indeed,

Royce was provided with copies of the Trust documents, including prior versions, pursuant to a

confidentiality agreement.  *See id.* at 7.

Plaintiff was represented by different counsel at that time, and was negotiating with the

Co-Trustee's counsel regarding temporary occupancy of the Apartment until November 2007,

when the Royce Group would move to another residence they planned to purchase.  Duerr Aff.

¶¶ 6-12.  Plaintiff did not assert any of the claims or arguments now set forth in the pleadings before this Court.  Duerr Aff. ¶ 12.

Since the filing of the application for probate on May 29, 2007, the Texas probate proceedings have been moving forward.  The probate court admitted the will to probate and granted testamentary letters on June 25, 2007.  Sanders Aff. ¶ 19.  On February 11, 2008, the Co-Executors filed an inventory, appraisement and list of claims in the Texas Probate Court, which the court approved on February 12, 2008.  Sanders Aff. ¶¶ 21-22.

Pursuant to the change of situs provisions in the Trust and consistent with the commencement of the Texas probate proceeding, the Co-Trustees elected to administer the Trust in Texas, under Texas law.  Sanders Aff. ¶ 16.  On February 19, 2008, the Co-Trustees filed a Petition for Declaratory Judgment ("Petition") for approval of an interim accounting.  Sanders Aff. ¶ 23.  The accounting details the assets of the probate Estate, which include approximately $2,400,000 of primarily illiquid assets and liabilities in the form of loans (secured by Trust assets) from a commercial lender totaling almost $12,000,000.  The Petition also asks the Texas Probate Court for (i) a determination that the Co-Trustees have the authority and obligation to use Trust assets to satisfy the liabilities of the Estate under Sections 10A(4) and 10A(5) of the Trust and Section 8A(1)(e) of the Will; and (ii) a ratification of a loan from Triple L Partners LP (a company partially owned by the Trust) which is necessary to provide liquidity for the payment of taxes, debts, and ongoing administration expenses.  Sanders Aff. ¶¶ 25, 27.

In connection with the Petition, the probate court appointed a *guardian ad litem* for Tiffany on or about February 21, 2008.  Sanders Aff. ¶ 32.  A hearing on the Petition for Declaratory Judgment is set before the probate court on April 2, 2008.  Sanders Aff. ¶ 29.  The

Texas Probate Court has jurisdiction to entertain all of the Plaintiff's claims made in the Amended Complaint regarding the validity of Trust and Will.  Sanders Aff. ¶ 36.

## ARGUMENT

## I.    THE COURT SHOULD DISMISS THE CASE FOR LACK OF SUBJECT MATTER JURISDICTION.

"[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002).

In passing on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "[t]he Court may decide the matter on the basis of affidavits [and] other evidence and no presumptive truthfulness attaches to the complaint's jurisdictional allegations." *Augienello v. F.D.I.C.*, 310 F. Supp. 2d 582 (S.D.N.Y. 2004) (Sweet, J.).  Once challenged, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks and brackets omitted).

### A.    This Court Lacks Jurisdiction Under the Probate Exception to Federal Diversity Jurisdiction.

Royce has invoked the jurisdiction of this Court solely on the basis of diversity of citizenship.  Am. Cmplt. ¶ 22.  The Supreme Court, however, has "recognized a 'probate exception'…to otherwise proper federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 308 (2006).  This exception prohibits federal courts from, *inter alia*, "interfer[ing]" with pending

state probate proceedings by exercising jurisdiction over matters relating to a decedent's estate.

*Id.* at 311. Thus, a federal court must decline jurisdiction when it is asked to probate or annul a

will, administer a decedent's estate, or "dispose of property that is in the custody of a state

probate court." *Id.* at 312. *See also Lefkowitz v. Bank of New York*, -- F.3d --, 2007 WL

1839756, at *4 (2d Cir. 2007) (holding, *inter alia*, that dismissal was proper under the probate

exception where plaintiff attempted to "mask in claims for federal relief her complaints about the

maladministration of her parent's estates, which have been proceeding in probate courts").

