UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

CHARLENE A. ROYCE, as parent and guardian          :
of TIFFANY M. WHEELER, and
TIFFANY M. WHEELER,                                :

                    Plaintiffs,          :

       - against -                                :

THOMAS R. WHEELER, LISA W. HUZELLA,                 :
and MICHAELON A. WRIGHT, each individually
and as acting successor trustee of the             :     Civ. No. 07-CV-10968 (RWS)(FM)
Thomas M. Wheeler Revocable Trust, u/a dated
April 9, 1986, as Amended and Restated, and        :
43 WEST 64TH STREET LLC, a Michigan
corporation, KRYSTAL M. WHEELER,                   :
and the WHEELER FAMILY FOUNDATION,
INC., a Delaware non-profit corporation,           :
                 Defendants.          :
                      :

—————————————————————— X


PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO DISMISS


                         ARNOLD & PORTER, LLP
                         399 Park Avenue
                         New York, NY 10022
                         (212) 715-1000

                         *Attorneys for Plaintiffs*

*Of Counsel:*

Charles G. Berry
Mark A. Kleyna

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

STATEMENT OF FACTS .....................................................................2

ARGUMENT ........................................................................................3

I.  The Texas Probate Court Does Not Have Exclusive or Dominant
    Jurisdiction Over the Trust <u>Res</u>............................................................3

    A.  The Texas Probate Court Does Not Have Exclusive Jurisdiction
        Over a Matter Concerning an Inter Vivos Trust Incident to an
        Estate. ................................................................................................3

    B.  The Texas Probate Court Does Not Even Have Dominant
        Jurisdiction Over the Trust Action Under the Probate Code
        Provisions...........................................................................................5

    C.  The Texas Probate Court Does Not Have Dominant Jurisdiction
        Over the Trust Action Because the Estate is "Independently
        Administered."....................................................................................6

    D.  The Texas Probate Court Does Not Have "Appertaining To"
        Jurisdiction Over the Trust and Thus Cannot Exercise Jurisdiction
        Over It Under the Texas Trust Code's Venue Provision. ....................7

    E.  Defendants Brought the Declaratory Judgment Action in Order
        to Create the Appearance Retroactively That the Texas Probate
        Court Was Exercising Jurisdiction Over the Trust. ............................8

II. The Action Brought in this Court is not Barred by the Probate Exception. ............9

    A.  Since the Texas Probate Court Is Not Exercising Jurisdiction
        Over the Trust, the Probate Exception Does Not Apply.....................10

    B.  The Probate Exception Does Not Extend to an Inter Vivos Trust
        That is Not Already in the Custody of a Probate Court.....................11

    C.  Probate Court Jurisdiction Cannot Expand the Boundaries of
        the Federal Probate Exception. .........................................................13

III. The <u>Princess Lida</u> Doctrine Does Not Apply. .........................................14

IV.    It Would Be an Abuse of Discretion if The Court Were To Abstain from Exercising Its Jurisdiction Under the <u>Colorado River</u> Doctrine. .................16

    A.    Although the <u>Colorado River</u> Doctrine is a Doctrine of Discretionary Abstention, It Only Applies in "Exceptional Circumstances." .....................................................................................16

    B.    The <u>Colorado River</u> Factors Require the Federal Court To Retain Jurisdiction. ................................................................................17

CONCLUSION    .............................................................................................19

# TABLE OF AUTHORITIES

**Page**

CASES

Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205
(2d Cir. 1985)..................................................................................................17

Bailey v. Cherokee County Appraisal Dist., 862 S.W.2d 581 (Tex. 1993) ................................3, 4

Barnes v. Brandrup, 506 F. Supp. 396 (S.D.N.Y. 1981)........................................................12, 16

Beach v. Rome Trust Co., 269 F.2d 367, 373 (2d Cir. 1959) ......................................................16

Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976)..................16

Garza v. Rodriguez, 18 S.W.3d 694, 698 (Tex. App. 2000)...........................................................6

Groman v. Cola, No. 07 CV 2635, 2007 WL 3340922 (S.D.N.Y. Nov. 7, 2007)........................11

Lefkowitz v. Bank of New York, No. 04-0435, 2007 WL 1839756 (2d Cir. 2007).............10, 11

McClellan v. Carland, 217 U.S. 268 (1910) ...............................................................................13

Markham v. Allen, 326 U.S. 404 (1945)................................................................................10, 12

Marshall v. Marshall, 547 U.S. 293 (2006)........................................................9, 10, 11, 13, 14

Morin v. Blevins, No. CV F 07-1061, 2007 U.S. Dist. LEXIS 95422
(E.D. Cal. Dec. 21, 2007)............................................................................. 12-13

Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,460 U.S. 1 (1983) ................18

National Union Fire Ins. Co. of Pittsburgh v. Karp, 108 F.3d 17 (2d Cir.1997) .........................17

Palmer v. Cobble Wall Trust Co., 851 S.W.2d 178 (Tex. 1992) .............................................7, 14

Perry v. Del Rio,  66 S.W.3d 239, 252 (Tex. 2001).......................................................................5

Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456 (1939) ................................14, 15

Roy v. Whittaker, 92 Tex. 346, 348, 48 S.W. 892, 894 (1898), modified on
rehearing, 92 Tex. 357, 49 S.W. 367 (1899).  .........................................................7

Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.,
    466 F.3d 88, 97 (2d Cir. 2006)................................................................16

Seay v. Hall, 677 S.W.2d 19, 24 (Tex. 1984) ...........................................7

Village of Westfield v. Welch's, 170 F.3d 116 (2d Cir. 1999)............ 17-18

Weingarten v. Warren, 753 F. Supp. 491, 495 (S.D.N.Y. 1990) .......... 11-12

Wilton v. Seven Falls Co., 515 U.S. 277 (1995)........................................17

## STATUTES

Texas Probate Code § 5(e) (2007) ........................................................4, 5

Texas Probate Code § 5(h) (2007) ........................................................3, 4

Texas Probate Code § 5A(b) (2007) .....................................................4, 5

Texas Probate Code § 145 (2007)............................................................6

Texas Trust Code § 115.001 (2007).........................................................8

Texas Trust Code § 115.002(c) (2007) ....................................................8

Texas Trust Code § 115.002(f)(3) (2007) ................................................8

## OTHER AUTHORITIES

Charles B. Gorham, "The Jurisdiction of Statutory Probate Courts," 28 Tex. B. J. 240
    (March 1996) .....................................................................6, 7, 14

Peter Nicolas, "Fighting the Probate Mafia: A Dissection of the Probate Exception
    to Federal Court Jurisdiction," 74 S. Cal. L. Rev. 1479 (2001)............................12

Paula C. Tredeau, "The Scope of Texas Probate Jurisdiction Over Matters Incident and
    Appertaining to an Estate," 16 St. Mary's L.J. 233, 247-48 (1984)........................14

## INTRODUCTION

Plaintiffs Charlene Royce and her daughter Tiffany M. Wheeler ("Plaintiffs") submit this memorandum of law in opposition to the motion of defendants to dismiss for lack of subject matter jurisdiction.

Defendants' Memorandum of Law in Support ("Def. Mem.") and supporting affidavits fail to bring to the Court's attention significant facts that reveal the lack of jurisdiction of the El Paso Probate Court over the issues presented in the Amended Complaint in this case, which relate not to the estate of Thomas M. Wheeler ("Mr. Wheeler") but to the *inter vivos* trust he created and which holds the bulk of his wealth (the "Trust"). Defendants repeatedly attempt to conflate the estate and the Trust and suggest that the Texas Probate Court has exclusive jurisdiction over both. They are wrong, both as to the law governing the jurisdiction of the Texas courts and the actual nature of the proceedings there.

Defendants also misstate the scope of the probate exception to the federal court's jurisdiction. Since Plaintiffs' claims do not seek to settle, partition or distribute assets of Mr. Wheeler's estate, the probate exception simply does not apply. Nor do the principles articulated in the <u>Princess Lida</u> and <u>Colorado River</u> cases on which they rely secondarily. Plaintiffs do not ask this Court to adjudicate claims with respect to property that was within the jurisdiction of any other court when this action was commenced. Nor do discretionary factors militate in favor of deferring to the Texas court with respect to the issues here, particularly when, as demonstrated below, the parties have no meaningful connection with Texas and the proceedings filed there were brought on such a tenuous, indeed flawed, basis. Plaintiffs are all residents of New York; a primary aspect of the relief they seek is with respect to real property here; and all the defendants have engaged in important activities here -- including, unfortunately, on the part of the three

1

individual successor trustees of the Trust, significant breaches of their fiduciary obligations to Plaintiff Tiffany Wheeler and her sister, Krystal Wheeler.

## STATEMENT OF FACTS

The facts underlying this dispute are set forth in detail in the Amended Complaint, a copy of which is attached as Ex. A to the accompanying declaration of Charles G. Berry, dated April 23, 2008 ("Berry Decl."). Other important recitations of relevant facts are contained in the Berry Declaration, the affidavits of Plaintiffs, Charlene Royce and Tiffany Wheeler, the affidavit of Krystal Wheeler, and the affirmation of Derek Sells. In addition, significant factual detail is contained in the "Special Appearance" filed on behalf of Charlene, Tiffany and Krystal in the Texas Probate Court on March 18, 2008 (Ex. B to Berry Decl.), which details among other things numerous facts that establish the lack of subject matter jurisdiction of that court over the Trust.

The extensive facts set forth in these various submissions will not be repeated here. We note, however, that a regrettable thread weaving through the various proceedings and factual accounts submitted herewith is an astonishing lack of candor by the individual defendants here and their Michigan counsel, who have repeatedly indulged in efforts to deprive Plaintiffs and Krystal Wheeler not only of their rights in their father's property but also their due process rights. These defendants pursued a probate proceeding for eight months without informing Plaintiffs, while withholding from them information about the basic trust documents they knew Plaintiffs required in order to assess their rights. Then when Plaintiffs filed this action, defendants tried to manufacture a proceeding in the Texas Probate Court, by which they sought an end-run around this first-filed action concerning the Trust. From an amended death certificate to an attempted retroactive designation of change of trust administration situs, defendants and their counsel have outsmarted themselves, and it is time they be called on it. They can no longer

maintain the fiction of primacy of a proceeding they rigged up in a jurisdiction with no meaningful connection to Mr. Wheeler, the Trust or even his estate. They should be called to account in this Court for their egregious breaches of fiduciary duties.