The Supreme Court recently clarified the scope of the probate exception in *Marshall*, the

first probate exception case to reach the Supreme Court since 1946. In that case, J. Howard

Marshall died leaving his estate to his son, E. Pierce Marshall ("Pierce"), through a living trust

and a "pour-over" will. *Marshall*, 547 U.S. at 300. While probate proceedings were pending in

Texas, the deceased's wife, Vickie Lynn Marshall ("Vickie" a/k/a Anna Nicole Smith) initiated

bankruptcy proceedings in California. *Id.* Pierce filed a proof of claim in those bankruptcy

proceedings claiming that Vickie had defamed him. *Id.* Vickie's answer asserted truth as a

defense and included a compulsory counterclaim alleging that Pierce had interfered with an

expected gift. *Id.* at 301. After a trial on the merits, the bankruptcy court ruled for Vickie

awarding her over $500 million in compensatory and punitive damages. *Id.* Post-judgment,

Pierce unsuccessfully moved to dismiss, challenging the court's subject matter jurisdiction under

the probate exception. *Id.* Pierce appealed to the Ninth Circuit, which reversed the District

Court's decision and dismissed the claims under the probate exception. The Supreme Court

granted certiorari.

In analyzing the scope of the probate exception, the Supreme Court held that "the probate

exception reserves to state probate courts the probate or annulment of a will and the

11

administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.* at 311-12. The Supreme Court added that "when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res." *Id.* at 311. Ultimately, the Supreme Court held that the probate exception did not apply to the facts in the case before it because the petitioner asserted a tort claim against the beneficiary of an estate, seeking only an *in personam* judgment. *Id.* at 312.

The Supreme Court also declined to limit the applicability of the probate exception to wills, rather than trusts, in spite of briefing and oral argument advocating for this distinction.[3] *See* Transcript of Oral Argument at 18-19, *Marshall*, 547 U.S. 293 (No. 04-1544); Reply Brief of Petitioner, *Marshall*, 547 U.S. 293 (No. 04-1544); Brief for Heirs, Inc. as Amici Curiae Supporting Petitioner, *Marshall*, 547 U.S. 293 (No. 04-1544); *see also Georges v. Glick*, 856 F.2d 971, 974 n.2 (7th Cir. 1988) ("The plaintiffs argue that the probate exception is inapplicable here because this action relates to the execution of an inter vivos trust, not to a will. We reject such a *per se* rule.").

Unlike the facts in *Marshall*, the Plaintiff here does not seek an *in personam* judgment under "'widely recognized tort[s]' such as breach of fiduciary duty or fraudulent

---

[3] Prior to *Marshall*, some courts in this District have suggested that the probate exception does not apply to trusts. *See Barnes v. Brandrup*, 506 F. Supp. 396, 399 (S.D.N.Y. 1981) (asserting jurisdiction where the action involved a trust rather than a will since "[c]ontroversies concerning trusts were not in 1789 part of the exclusive jurisdiction of the ecclesiastical courts"); *see also Weingarten v. Warren*, 753 F.Supp. 491, 494 (S.D.N.Y. 1990) ("The probate exception to diversity jurisdiction does not apply to trusts.") (citing *Barnes*, 506 F.Supp. at 399). These courts have based this assertion in reliance on the Second Circuit decision in *Beach v. Rome Trust Co.*, which held that "it was early established that as to controversies that were not then [in 1789] regarded as probate matters federal jurisdiction could not be ousted by mere internal arrangement of the state courts." *See* 269 F.2d 367, 373 (2nd Cir. 1959). The Court in *Beach* applied the probate exception to decline jurisdiction over the claim for an accounting of the trust and removal of the trustee of an estate being administered by the probate court since "an accounting has not yet been had of the estate itself, and since any full accounting of the trust assets at this time would necessarily anticipate and interfere with it." *Id.* at 371. In fact, the relevant language referred to the inapplicability of the probate exception where the plaintiff was "merely seeking a judgment *in personam* declaring the plaintiff entitled to receive from the fiduciary an interest in the estate." *Id.* at 372.