## ARGUMENT

**I.    The Texas Probate Court Does Not Have Exclusive or Dominate Jurisdiction Over the Trust <u>Res</u>.**

Defendants' arguments for dismissal for subject matter jurisdiction are premised on the claims that the El Paso Probate Court, by virtue of its jurisdiction over the initial petition for independent administration of the Will, also exercised jurisdiction over the Trust to the exclusion of any other court. However, under Texas law the Probate Court's jurisdiction over inter vivos trusts is neither exclusive nor dominant; therefore, the filing of the Will and onset of probate proceedings did not prevent any other court from asserting jurisdiction over the Trust.

### A.    The Texas Probate Court Does Not Have Exclusive Jurisdiction Over a Matter Concerning an Inter Vivos Trust Incident to an Estate.

Defendants claim that the Texas "probate court had exclusive jurisdiction over the trust at the time the Amended Complaint was filed, because once the Texas Probate Court asserted jurisdiction over Mr. Wheeler's Estate, it gained exclusive jurisdiction over all matters 'incident to [Mr. Wheeler's] estate,' including the Trust." Def. Mem. at 14, 18. They argue that, since the Texas Probate Court had jurisdiction over the original probate action, it also had exclusive jurisdiction over the Trust action under the Texas Probate Code § 5(h) "appertaining" jurisdiction clause and <u>Bailey v. Cherokee County Appraisal Dist.</u>, 862 S.W.2d 581 (Tex. 1993).

However, the Texas Probate Court lacks exclusive jurisdiction under <u>Bailey</u>. Under Section 5(h) of the Texas Probate Code a statutory probate court "has jurisdiction over

any matter appertaining to an estate or incident to an estate." Section 5A(b) defines the meaning of "appertaining to" or "incident to" an estate. These terms

> include the probate of <u>wills</u>, the issuance of letters testamentary and of administration, and the determination of <u>heirship</u>, and also include, but are not limited to, all claims by or against an estate, all actions for trial of title to land and for the enforcement of liens thereon, all actions for trial of the right of property, all actions to construe <u>wills</u>, the interpretation and administration of <u>testamentary trusts</u> and the applying of <u>constructive trusts</u>, and generally all matters relating to the collection, settlement, partition, and distribution of <u>estates</u> of deceased persons.

Texas Probate Code § 5A(b) (2007) (emphasis added).

In <u>Bailey</u> the Texas Supreme Court determined that a suit to collect ad valorem taxes accruing on <u>estate</u> property during an <u>estate's</u> administration was a claim against the <u>estate</u> and thus a matter "appertaining to" or "incident to" the estate. In such cases, the probate court before which an original probate matter is pending has exclusive jurisdiction over the subsequent claim under Texas Probate Code § 5(h).[1] <u>Bailey</u>, 862 S.W.2d at 586.

However, <u>Bailey</u> is inapplicable here because this matter concerns an inter vivos <u>trust</u>. In such matters a Texas probate court only exercises concurrent jurisdiction. Under Texas Probate Code § 5A(b) (2007) a Texas probate court's jurisdiction is exclusive over causes of action appertaining to and incident to an estate "[e]xcept for situations in which the jurisdiction of a statutory probate court is concurrent with that of a district court as provided by Section 5(e) of this Code or any other court." In turn, Section 5(e) of the Probate Code provides that a probate court's jurisdiction is concurrent with a district court's "in all actions involving an inter vivos

---

[1] <u>Bailey</u> refers to Section 5(e) as the relevant provision; since then, the section has been amended and Section 5(e) has become 5(h).

trust," as well as in certain other types of actions.[2]  Since the Probate Court may only exercise jurisdiction <u>concurrent</u> to the district court over an inter vivos trust, its jurisdiction over the Trust is <u>not exclusive</u>.

### B.    The Texas Probate Court Does Not Even Have Dominant Jurisdiction Over the Trust Action Under the Probate Code Provisions.

Under Texas law, the court that first exercises jurisdiction over a <u>res</u> has dominant jurisdiction over any other court that subsequently seeks to exercise jurisdiction over the same <u>res</u>. <u>Perry v. Del Rio</u>, 66 S.W.3d 239, 252 (Tex. 2001) ("when cases involving the same subject matter are brought in different courts, the court with the first-filed case has dominant jurisdiction and should proceed").

Defendants claim that because they filed the will in the Statutory Probate Court in May 2007, that court exercised dominant (or "primary") jurisdiction, to the exclusion of any other court, over <u>all</u> conceivable matters appertaining to or incident to the estate, including the Trust. (Def. Mem. at 18.)  This argument misconstrues Sections 5 and 5A of the Texas Probate Court.

Section 5A(b) differentiates between most causes of action "appertaining to" or "incident to" an estate, which "shall be brought in a statutory probate court," and those that fall under Section 5(e), over which "a statutory probate court's jurisdiction is concurrent with that of the district court." Section 5A(b)'s distinction between the two classes of actions would be meaningless if a statutory probate court's jurisdiction were dominant over actions appertaining to or incident to an estate described by Section 5(e), such as actions involving inter vivos trusts.