misrepresentation," *Lefkowitz*, 2007 WL 1839756, at *5. Rather, Plaintiff here is asking that this Court invalidate certain provisions and amendments to a Trust which dispose of Mr. Wheeler's assets as directed by his Will, construe the no-contest provision to declare that Plaintiff is entitled to discovery regarding the preparation and execution of the Trust, impose a constructive trust over the Apartment, and order the Trustees to provide an accounting. Am. Cmplt. ¶¶ 85, 87, 89, 91. Thus, Plaintiff here is asking the Court to do precisely what *Marshall* indicated that federal courts do not have the authority to do under the probate exception -- to probate or annul a will, administer a decedent's estate, or "dispose of property that is in the custody of a state probate court." *Marshall*, 547 U.S. at 311-12. Plaintiff's Amended Complaint must be dismissed under both prongs of the *Marshall* test.

*First*, the relief sought by Plaintiff in this action effectively asks this Court to administer the Trust and Estate. In *Morin v. Blevins*, Case No. CV F 97-1061, 2007 U.S. Dist. LEXIS 95422 (E.D. Cal. Dec. 21, 2007), the court addressed the precise question whether a request to construe a no-contest provision of a Trust and to order an accounting falls within the scope of the probate exception. The court concluded that "[c]onstruction of trust instruments and the power to compel an accounting lie at the heart of the probate court's jurisdiction over the administration of trusts," and thus dismissed a diversity action under the probate exception. *Id*. at *8. The same rationale mandates dismissal of this case as well.

The Plaintiff here further seeks to challenge the validity of an amendment and an amended restatement to the Trust. Am. Cmplt. ¶ 85, 87. Determining whether a will is valid or invalid is a purely probate matter. *Black's Law Dictionary* 1239 (8th ed. 2004) (defining probate as "the judicial procedure by which a testamentary document is established to be a valid will"). Because the Will and Trust operate in tandem, and insofar as the validity of the last

13

amendments turns on, *inter alia*, their due execution, Plaintiff is effectively challenging the validity of the Will as well as the Trust.

*Second*, the relief Plaintiff seeks squarely interferes with the administration of Mr. Wheeler's estate. Administering an estate involves the collection of the decedent's assets, the liquidation of liabilities, payment of taxes, and finally the distribution of property to heirs. *See, e.g., Oliver v. Oliver*, No. 98-1460, 1999 U.S. App. LEXIS 9347 at *3-*5 (4th Cir. May 17, 1999) (unpublished decision); *Black's Law Dictionary* 46 (8th ed. 2004). Mr. Wheeler's Will gives the Co-Executors the authority to require the Co-Trustees of the Trust to pay debts, administration expenses and taxes if the Estate lacks sufficient funds. Sanders Aff. ¶ 7 (Exh. 5 at ¶¶ 2A, 2B, 8A(1)(b), (c), (e)). The Trust reiterates this direction in similar fashion and also requires the Co-Trustees to distribute assets from the Trust to satisfy the pecuniary bequests in the Will if the Estate has insufficient assets to do so. If this Court asserts jurisdiction over the Trust, the interlocking provisions of the Will and Trust make continued administration of the Estate impossible. The payments of debts and taxes, as contemplated by the Will and the Trust, cannot be accomplished.