---

[2] The exceptions to a statutory probate court's exclusive jurisdiction include: "all personal injury, survival, or wrongful death actions by or against a person in the person's capacity as a personal representative, <u>in all actions by or against a trustee</u>, <u>in all actions involving an inter vivos trust</u>, testamentary trust, or charitable trust, and in all actions involving a personal representative of an estate in which each other party aligned with the personal representative is not an interested person in that estate." Texas Probate Code § 5(e) (2007) (emphasis added).

Since there can be no matter "appertaining to" or "incident to" an estate unless a probate proceeding is already pending, Garza v. Rodriguez, 18 S.W.3d 694, 698 (Tex. App. 2000), a district court could never exercise its concurrent jurisdiction over an inter vivos trusts (under the first to file rule) if the statutory probate court's jurisdiction assumed dominant jurisdiction over an inter vivos trust when a will was filed to probate.  If Section 5A(b) is to have any coherent meaning, a statutory probate court cannot exercise dominant jurisdiction over an inter vivos trust purportedly incident to an estate merely by exercising its jurisdiction over the estate.  Therefore, a party can file an action involving an inter vivos trust "incident to" an estate in the district court, even when the estate's probate is pending in the statutory probate court.

### C.    The Texas Probate Court Does Not Have Dominant Jurisdiction Over the Trust Action Because the Estate is "Independently Administered."

Another reason why the El Paso Probate Court did not have dominant jurisdiction over the Trust at the time the Will was filed for probate is that Defendants requested what is known in Texas as an "independent administration" under Texas Probate Code § 145.[3]  The Probate Court granted Defendants' request for "independent administration" at the same time as admitting the Will to probate on June 25, 2007.  Sanders Aff. ¶ 19, Ex. 9.

In Texas "[t]he first court to acquire jurisdiction has dominate jurisdiction to the exclusion of all other courts of concurrent jurisdiction."  Charles B. Gorham, "The Jurisdiction of Statutory Probate Courts," 28 Tex. B. J. 240, 246 (March 1996).  Although it can also be true that "[o]nce an administration is begun in statutory probate court, the statutory probate court

---

[3] Independent administration is, like an inter vivos trust, a method by which one may "withdraw the administration of the estates of decedents from the control of probate courts."  28 Tex. B. J. 240, 244.  Defendants, to the contrary, are claiming that by instituting an independent administration they subjected both the estate and the trust to the overriding control of the probate court.

acquires dominate jurisdiction over all matters within its jurisdiction. . . ," that general rule does <u>not</u> apply when the administration in question is an "independent administration":

> <u>The exception is, of course, independent administration.</u> Because probate courts do not have subject matter jurisdiction over most disputes relating to the settlement of estates managed by independent administrators, a statutory probate court does <u>not</u> have dominate jurisdiction over these proceedings.

28 Tex. B. J. at 246 (emphasis added).

A "statutory probate court does not have dominate jurisdiction" over matters relating to the estate because "probate courts do not have subject matter jurisdiction over most disputes relating to the settlement of estates managed by independent administrators." <u>Id.</u>; <u>see</u> <u>Roy v. Whittaker</u>, 48 S.W. 892, 894 (Tex. 1898), <u>modified on rehearing</u>, 49 S.W. 367 (Tex. 1899). This means that, during the course of an ongoing independent administration, a suit incident to or appertaining to the estate "may be filed as an original action in the statutory probate court or as <u>an original action in the district court</u> without offending the statutory probate court's jurisdiction." 28 Tex. B. J. at 246 (emphasis added)

> **D.    The Texas Probate Court Does Not Have "Appertaining To" Jurisdiction Over the Trust and Thus Cannot Exercise Jurisdiction Over It Under the Texas Trust Code's Venue Provision.**

Defendants claim that the Statutory Probate Court exercises jurisdiction over the February 19, 2008 Trust Action because it is "incident to" the probate of the Will. A statutory probate court can exercise jurisdiction "appertaining to" or "incident to" an estate only in relation to matters in which the "controlling issue" was the settlement, partition, or distribution of an estate. <u>Seay v. Hall</u>, 677 S.W.2d 19, 24 (Tex. 1984); <u>Palmer v. Cobble Wall Trust Co.</u>, 851 S.W.2d 178, 182 (Tex. 1992). Defendants have not argued, and have no basis for arguing, that the controlling issue of the February 19, 2008 Trust Action is the settlement, partition or distribution of the estate.

7

The venue clause of Texas Trust Code § 115.002 makes clear that the El Paso Texas Probate Court cannot even exercise original jurisdiction, as opposed to "appertaining to" jurisdiction, over the inter vivos trust at all because proper venue for the trust action does not lie in El Paso County. Section 115.002(c) provides that any action brought under Section 115.001 of the Texas Trust Code -- as Defendants' February 19, 2008 Trust Action purportedly is -- involving a trust with multiple trustees "shall be brought in the county in which the situs of administration of the trust is maintained or has been maintained at any time during the four-year period preceding the date the action is filed." Texas Trust Code § 115.002(c). Section 115.002(f)(3) defines the "situs of administration" as "the location in this state where the trustee maintains the office that is primarily responsible for dealing with the settlor and beneficiaries of the trust."