The Plaintiff further asks the court to interfere with property already subject to the exclusive jurisdiction and control of the Texas probate court. Under Texas law,[4] the probate court already had exclusive jurisdiction over the Trust at the time the Amended Complaint was filed, because once the Texas Probate Court asserted jurisdiction over Mr. Wheeler's Estate, it

---

[4] Under *Klaxon Co. v. Stentor Electric Manufacturing Co.*, a federal court sitting in diversity will apply the choice-of-law rules for the state in which it is situated. 313 U.S. 487, 496 (1941). Applying New York choice-of-law rules, the court would first look to see if the instrument specified a particular state's substantive law. In this case, the Trustees exercised their right under paragraph 10B(6) of Trust to change the situs of the Trust and the governing law. This election is permissible and enforceable under New York law. *See, e.g., In re Constr. of an Indenture of Trust*, 36 A.D.2d 488, 490 (1st Dep't 1971). Even without the election of Texas Law, the default choice-of-law would be "construed…in accordance with the rules of construction of the state which the testator or settler would probably have desired to be applicable." Restatement (Second) Conflict of Laws § 268(2)(b).

gained exclusive jurisdiction over all matters "incident to [Mr. Wheeler's] estate," including the Trust. *See Bailey v. Cherokee County Appraisal Dist.*, 862 S.W.2d 581, 586 (Tex. 1993). Texas law likewise obligates the Trust to pay the liabilities of the Estate if the latter lacks sufficient funds. Tex. Prop. Code. Ann. § 112.035 (2007). In addition, the assets of the Trust are indispensable to a proper administration of Mr. Wheeler's estate, since the Trust and Will operate in tandem, with the Trust operating as a will substitute. Mr. Wheeler's Will provides for the payment of expenses, debts and taxes and then directs all remaining assets to be placed in the Trust. Sanders Aff. ¶ 7. Mr. Wheeler's Will thus incorporates the Trust by reference; neither document can stand alone.

Plaintiff also asks for a declaration as to the ownership of the Apartment, seeking to impose a constructive trust over the Apartment. Am. Cmplt. ¶¶ 93-94. That relief would likewise "directly interfere" with the proceedings pending in the Texas Probate Court, because Plaintiff is effectively seeking a determination as to ownership of Trust property, where the Trust and Estate are being administered under Texas law. Where, as here, a Plaintiff seeks a "claim for declaratory judgment as to certain assets of the estates," the claims must be dismissed under the probate exception. *Groman v. Cola*, Case No. 07 CV 2635, 2007 WL 3340922, at *4-5 (S.D.N.Y. Nov. 7, 2007) (noting that "a dispute about the proper valuation of an estate asset in a sale by the Estate's executors," was subject to the probate exception and thus barred the exercise of subject matter jurisdiction).

Because each of these requests falls squarely within the contours of the probate exception, this Court must dismiss the action for lack of subject matter jurisdiction.

### B.    This Court Lacks Jurisdiction Under The *Princess Lida* Rule.

This Court also lacks subject matter jurisdiction under the well-settled doctrine of *custodia legis* articulated by the Supreme Court in *Princess Lida of Thurn and Taxis v.*

*Thompson*, 305 U.S. 456 (1939). *Princess Lida* held that a federal court *must* decline jurisdiction when "two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation" already pending in a state court. *Princess Lida*, 305 U.S. at 466. *Princess Lida* involved a challenge to an *inter vivos* trust established to provide alimony and support payments for an ex-spouse. *Id.* at 458-59. The Court held that it was "necessary to the harmonious cooperation of state and federal tribunals" that once jurisdiction attached in the state court to decide the disposition of property, federal courts could not interfere with regard to that same property. *Id.* at 466. *Princess Lida* is "not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." *Id.* In fact, the case at bar very closely mirrors the facts of *Princess Lida* since both cases involve a challenge to an *inter vivos* trust while state proceedings are pending.

*First, Princess Lida* applies when both suits are in rem or quasi in rem, but does not bar parallel proceedings for suits seeking an *in personam* judgment. *Id.* A suit is in rem if it involves "the status of a thing, and therefore the rights of persons generally with respect to that thing." *Black's Law Dictionary* 809 (8th ed. 2004). Here, Plaintiff's claims are plainly in rem or quasi in rem because they seek to attack the validity of the Trust and the rights to Trust assets, and ask the Court to impose a constructive trust over the Apartment.