Though Defendants' ex post facto change of situs notice, Sanders Aff., Ex. 6, purports to change the place of administration to Texas, there simply is no evidence that any change of situs of the actual administration of the Trust occurred. Id., Ex. 13 at 3-4. Indeed, the mailing addresses found in the February 19, 2008 Petition recite Michigan, not Texas, addresses for all of the trustees of the trusts created under the Thomas M. Wheeler Trust. Their address remains what it always was: "c/o TMW Enterprises, Inc., 201 W. Big Beaver Road, Suite 1420, Troy, Michigan 48048." Id., Ex 13 at 3-4. In fact, the only Texas address listed in that petition is for Lizeth Modesto, a trust beneficiary, not one of the trustees. Id. at 3.

### E.    Defendants Brought the Declaratory Judgment Action in Order to Create the Appearance Retroactively That the Texas Probate Court Was Exercising Jurisdiction Over the Trust.

Defendants brought the trust action in Texas Probate Court in a transparent and cynical attempt to deprive the New York court of jurisdiction over this action. Although the original probate action was filed in May 2007 (in a manner calculated, successfully, to deprive Tiffany

8

and Krystal and their mother of notice of the proceeding), Defendants did not bring the trust action in Texas Probate Court until February 19, 2008 -- two and a half months after this action was filed before this Court.  In fact, Defendants' Texas attorneys were busy manufacturing the action for declaratory relief while their New York attorneys were requesting multiple adjournments of their time to respond to this action.  Indeed, the declaratory judgment action, purportedly filed to ratify actions that the Trustees have already taken, is not designed to accomplish any particular end aside from asserting jurisdiction over the Trust.

## II.    The Action Brought in this Court is not Barred by the Probate Exception.

In the landmark ruling of <u>Marshall v. Marshall</u>, 547 U.S. 1735 (2006), involving claims of Anna Nicole Smith with respect to her husband's estate, the Supreme Court sought to end decades of confusion among the lower courts as to the precise boundaries of the probate exception.  In order to do this, it created a clear definition of the probate exception to the jurisdiction of federal courts:

> Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.

547 U.S. at 311-12.  <u>Marshall</u> makes clear that the probate exception does <u>not</u> "bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." <u>Id.</u>

Defendants define the probate exception overbroadly: "This exception prohibits federal courts from, <u>inter alia</u>, 'interfer[ing]' with pending state proceedings by exercising jurisdiction over matters relating to a decedent's estate." Def. Mem. at 10-11.  They argue that the probate exception applies here because "a construction of the Trust by this Court will necessarily infringe upon the Texas court's authority to construe the terms of the Trust and reach a determination regarding matters arising during the course of the administration of the Trust and Estate." Def.

9

Mem. at 4. <u>See also id.</u> at 14 ("[T]he relief Plaintiff seeks squarely interferes with the administration of Mr. Wheeler's estate."). Even if this claim were true, which it is not, it is insufficient to invoke the probate exception.

Defendants' arguments recall the obsolete formulation of the probate exception found in <u>Markham v. Allen</u>, 326 U.S. 404 (1945), which had long been the leading case on the extent of the probate exception before <u>Marshall</u>. In <u>Markham</u>, the Supreme Court had stated categorically that federal courts may "not interfere with the probate proceedings." 326 U.S. at 494. In <u>Marshall</u>, the Supreme Court sought to fix the confusion caused by <u>Markham</u>'s overbroad language, which caused some lower courts to read the words "interfere with the probate proceedings" "to block federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedent's estate." 326 U.S. at 311.

The Supreme Court in <u>Marshall</u> narrowed the scope of the probate exception and made it clear that mere "interference" with a state probate proceeding is not enough to invoke the probate exception: "[W]e comprehend the 'interference' language in <u>Markham</u> as essentially a reiteration of the general principle that, when one court is exercising <u>in rem</u> jurisdiction over a <u>res</u>, a second court will not assume <u>in rem</u> jurisdiction over the same <u>res</u>." 547 U.S. at 311. In other words, the probate exception is no broader in this regard than the <u>Princess Lida</u> doctrine, discussed below, under which a court of general jurisdiction will refrain from hearing disputes concerning property already in the jurisdiction of a probate court.[4]

    **A.**    **Since the Texas Probate Court Is Not Exercising Jurisdiction Over the Trust, the Probate Exception Does Not Apply.**

---

[4] A recent Second Circuit decision suggests that the second area of the probate exception articulated in <u>Marshall</u>, i.e. that federal courts "may not reach a res in the custody of a state court," is coterminous with the <u>Princess Lida</u> doctrine. <u>See</u> <u>Lefkowitz v. Bank of New York</u>, No. 04-0435, 2007 WL 1839756, at *3 (2d Cir. 2007).

The federal action falls into neither of the two categories to which <u>Marshall</u> limits the probate exception. First, Plaintiffs' action in federal court does not seek to probate or annul the will, nor does it seek to administer the estate. 547 U.S. at 311-12.