*Second, Princess Lida* applies when the state court proceeding was filed first and the state court continues to exercise jurisdiction over the res. *Barnes v. Brandrup*, 506 F. Supp. 396, 400 (S.D.N.Y. 1981). In this case, the probate proceedings were initiated on May 29, 2007, and were

pending when the federal action was first filed in December of 2007. Sanders Aff. ¶ 18. Under Texas law, when the Texas probate court assumed jurisdiction over the probate of the Will and issued testamentary letters, it also assumed jurisdiction to settle all matters "appertaining to an estate" which includes "generally all matters relating to the collection, settlement, partition, and distribution of estates of deceased persons." Tex. Prob. Code Ann. §§ 5(h), 5A (b) (2007). Here, as in *Princess Lida*, "the jurisdiction of the court attaches . . . over all the matters which fall within its supervisory control of the administration of the estate." *See Princess Lida*, 305 U.S. at 463.

*Finally*, the state proceedings must be effective and exclusive for *Princess Lida* to bar federal jurisdiction based on diversity. *Barnes*, 506 F. Supp at 400. To determine whether the probate court is "effective," courts look to whether the probate court can carry out "all powers necessary to adjudicate all claims." *Barnes*, 506 F. Supp. at 403. In *Barnes*, for example, the Connecticut probate court was not empowered to award money damages or adjudicate the type of complex claims involved in the case. This limited grant of jurisdiction to Connecticut probate courts rendered the probate court an ineffective forum for adjudication. Here, however, the Texas Probate Court has a broad grant of jurisdiction which includes the power to adjudicate all matters "appertaining to an estate." Tex. Prob. Code Ann. § 5A (b) (2007). This grant of jurisdiction would allow the Texas Probate Court to render full relief for the allegations in the Amended Complaint. Sanders Aff. ¶ 36.

Moreover, dismissal under the *Princess Lida* doctrine is appropriate if a state court with concurrent jurisdiction would lack jurisdiction over the matter by virtue of the primary jurisdiction of probate courts. *Beach v. Rome Trust Co.*, 269 F.2d 367, 371-72 (2nd Cir. 1959); *see also Rousseau v. United States Trust Co. of New York*, 422 F. Supp. 447, 457 (S.D.N.Y.

1976) (applying *Princess Lida* where the probate court had primary, but concurrent, jurisdiction over the trust at issue). The district courts in Texas are required to decline jurisdiction "[b]ecause the administration was already pending in the county court [sitting in probate] when this suit was filed." *See Bailey*, 862 S.W.2d at 586.

The Amended Complaint must be dismissed under *Princess Lida* because the two suits are in rem, the state court proceedings were pending at the time of the federal filing, and the state court can exercise jurisdiction effectively and exclusively to resolve the matter. Under these circumstances, *Princess Lida* does not permit a federal court to dismiss a case, it requires it. *See Beach*, 269 F.2d at 367.

## II.    THIS COURT SHOULD ABSTAIN FROM EXERCISING ITS JURISDICTION UNDER THE *COLORADO RIVER* DOCTRINE.

Even if this Court determined that it could exercise subject matter jurisdiction, it should decline to exercise jurisdiction here under the abstention doctrine articulated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976). *Colorado River* abstention applies when parallel contemporaneous proceedings are brought in state and federal court. "These principles rest on considerations of '[wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817. The *Colorado River* "exceptional circumstances" test weighs the justifications for abstention against the "the virtually unflagging obligation to exercise jurisdiction." *Id.* at 817.

The application of abstention is particularly strong when the matter is "on the verge" of the probate exception, because these cases "raise issues in which the states have an especially strong interest and a well-developed competence for dealing with them." *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir. 1973) (internal quotations omitted). Furthermore, "[i]n the declaratory judgment context, the normal principle that federal

courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Here, the Amended Complaint primarily seeks declaratory relief regarding the validity of certain amendments to the Trust and the identity of the Trustees. Am. Cmplt., Prayer for Relief (a)-(c), (f). Under *Wilton*, this Court has "greater discretion" to abstain than ordinarily available. *See Wilton*, 515 U.S. at 286. To the extent there is any question about the propriety of federal jurisdiction, there can be no dispute that the Texas court is in a better position to address the Texas law issues relating to property within that court's jurisdiction.