Second, this action does not call upon the federal court "to dispose of property that is in the custody of a state probate court." 547 U.S. at 312. As explained above, under the Texas Probate Code the Probate Court was not "exercising <u>in rem</u> jurisdiction over" the Trust when the probate action was initiated, because it had neither exclusive nor dominate jurisdiction over the Trust. Indeed, the first time that the Texas Probate Court was asked to exercise jurisdiction over the Trust was when Defendant sought to have it exercise concurrent jurisdiction, when they filed their February 19, 2008 Petition for declaratory judgment in Texas Probate Court -- two and a half months after the federal action was filed commenced in this Court.

Recent Southern District decisions after <u>Marshall</u> demonstrate that, unless the district court seeks to probate or annul a will or administer an estate, the probate exception will only apply if a district court seeks to exercise its jurisdiction over an asset which is part of an estate being administered by the probate court. <u>See</u> <u>Groman v. Cola</u>, No. 07 CV 2635, 2007 WL 3340922 (S.D.N.Y. Nov. 7, 2007) (note tendered to <u>estate</u> during its administration is in custody of the probate court); <u>Lefkowitz v. Bank of New York</u>, No. 04-0435, 2007 WL 1839756 (2d Cir. 2007) (action for disgorgement of funds by <u>estate</u> invokes probate exception). That is not the case here

**B.     The Probate Exception Does Not Extend to an Inter Vivos Trust That is Not Already in the Custody of a Probate Court.**

Courts in the Second Circuit have consistently declined to apply the probate exception to invalidate a federal court's jurisdiction when a probate court was exercising jurisdiction over an inter vivos trust. In <u>Weingarten v. Warren</u>, 753 F. Supp. 491, 495 (S.D.N.Y. 1990), Judge

11

Mukasey stated emphatically: "The probate exception to diversity jurisdiction does not apply to trusts." Likewise, in <u>Barnes v. Brandrup</u>, 506 F. Supp. 396, 399 (S.D.N.Y. 1981), the court reasoned that the probate exception does not apply when a probate court exercises jurisdiction over trusts.[5]

Indeed, one commentator has observed that although the probate exception is frequently raised as a defense to trust actions filed in federal court, "[m]ost courts have rejected this defense, holding the probate exception does not apply to trusts." Peter Nicolas, "Fighting the Probate Mafia: A Dissection of the Probate Exception to Federal Court Jurisdiction," 74 S. Cal. L. Rev. 1479, 1493 (2001). The reason for this distinction is that "trusts, unlike wills, did not fall within the exclusive jurisdiction of the ecclesiastical courts in eighteenth-century England, but instead were within the jurisdiction of the High Court of Chancery, and thus fall within the statutory grant of equity jurisdiction to U.S. federal courts." <u>Id.</u> at 1493. <u>See</u> <u>Barnes</u>, 506 F. Supp at 399 (citing <u>Markham</u>, 326 U.S. 490).

Defendants suggest that the Court should disregard prior holdings in this Circuit because the Supreme Court in <u>Marshall</u> "declined to limit the applicability of the probate exception to trusts." Def. Mem. at 12. In fact, <u>Marshall</u> made no determination as to whether or not the doctrine applies to trusts.

The only case Defendants present to support their contention that the probate exception should extend to an inter vivos trust is an unpublished Eastern District of California decision. Not only is this decision contrary to Second Circuit precedent, but its reasoning derives from the

---

[5] Defendants allege that these later cases misread <u>Beach v. Rome Trust Co</u>, 269 F.2d 367 (2d Cir. 1959), and claim that <u>Beach</u> held that the probate exception extends to trusts in situations where the action in federal court could interfere with a trust in probate court. Def. Mem. at 12 n.3. In fact, <u>Beach</u> relies on the <u>Princess Lida</u> doctrine for its conclusion, not the probate exception. 269 F.2d at 271. Courts in the Sourthern District have read <u>Beach</u> quite correctly when they have held that the probate exception does not apply to inter vivos trusts.

structure of the California Code.  In contrast to Texas, which has a distinct Trust Code that gives

primary jurisdiction to Texas <u>district</u> courts, California's trust law is contained within its Probate

Code.  On that basis the district court in California concluded that "[c]onstruction of trust

instruments and the power to compel an accounting lie at the heart of the probate court's

jurisdiction over the administration of trusts . . . ."  <u>Morin v. Blevins</u>, No. CV F 07-1061, 2007

U.S. Dist. LEXIS 95422 (E.D. Cal. Dec. 21, 2007) (unavailable on Westlaw).  In contrast, any

jurisdiction that a Texas statutory probate court has over an inter vivos trust is concurrent to and

derivative of the jurisdictional grant to district courts contained in section 115.002 of the Texas

Trust Code. (<u>See</u> <u>supra</u> Section I.D.)

### C.    Probate Court Jurisdiction Cannot Expand the Boundaries of the Federal Probate Exception.

Interestingly, the United States Supreme Court in <u>Marshall</u> was also dealing with the

contour of Texas probate courts' jurisdiction.  The Court made clear that Texas legislative efforts

to expand the scope of probate jurisdiction cannot not curtail the jurisdiction of federal courts.