The Second Circuit has listed the relevant factors to consider in an abstention analysis as: "(1) the assumption by either court of jurisdiction over any res or property, (2) the inconvenience of [the] federal forum, (3) avoidance of piecemeal litigation, (4) order in which jurisdiction was obtained, (5) whether state or federal law provides the rule of decision, and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction." *Village of Westfield v. Welch's*, 170 F.3d 116, 121 (2d. Cir. 1999) (citing *Colorado River*, 424 U.S. at 818; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-26 (1983)). In light of the discretion afforded by *Nizer* and *Wilton*, and the clear law of Texas, the *Colorado River* test weighs strongly in favor of abstention in this case.

### A.    Both Courts Seek To Assume Jurisdiction Over The Same Res.

When both the state and federal proceedings seek to assert control over the same res, abstention is particularly appropriate. In fact, the Supreme Court has held that "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colorado River*, 424 U.S. at 818 (citing to *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964)); *Princess Lida*, 305 U.S. at 466; *United States v. Bank of New York Co.*, 296 U.S. 463, 477 (1936). In this case, the Texas probate court assumed jurisdiction over the Trust with

the filing of the Will since the Trust is "incident to the estate." *See Bailey*, 862 S.W.2d at 585. Because Mr. Wheeler (prior to his death), pledged assets of the Trust as collateral to secure the loans, and the Trust is liable for the obligations of the Estate, the Texas court has had jurisdiction over the assets since May 2007. Thus, the Amended Complaint concerns the Trust which is already subject to adjudication by the Texas court.

### B.    Texas Is A More Convenient Forum for the Parties To Resolve the Challenge To The Trust.

Is it more convenient to resolve this dispute in Texas, where the Estate and Trust are being administered. The Texas probate proceedings will move forward, and it is more convenient to resolve all of the issues before one court—the Texas court, which will apply Texas law.

### C.    Abstention Will Avoid Piecemeal Litigation.

This Court cannot provide full relief to the Plaintiff without a parallel declaratory judgment or ruling by the Texas Probate Court. In contrast, the Texas court will proceed with the administration of the Estate and determine the obligations of the Trust, and can resolve *all* issues raised. Sanders Aff. ¶ 36. Here, the Plaintiff asks the Court to determine and declare "that Plaintiff may pursue discovery and other proceedings with respect to the validity of said documents without triggering or violating the *in terrorem* clauses therein." Am. Cmplt. ¶ Prayer for Relief (a). However, a ruling on the *in terrorem* clause in the Trust would interfere with the pending probate matter since the Trust and the Will contain interlocking provisions.[5] The clause

---

[5] The *in terrorem* clause in the January 22, 2007 Trust provides, in relevant part:

If any beneficiary under this Trust Agreement commences an action in any court challenging the validity of the Settlor's Will, this Trust Agreement, or any other trust agreement created by the Settlor or joins with others to challenge the validity of the Settlor's Will, this Trust Agreement, or any other trust agreement created by the Settlor, then all distributions under this Trust Agreement to or for the benefit of such person or such person's descendants shall lapse, such person and such

in the Will provides that any challenge to the Will or the Trust would result in forfeiture of the bequest. Sanders Aff. ¶ 7 (Exh. 5 ¶ 8B(4)). Therefore, the Plaintiff's prayer to proceed with discovery and construe the *in terrorem* clause of the Trust, would necessarily impact the proceedings in the state probate court. In light of *Wilton*, the avoidance of piecemeal litigation "becomes an even weightier factor favoring abstention." *American Alliance Ins. Co. v. Eagle Ins. Co*, 961 F. Supp. 652, 658 (S.D.N.Y. 1997).