The Supreme Court rejected the Ninth Circuit's holding that the Texas Probate Court "had

exclusive jurisdiction over all of [Petitioner] Vickie Lynn Marshall's claims against

[Respondent] E. Pierce Marshall."  <u>Marshall</u>, 547 U.S. at 313.  The Supreme Court explained

that its ruling was in line with its long-standing precedent:  "we have held that the jurisdiction of

the federal courts, 'having existed from the beginning of the Federal government, [can] not be

impaired by subsequent state legislation creating courts of probate.'"  <u>Marshall</u>, 547 U.S. at 314

(quoting <u>McClellan v. Carland</u>, 217 U.S. 268, 281 (1910)).  <u>See also</u> <u>Beach v. Rome Trust Co.</u>,

269 F.2d 367, 373 (2d Cir. 1959) ("it was early established that as to controversies that were not

then (in 1789) regarded as probate matters federal jurisdiction could not be ousted by the mere

internal arrangement of the state courts . . . .")

13

In Marshall there were more compelling reasons to find exclusive jurisdiction of the Texas courts than here, because the cause of action at issue in Marshall, interference with an expected inheritance, was created under Texas law.  Nevertheless, Marshall held that "Texas may not reserve to its probate courts the exclusive right to adjudicate a transitory tort."  547 U.S. at 313-14.  To allow it do so would defeat established principles of federalism:  "Under our federal system, Texas cannot render its probate courts exclusively competent to entertain a claim of that genre."  Id. at 314.

The history of the Texas probate law has seen just such a unilateral growth of that state's probate jurisdiction, with probate courts usurping the jurisdiction of all other courts.  59 Tex. B. J. at 240.  Indeed, the very jurisdictional provision which Defendants rely upon to assume jurisdiction over the Trust -- Texas Probate Code § 5(h)'s jurisdiction "appertaining to" or "incident to" an estate -- has seen some of the most significant expansion.  See Paula C. Tredeau, "The Scope of Texas Probate Jurisdiction Over Matters Incident and Appertaining to an Estate," 16 St. Mary's L. J. 233, 247-48 (1984) (describing expansion of scope of "incident to" jurisdiction from 1955 onward); 59 Tex. B. J. at 243-44;  Palmer, 851 S.W.2d at 182.  The fact that the Texas Probate Court could have had concurrent jurisdiction over the Trust (had the estate administration not been an "independent" one) cannot limit this Court's ability to hear Plaintiffs' claims with respect to the Trust.

**III.    The Princess Lida Doctrine Does Not Apply.**

In order for the Princess Lida doctrine to apply, the state court must initiate the action necessitating the exercise of jurisdiction or control over the res before the federal action is instituted.  Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466 (1939).  Here, Plaintiffs filed their action before the Court on December 3, 2007, and Defendants did not institute any action implicating jurisdiction over the Trust until February 19, 2008, if at all.

14

Nevertheless, Defendants seek to "backdate" the Probate Court's jurisdiction over the Trust to June 2007, when the Will was filed probate action (involving the estate) commenced. Their claim that the Probate Court obtained exclusive jurisdiction over the Trust from the inception of the probate action is specious.  However, as explained above (Section I.A-B), a probate court's jurisdiction over an inter vivos trust under the Texas Probate Code can only be concurrent, not exclusive, and its jurisdiction over trust assets will only obtain after it has affirmatively exercised its concurrent jurisdiction over the trust assets.

Defendants alternatively claim that "dismissal under the Princess Lida doctrine is appropriate if a state court with concurrent jurisdiction would lack jurisdiction over the matter by virtue of the primary jurisdiction of probate courts." Def. Mem. at 17.  However, the jurisdiction of the Probate Court is not primary, because Texas probate courts cannot assert dominant jurisdiction over related matters when the pending probate matter is an independent administration.  (See supra Section I.C.)

Defendants claim that "the case at bar very closely mirrors the facts of Princess Lida." Def. Mem. at 16.  To the contrary, this case is utterly different.  In Princess Lida the trustees of an inter vivos trust filed an account in state court before the beneficiaries had filed their action in federal court to remove the trustees and cause them to account.   Under the applicable law in Princess Lida, Pennsylvania law, submission of an trust account to the state court gave that court "supervisory control" over the trust, a power which "of necessity includes any matter which concerns the integrity of the trust res." Pricess Lida at 462.  Therefore, in Princess Lida the Supreme Court found that the "the filing of their account [in state court] subjected the [trustees] to the exercise of" the state court's supervisory control.  Id.

Here, in contrast to the Pennsylvania statute, the filing of the Will in the Texas Probate Court did not subject the Trust to the exclusive or dominate jurisdiction or control of the Probate Court. The situation here is like that found in <u>Barnes v. Brandrup</u>, 506 F. Supp. 396 (S.D.N.Y. 1981), where the district court declined to apply the <u>Princess Lida</u> doctrine. In <u>Barnes</u>, the federal court exercised jurisdiction because under Connecticut law (as under Texas law) "the Superior Court (Connecticut's court of general jurisdiction) has concurrent jurisdiction with the probate court over trust matters." <u>Id.</u> at 402.