### D.    The Probate Court Action Was Filed Before the Federal Court Action.

The Probate Court assumed jurisdiction over the matter almost seven months before the Plaintiff filed suit in federal court. The Probate Court action was filed on May 29, 2007, in the El Paso County Probate Court. Sanders Aff. ¶ 18. The federal filing did not occur until December 3, 2007. During the interim, the Texas Probate Court issued letters testamentary, and the administration of the Trust and Estate are proceeding in Texas, under Texas law. *See* Sanders Aff. ¶¶ 16-34. On the other hand, the federal case has not progressed beyond the pleadings stage.

### E.    Texas, Not Federal, Law Provides the Rule of Law.

This matter does not involve a question of federal law. Not only will this Court be required to apply state law, but it must apply Texas state law. *See generally supra* footnote 3.

---

person's descendants shall be deemed to have predeceased the Settlor for all purposes under this Trust Agreement, and such person shall not be a Trustee under this Trust Agreement.

Chudy Aff. ¶ 5 (Exh. 3 ¶ 10B(8)). The *in terrorem* clause in the January 6, 2007 will, in the custody of the Texas Probate Court, provides, in relevant part:

If any beneficiary under this Will commences an action in any court challenging the validity of this Will or the Trust Agreement or joins with others to challenge the validity of this Will or the Trust Agreement in any such action, then all distributions under this Will to or for the benefit of such person shall lapse, such person and such person's descendants shall be deemed to have predeceased me for all purposes under this Will, and such person shall not be my Personal Representative.

Sanders Aff. ¶ 7 (Exh. 5 ¶ 8B(4)).

21

Here, the Co-Trustees elected to designate Texas law to govern the instrument, effective February 9, 2007. This election was authorized under paragraph 10B(6) of the January 6, 2007 Trust and is enforceable under New York law. *See, e.g., In re Constr. of an Indenture of Trust*, 36 A.D.2d 488, 490 (1st Dep't. 1971). If an agreement contains a choice-of-law provision, "[a]s a general rule, choice of law provisions . . . are valid and enforceable in [New York]." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000).

### F.    The Texas Probate Court Has Jurisdiction To Address All of Plaintiff's Claims.

The Texas Probate Court has jurisdiction to effectively grant the relief sought because the Texas Probate Code extends the jurisdiction of the probate courts to include all matters "appertaining to an estate." Tex. Prob. Code Ann. § 5(h) (2007). In this case, apart from the Decedent, none of the parties to the suit are Texas residents. Therefore, the danger of the Texas Probate Court having bias against an out-of-state litigant is no more compelling with regard to the Plaintiff than with any of the out-of-state Defendants. It is unlikely that Texas has a strong public policy in favor of either side with regard to the validity of the amendments to the Trust. *Cf. Moses H. Cone*, 460 U.S. at 26-27 (surmising that the plaintiff stood no chance of obtaining a state court order compelling arbitration due to strong public policy against arbitration prevalent at that time in the state).

*    *    *    *    *

In sum, the *Colorado River* factors weigh heavily in favor of abstention.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Amended Complaint with prejudice for lack of subject matter jurisdiction, or, in the alternative, exercise its discretion to abstain from doing so.

DATED: March 14, 2008                    Respectfully submitted,

                                         HELLER EHRMAN LLP


By: _____
    Richard A. Martin (RM 7668)
    Patryk J. Chudy (PC 8815)
    Times Square Tower
    7 Times Square
    New York, New York  10036
    Phone: (212) 832-8300
    Facsimile: (212) 763-7600
    richard.martin@hellerehrman.com
    patryk.chudy@hellerehrman.com

    *Attorneys for Defendants Thomas R. Wheeler, Lisa*
    *W. Huzella, Michaelon A. Wright, 43 West 64th*
    *Street LLC, and Wheeler Family Foundation, Inc.*