**IV.    It Would Be an Abuse of Discretion if The Court Were To Abstain from Exercising Its Jurisdiction Under the <u>Colorado River</u> Doctrine.**

   **A.    Although the <u>Colorado River</u> Doctrine is a Doctrine of Discretionary Abstention, It Only Applies in "Exceptional Circumstances."**

In <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976), the Supreme Court created an extraordinary and narrow form of abstention, which permitted the federal court to dismiss a suit after "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise . . . ." 424 U.S. 800, 818 (1976). The Supreme Court went on to make clear that "[o]nly the clearest of justifications will warrant dismissal." <u>Id.</u> This is because federal courts should "not overlook their heavy obligation to exercise jurisdiction." <u>Id.</u> at 819. Indeed, "[a]bdication of the obligation to decide cases can be justified under this doctrine only in the exception circumstances where the order to the parties to repair to the state court would clear serve an important countervailing interest." <u>Id.</u> at 813; <u>accord Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.</u>, 466 F.3d 88, 97 (2d Cir. 2006) (vacating district court's dismissal because the factors it relied upon were "not sufficient to overcome the virtually unflagging obligation of a district court to exercise the jurisdiction conferred on it by Congress").

16

Defendants argue that the "exceptional circumstances" standard does not apply under the rationale of <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277 (1995). Def. Mem. at 18-19. However, <u>Wilton</u> does not apply here for two reasons. First, the federal action is not purely for declaratory relief, but also seeks the Court to order an accounting and other relief.

Second, the state action is not parallel to the federal action. In resurrecting a more discretionary standard for a district court's decision to refrain from adjudicating a claim for declaratory relief, <u>Wilton</u> declined "to delineate the outer boundaries of that discretion in other cases," expressly refraining from commenting on "cases raising issues of federal law or cases in which there are no parallel state proceedings." <u>Wilton</u>, 515 U.S. at 290. In the Second Circuit proceedings are "parallel" or "concurrent" for the purposes of abstention "when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." <u>National Union Fire Ins. Co. of Pittsburgh v. Karp</u>, 108 F.3d 17, 22 (2d Cir. 1997); <u>see</u> <u>Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York,</u> 762 F.2d 205, 211 (2d Cir. 1985). Here, the Texas action does not involve the same issues or seek the same relief -- indeed it appears that the only reason Defendants brought the Texas action was to impede the present action.

**B.    The <u>Colorado River</u> Factors Require the Federal Court To Retain Jurisdiction.**

The Second Circuit has held that

> [t]o determine whether abstention under <u>Colorado River</u> is appropriate, a district court is required to weigh six factors, with the balance heavily weighted in favor of the exercise of jurisdiction. These six factors include: (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

17

Village of Westfield v. Welch's, 170 F.3d 116, 121 (2d Cir. 1999) (internal citations omitted) (finding district court's abstention was abuse of discretion in light of obligation to exercise jurisdiction). This is not a mechanical analysis: "[n]o single factor is necessarily decisive, and the weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." Id. (citation omitted).

Even were it not for the "heavy obligation" of the federal court to exercise jurisdiction, the Colorado River factors weigh in favor of maintaining the case here. First, this Court assumed jurisdiction over the Trust on December 3, 2007, long before Defendants filed their trust action in the Texas Probate Court on February 19, 2008. Their contention that the Texas Probate Court exercised jurisdiction over the Trust when the Will was filed is unavailing. Second, the federal forum is not more inconvenient than the state forum, especially in light of the undisputed fact that none of the Defendants reside in Texas, Plaintiffs reside in New York and a significant feature of the claims here relates to Trust property in New York (the Apartment). Third, avoidance of piecemeal litigation is not a concern, because the El Paso County Probate Court does not have "incident to" jurisdiction over the Trust, and is not the proper venue for an original action involving the Trust.[6] Fourth, this Court obtained jurisdiction on December 3, 2007, well before the Texas Trust action was filed. Fifth, as has been argued, construction of the Trust will not implicate Texas law on account of the Trust's choice of law provision. And finally, diversity jurisdiction is founded on the principle that a federal forum should be maintained to protect the interests of out-of-state defendants in state law actions.

---

[6] Indeed, in contrast to Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983) (cited at Def. Mem. 19), there is not even an especially strong policy to avoid "piecemeal litigation" here. In Moses H. Cone the Supreme Court emphasized that in Colorado River the relevant federal statute evinced "a clear federal policy" to avoid "piecemeal adjudication of water rights in a river system." Id. at 16. There is no such policy identifiable here.

In addition, Defendants' have clearly manufactured the Texas action in an effort to strip the federal court of jurisdiction. An examination of the relief sought in the February 19, 2008 Petition makes abundantly clear that, but for their wish to preempt the action in federal court, that Petition would never have been filed. See Sanders Aff., Ex. 13 at 1-2. They seek to bolster their argument by claiming that "the federal case has not progressed beyond the pleadings stage." Def. Mem. at 21. As shown in the Berry Declaration, however, their attorneys requested multiple extensions of time to respond to the federal complaint, so they could rush to file the February 19, 2008 Trust Petition in Texas. For this additional reason, the Court should not exercise its discretion under Colorado River to further Defendants' artificial ploy to strip this Court of its jurisdiction.

## CONCLUSION

Plaintiffs respectfully request that Defendants' motion to dismiss for lack of subject matter jurisdiction be denied in its entirety.

Dated: New York, New York
     April 23, 2008

Respectfully submitted,

ARNOLD & PORTER LLP

By: _____
    Charles G. Berry (CB 2389)
    Mark A. Kleyna (MK 7934)
399 Park Avenue
New York, NY 10022-4690
(212) 715-1000