UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

CHARLENE A. ROYCE, as parent and guardian         :
of TIFFANY M. WHEELER, and
TIFFANY M. WHEELER,                            :

              Plaintiffs,                   :

       - against -                :         **DECLARATION**

THOMAS R. WHEELER, LISA W. HUZELLA,   :
and MICHAELON A. WRIGHT, each individually
and as acting successor trustee of the        :      **Civ. No. 07-CV-10968 (RWS)(FM)**
Thomas M. Wheeler Revocable Trust, u/a dated
April 9, 1986, as Amended and Restated, and   :
43 WEST 64TH STREET LLC, a Michigan
corporation, KRYSTAL M. WHEELER,       :
and the WHEELER FAMILY FOUNDATION,
INC., a Delaware non-profit corporation,      :

          Defendants.          :
————————————————————— X

CHARLES G. BERRY, pursuant to 28 U.S.C. § 1746(2), hereby declares under penalty

of perjury, as follows:

    1.      I am a member of the firm of Arnold & Porter LLP, attorneys for Charlene Royce,

as mother and legal guardian for Tiffany M. Wheeler ("Tiffany") and for Tiffany, both now

plaintiffs in this action ("Plaintiffs"). I make this affidavit in opposition to defendants' motion to

dismiss.

    2.      In particular, I set forth herein certain facts relating to the proceedings herein and

proceedings initiated in Texas by defendants Thomas R. Wheeler, Lisa W. Huzzella and

Michaelon A. Wright, who have been sued herein individually and in their capacity as acting

successor trustees (the "Trustee Defendants") of the Thomas M. Wheeler Trust Revocable Trust, established under agreement dated April 9, 1986, as later amended and restated (the "Trust").

**The Trust and Amendments**

3.     The grantor and sole lifetime trustee of the Trust was Thomas M. Wheeler, father of Tiffany, her sister Krystal M. Wheeler and their half-siblings, the Trustee Defendants.  Mr. Wheeler died in West Palm Beach, Florida on February 9, 2007, and the Trustee Defendants have been acting as successor trustees since his death.

4.     Among the amendments and restatements of the Trust is one dated May 11, 2002 (the "2002 Amendment and Restatement"), under which Tiffany and Krystal receive essentially equal treatment with respect to the assets held in the Trust as their half-siblings, the Trustee Defendants.  Those parties claim that the Trust was further amended twice during the final weeks of Mr. Wheeler's life, on January 6, 2007 and again on January 22, 2007.  Both of those amendments (the "January 2007 Amendments") reduced considerably the benefits that Tiffany and Krystal would receive under the Trust.

**The Commencement of this Action**

5.     This action was commenced by filing a complaint in this Court on December 3, 2007.

6.     On December 19, 2007 an Amended Complaint (a copy of which is attached as Exhibit A) was filed, prior to any answer or other response to the complaint.

**Defendants' Repeated Extensions of Time Consented to by Plaintiffs' Counsel**

7.     Shortly before the filing of the Amended Complaint, I was contacted by Patrick T. Duerr, partner of the Detroit, Michigan firm of Honigman Miller Schwartz and Cohn LLP, who

said he represented the defendants and would appreciate an extension of time for them to respond to the complaint pending retention of New York counsel.

8.    I advised Mr. Duerr that I would be pleased to afford the requested courtesy, and we agreed that defendants' time to respond to the complaint would be extended until January 31, 2008.

9.    Mr. Duerr made no mention to me of the fact that there was a probate proceeding pending in El Paso, Texas with respect to Mr. Wheeler's estate, despite the allegation in the Amended Complaint (¶ 72) that, upon information and belief, the purported will had not been probated or offered for probate.

10.    On January 16, 2008 I was contacted by telephone by Richard Martin and Patryk Chudy of Heller Ehrman LLP in New York City, who advised that they would be representing the defendants in this action. They asked me for a further extension of the time to respond to the Amended Complaint, and I agreed to their request. Our agreement was documented in a stipulation approved by the Court.

11.    Messrs. Martin and Chudy did not tell me on that call that there was a probate proceeding pending in Texas.

**The Belated Disclosure by Defendants of the Texas Probate Proceeding**

12.    On January 29, 2008 I received another call from Mr. Martin and Mr. Chudy. On this call they advised me of the pendency of the Texas probate proceeding, noting that it was evident from the Amended Complaint that we were under the impression that there was no such proceeding pending. I confirmed that that had been our understanding and asked that they furnish copies of papers filed in the probate proceeding. Although Mr. Chudy promptly furnished a copy of the initial probate application from May 2007 and order admitting the will to

probate on June 25, 2007, I did not get the entire file (sent at the direction of Texas counsel for the Trustee Defendants, Amy Stewart Sanders) until some weeks later.

14.    Messrs. Martin and Chudy asked that I agree to the dismissal of this action in light of the Texas probate proceeding, and I advised them that we would not do so.

14.    They later asked for a further extension of time, until March 7. I agreed to this, and we entered into a court-approved stipulation.

15.    On March 4, they asked for yet another, two-week extension, and I agreed to a one-week extension. Altogether, I provided them with the courtesy of an agreed-upon extension of almost three months.

**The Texas Proceeding Manufactured by the Trustee Defendants after the Independent Probate Administration Was Completed**

16.    In the meantime, counsel for the Trustee Defendants were busy manufacturing a proceeding in Texas probate court relating to the Trust. A copy of their petition in that proceeding dated February 19, 2008, styled as a "Petition for Declaratory Judgment" (the "February 19, 2008 Petition") is marked as Ex. 13 to the Affidavit herein of Ms. Sanders dated March 14, 2008 ("Sanders Aff.") That Petition seeks a variety of relief that the Texas Probate Court, in fact, lacks jurisdiction to address.

17.    Although the record in the probate proceeding indicates that all the previous proceedings in the El Paso Probate Court related strictly to Mr. Wheeler's estate and not in any way to the Trust, the February 19, 2008 Petition was clearly drafted to try to bring before the Texas court an issue that the Trustee Defendants and their counsel hoped would persuade this Court to decline to hear the dispute first brought in the Amended Complaint.

18.    In other words, while Defendants were imposing on the professional courtesy extended by Plaintiffs' counsel to obtain extensions of time to respond to the complaint here in

- 4 -

New York, they were preparing to launch a proceeding that they hoped to use as a rationale for obtaining dismissal of the complaint to which their response was being delayed.

**The Special Appearance Detailing the Lack of Jurisdiction of the Texas Court**

19.     Significantly, when Texas counsel for Plaintiffs herein (with Krystal, respondents in the Texas proceeding) asked Ms. Sanders (as noted, Texas counsel for the Trustee Defendants -- petitioners there) for a mere three-day extension of time to submit papers in response to the petition, Ms. Sanders (apparently instructed by Mr. Duerr and/or his clients) refused that minimal courtesy.  Counsel for Plaintiffs (respondents in the Texas proceeding) were required to work over the weekend and St. Patrick's Day (a Monday) in order to prepare and file their response, on March 18, 2008.

20.     Attached as Exhibit B is a copy of that response.  Entitled "Motion for Special Appearance," it is a detailed (28-page) pleading, spelling out the reasons why the Texas Probate Court lacks both personal and, most particularly, subject matter jurisdiction, not only over the issues raised by the February 19, 2008 Petition but indeed over Mr. Wheeler's entire estate.

21.     That responsive pleading warrants careful review by this Court, because it explains the compelling, and numerous, reasons why the proceeding in Texas is not one to which this Court should -- or can -- defer on the issue of jurisdiction.

22.     Among other things, the portion of the Special Appearance explaining the lack of subject matter jurisdiction is on pages 5 through 20.  Those pages in particular are incorporated by reference herein.  They address, and refute, the claims of jurisdiction set forth in the Sanders Affidavit herein and exhibits thereto.

23.     The Special Appearance notes the virtual absence of any estate assets in the State of Texas.  It also notes the recital in the will admitted to probate (Sanders Ex. 5) that Mr.

Wheeler resided in Florida, and the rule of Texas law that recitals in wills as to a testator's residence are presumptively determinative of the issue of domicile. (Ex. B, p. 6, ¶ 20)

**Forthcoming Jurisdictional Discovery**

24.     I am informed that the El Paso Probate Court has fixed June 10, 2008 as a date for a hearing on respondents' (Plaintiffs here) jurisdictional objections set forth in their Special Appearance.  At what is known as a "judge's conference" on March 25, 2008, he indicated that respondents (Plaintiffs here) could proceed with discovery on the jurisdictional issues, but Ms. Sanders has raised an objection as to what the scope of that discovery should be.  It is anticipated in any event that before the June 10 hearing date discovery on jurisdictional issues will be conducted and that the Texas Probate Court will determine the objections in the Special Appearance before proceeding with any consideration of the merits of the Trustee Defendants' February 19, 2008 Petition.

**The Amendments to the Death Certificate Made Four Months After Mr. Wheeler Died**

25.     Attached as Ex. C is a copy of the amended death certificate obtained from the authorities in Florida.  It reflects that Mr. Wheeler's state of residence was originally shown as Florida but that four months later it was amended to El Paso.

26.     Further explanation of this unusual and suspect document is provided in the accompanying affidavit of Plaintiff Charlene Royce.

**Fourth Stage Renal Cancer**

27.     The death certificate confirms that the cause of Mr. Wheeler's death was renal (or kidney) cancer (Item 4a), which he is said to have suffered for a one-year period (Item 4b).

28.     As noted in the Amended Complaint, Mr. Wheeler is understood to have been suffering "stage four" cancer during the final months of his life, including during the several

weeks before his death during which the suspect trust documents are dated (Amended Complaint ¶ 65-66).

29.     The severe and irreversible nature of stage four renal cancer is evident from medical literature. *See* Website of the National Cancer Institute (www.cancer.gov) "Renal Cancer Treatment PDQ", p. 6.


I declare under penalty of perjury that the foregoing is true and correct.

_____
Charles G. Berry

Executed on April 23, 2008 in New York, New York.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————    x

CHARLENE A. ROYCE, as parent and guardian    :
of TIFFANY M. WHEELER, a Minor,

                **Plaintiff,**    :

        - against -    :    <u>AMENDED COMPLAINT</u>

THOMAS R. WHEELER, LISA W. HUZELLA,    :    TRIAL BY JURY REQUESTED
and MICHAELON A. WRIGHT, each individually
and as acting successor trustee of the    :
Thomas M. Wheeler Revocable Trust, u/a dated
April 9, 1986, as Amended and Restated,    :    07-CV-10968 (RWS) (FM)
43 WEST 64TH STREET LLC, a Michigan
corporation, and WHEELER FAMILY    :
FOUNDATION, INC., a Delaware nonprofit
corporation,    :

             **Defendants,**    :

      - and -    :

KRYSTAL WHEELER,    :

          **Nominal Defendant.**    :

———————————————————————    x

RECEIVED
DEC 19 2007
U.S.D.C. S.D. N.Y.
CASHIERS

      Plaintiff, Charlene Royce ("Plaintiff"), as parent and guardian of Tiffany M. Wheeler, an

infant, by and through Plaintiff's undersigned attorneys, for her Complaint against Thomas R.

Wheeler, Lisa W. Huzella, Michaelon A. Wright (each individually and as acting successor

trustee of the Thomas M. Wheeler Revocable Trust, u/a dated April 9, 1986, as Amended and

Restated (the "Wheeler Trust" or the "Trust")) (collectively, the "Individual Defendants"), 43

West 64th Street LLC and the Wheeler Family Foundation, Inc. (collectively, "Defendants"),

alleges as follows:

- 2 -

## Introduction

1.      This is an action for construction of an instrument and declaratory and related relief concerning the rights of Plaintiff's ward, her minor daughter, Tiffany M. Wheeler ("Tiffany"), with respect to (a) an *inter vivos* trust established by Tiffany's father, Thomas M. Wheeler, who died in Florida on February 8, 2007 ("Mr. Wheeler") and (b) a condominium apartment at 43 West 64th Street, New York, New York (Unit 4A, with Storage Units Nos. 7 and 8 and appurtenant property and rights), where Tiffany and her sister Krystal live with their mother (the "Apartment").

2.      This action is brought in order that Plaintiff, on behalf of her daughter and legal ward, Tiffany, whose interests Plaintiff is charged with protecting, may determine Tiffany's rights in and to her father's substantial wealth.

3.      As set forth in further detail below, a 2002 amendment to the Wheeler Trust (which, upon information and belief held a substantial portion of Mr. Wheeler's wealth at the time of his death) provided that Tiffany and her sister Krystal (or further trusts for their benefit) were entitled to an equal share with their half-siblings (the Individual Defendants herein) of the property disposed of under the Trust.

4.      Shortly before Mr. Wheeler died, after a long period of suffering in the advanced stages of kidney cancer, he purportedly executed two amendments to the Trust that significantly reduced Tiffany's (and Krystal's) interests thereunder. The first of those suspect amendments, dated January 6, 2007 (one month before Mr. Wheeler died), reduced the girls' share of the Trust to a fixed dollar amount and shared ownership of the Apartment (all to be held in further trust). The second amendment, dated January 22, 2007 (17 days before he died), purported to deprive them of the Apartment and leave them only the fixed dollar amount in trust.

- 3 -

5.      The circumstances under which those purported amendments were executed raise grave concerns.

6.      At the times those suspect documents were prepared and purportedly executed, Mr. Wheeler was in an acute and terminal medical condition. Upon information and belief, he received extensive medication and treatment at a medical facility in Arizona for many months until early February 2007, when he was flown to West Palm Beach, Florida, where he died in the ICU of a hospital a few days later.

7.      In addition, Mr. Wheeler's living situation in Arizona presented ample opportunity for subjecting him to undue influence by his only son, Defendant Thomas R. Wheeler ("Tommy"), from whom, upon information and belief, Mr. Wheeler had previously been estranged for some years, and by Tommy's two sisters, Defendants Lisa W. Huzella and Michaelon A. Wright (half-sisters of Tiffany and Krystal). During most of Mr. Wheeler's final illness and at the time of the suspect documents, he was far away from any of his personal residences and confined primarily to a house owned by or on behalf of Tommy in Fountain Hills, Arizona.

8.      In addition, upon information and belief, the Individual Defendants made a concerted effort during the period of Mr. Wheeler's confinement and medical treatment in Arizona during his final illness to deprive him of access to his two younger daughters, despite his unfailing affection for them and declared desire to see them.

9.      It is also significant that the suspect amendments executed so shortly before Mr. Wheeler's death were not drafted by the lawyers who had prepared the original trust instrument in 1986 and prior amendments, including the 2002 amendment under which Tiffany and Krystal were treated essentially equally with their half-siblings. Instead, the January 2007 amendments

- 4 -

were drafted (and the execution of at least the first of them supervised) by a different set of lawyers. Upon information and belief, those lawyers owed their primary allegiance to Mr. Wheeler's son, Defendant Thomas R. Wheeler, and to businesses and interests that were or were expected to be owned or controlled by him, and they appear to have been in a position of conflict of interest in preparing the January 2007 documents.

10.     The provisions of purported amendments that relate to Tiffany and Krystal, moreover, were utterly contrary to the long-standing desire consistently expressed by Mr. Wheeler -- to Plaintiff, Tiffany, Krystal and others -- that Tiffany and Krystal be treated equally with their half-siblings upon his death and that the girls continue to live in and eventually own the Apartment.

11.     The January 2007 amendments also reflected a significant reduction in the property that was to pass to the Wheeler Family Foundation, a charitable corporation organized pursuant to Section 501(c)(3) of the Internal Revenue Code, compared to what it was to receive under the 2002 amendment.

12.     The Individual Defendants and/or their counsel have tried to deter any inquiry into the disturbing circumstances presented herein by withholding from Plaintiff and her daughters until very recently a copy of the 2002 amendment to the Trust, under which Tiffany and Krystal receive essentially equal treatment with their half-siblings with respect to the property in their father's Trust.

13.     In addition, the suspect amendments drafted by Defendants' counsel purport to contain *in terrorem* clauses aimed at dissuading Tiffany and Krystal (and their mother, Plaintiff Charlene Royce, as legal guardian of Tiffany) from challenging the validity of those amendments. The relief sought here has accordingly been styled in order not to trigger those

- 5 -

clauses in the purported January 2007 amendments or abridge the girls' rights in the Wheeler

Trust, but seeks a construction and determination that the *in terrorem* clauses are unenforceable

and ineffective to preclude the other relief sought herein.

### Parties

14.     Plaintiff, Charlene Royce, is the mother and legal guardian of Tiffany M.

Wheeler, a minor. They reside together at 43 West 64th Street, Unit 4A, New York, New York.

15.     Defendant Thomas R. Wheeler ("Tommy") is a resident of the State of Colorado,

residing at 910 Ute Avenue, Aspen, Colorado 81611. Upon information and belief, he is the

Chairman of TMW Enterprises, Inc. and maintains a place of business at the corporate offices

thereof, at 2120 Austin Avenue, Rochester Hills, Michigan 48309. He is sued herein

individually and as purported successor trustee of the Wheeler Trust.

16.     Defendant Lisa W. Huzella ("Lisa") is a resident of the State of Colorado,

residing at 387 Pilgrim Downs, Edwards, Colorado 81632. She is sued herein individually and

as purported successor trustee of the Wheeler Trust.

17.     Defendant Michaelon A. Wright ("Michaelon") is a resident of the State of

Florida, residing at 530 Ocean Drive #1002, Juno Beach, Florida. She is sued herein

individually and as purported successor trustee of the Wheeler Trust.

18.     Defendant 43 West 64th Street LLC is a Michigan limited liability company, duly

organized and existing under the laws of Michigan, and, upon information and belief, maintains

its principal place of business at 2120 Austin Avenue, Rochester Hills, Michigan 48309.

19.     Defendant the Wheeler Family Foundation, Inc. (the "Family Foundation") is a

Delaware corporation with its offices at 2120 Austin Avenue, Rochester Hills, Michigan 48309.

According to its Certificate of Incorporation, it was formed as a nonprofit corporation for

- 6 -

"exclusively religious, charitable, literary and educational [purposes] within the meaning of

Section 501(c)(3) of the Internal Revenue Code of 1986, as amended," and its registered agent

for service of process is The Corporation Trust Company at 1209 Orange Street, Wilmington,

Delaware 19801. The Family Foundation is named as a defendant herein because its interests

under the January 2007 amendments differ from those under the 2002 amendments.

20. Nominal defendant Krystal Wheeler resides with her sister, Tiffany, and mother,

Plaintiff Charlene Royce, at 43 West 64th Street, Unit 4A, New York, New York. Krystal is

named solely as a nominal defendant, as her interests herein are aligned with Tiffany's.

21. In accordance with Rule 19(c) of the Federal Rules of Civil Procedure, Plaintiff

states that she does not join in this action Lizeth Modesto, who upon information and belief was

a close personal friend of the decedent Thomas M. Wheeler in the final years of his life and is

believed to be a resident of the State of Texas. Although Ms. Modesto was not provided for in

the 2002 amendment, the January 2007 amendments specify that she is to receive $1 million

upon Mr. Wheeler's death. Plaintiff does not seek to disturb that provision but will undertake to

advise Ms. Modesto of the pendency of this proceeding in case she would like an opportunity to

appear and participate herein.

## Jurisdiction and Venue

22. This Court has diversity jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. § 1332. The matter in controversy exceeds the sum of $75,000, exclusive of

interest and costs, and the action is between a citizen of the State of New York (Plaintiff) and

citizens of foreign states (Defendants).

23. This Court has personal jurisdiction over the Individual Defendants by virtue of

the acts they have taken and purported to take with respect to property of the Wheeler Trust that

is now or has been located in the State of New York. This includes, without limitation, the

- 7 -

Apartment and securities or other accounts that, upon information and belief, are or have been located in, or borrowings that have occurred, in the State of New York. Such acts by one or more of the Individual Defendants have included, *inter alia*, communications, directly and through agents, to and from the State of New York.

24.     This Court has personal jurisdiction over Defendant 43 West 64th Street LLC because, *inter alia*, its main asset, the Apartment at 43 West 64th Street (Unit 4A and related real property) is located in the State of New York.

25.     This Court has personal jurisdiction over Defendant Wheeler Family Foundation, Inc., because, on information and belief, during the relevant period it has regularly conducted and transacted business, and retained investment professionals in the State of New York.

26.     This Court has personal jurisdiction over Nominal Defendant Krystal Wheeler since she resides in the State of New York, although under applicable rules and precedent she may be deemed a plaintiff for diversity jurisdiction purposes.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2).

### Facts

**A. Tiffany Wheeler and Mr. Wheeler's Love for Her and Her Sister Krystal**

28.     Tiffany (age 17) is the youngest of the five children of Thomas M. Wheeler.

29.     She and her sister, Krystal Wheeler (age 19), live with their mother, Plaintiff Charlene Royce, at the Apartment.

30.     Tiffany's father had great affection for her and for her sister Krystal.

31.     Although the girls lived with their mother after their parents separated, Thomas M. Wheeler frequently visited with Tiffany and Krystal and their mother and made lengthy trips together with them.

- 8 -

32.    Mr. Wheeler consistently expressed his love and affection for Tiffany and

Krystal.

33.    Mr. Wheeler also advised Tiffany and Krystal and their mother, Plaintiff,

Charlene Royce, that he intended to provide for the girls equally with their half-siblings upon his

death.

34.    Tiffany and Krystal have three half-siblings, in their 50's, Defendants Thomas R.

Wheeler, Liza W. Huzella and Michaelon A. Wright (the "Individual Defendants").

35.    Mr. Wheeler told Plaintiff that he had bought houses for each of the Individual

Defendants (or provided funds to enable each of them to do so) and that he wanted to provide for

each of Tiffany and Krystal in a similar way.  He said he wanted to be sure that the two girls

were taken care of as generously and comfortably as their older half-siblings.

**B. The Apartment and Mr. Wheeler's Promise that Tiffany and Her Sister
   Would Have the Ability to Continue Living There after His Death.**

36.    For many years Tiffany and Krystal lived in Aspen, Colorado, first with both their

parents and then with their mother.

37.    In 2003 the girls moved to New York City with their mother and began to reside

in the Apartment.

38.    Mr. Wheeler, through the Wheeler Trust, bought the Apartment for Tiffany and

Krystal to live in, and he often saw them there before his final illness.

39.    Mr. Wheeler told the girls and their mother, Plaintiff Charlene Royce, that he

wanted the girls to have the Apartment (or the ability to live in a comparable residence) after his

death, and that he had made and would continue to make such provision for them.

40.    Mr. Wheeler also told the girls and Plaintiff that it was important for him to

ensure that Tiffany and Krystal continue to be able to live in the manner and lifestyle that he had

made possible for them during his lifetime, and that he had made and would continue to make such provision for them.

41.     In reliance on Mr. Wheeler's representation that he would make provision for Tiffany and Krystal to enable them to continue to live in the Apartment or a comparable residence, Plaintiff (a) paid the monthly carrying charges, including utilities and monthly condominium association fees and other assessments with respect to the Apartment and (b) did not pursue opportunities to purchase another suitable apartment in New York for them, in the face of a rapidly rising real estate market.

**B. Thomas M. Wheeler, Electro-Wire and TMW Enterprises**

42.     Tiffany's father, Thomas M. Wheeler (not to be confused with his son, Thomas R. Wheeler, who has a different middle initial), was a highly successful businessman who owned and controlled substantial assets at the time of his death.

43.     Among Mr. Wheeler's successful business ventures was a company called Electro-Wire Products, which he founded in the early 1970's. Under his leadership Electro-Wire grew and prospered, with annual revenue exceeding $500 million by 1995, at which time its core operations were sold to Alcoa for several hundred million dollars.

44.     After selling the core operations of Electro-Wire, the company was renamed TMW Enterprises, Inc. ("TMW").

45.     After the Electro-Wire sale, Mr. Wheeler continued to invest in a variety of businesses and real estate through TMW.

46.     TMW's corporate headquarters are located in Rochester Hills, Michigan.

47.     TMW was privately held during Mr. Wheeler's lifetime and continues to be privately held today.

48.   Upon information and belief, Tommy Wheeler (Mr. Wheeler's son) succeeded his
father as Chairman of TMW sometime before Mr. Wheeler's death.

**C. The Wheeler Trust and 2002 Amendment**

49.   Upon information and belief, prior to Mr. Wheeler's death in February 2007, he
placed a substantial portion of the property that he owned and controlled in a revocable *inter
vivos* trust he first established in 1986 and subsequently amended and restated.

50.   On April 9, 1986 Mr. Wheeler created the Thomas M. Wheeler Revocable Trust,
under agreement between himself as Settlor and as Trustee (the "Wheeler Trust"). After
amendments dated December 14, 1995 and April 15, 1996, Mr. Wheeler executed the "2002
Amendment and Restatement of the Thomas M. Wheeler Revocable Trust," dated May 11, 2002
(the "2002 Amendment").

51.   The 2002 Amendment  provided that, after various specific gifts of cash and
property and a substantial provision for the Wheeler Family Foundation, the rest of the trust
property would be distributed in equal shares to his five children, with the shares for his younger
daughters, Tiffany and Krystal, to be held in trust.

52.   The 2002 Amendment also provided that all of Mr. Wheeler's tangible personal
property held in the Trust be given "in as nearly equal shares as practicable" to each of his five
children.

53.   The successor trustees named in the 2002 Amendment, to succeed Mr. Wheeler
upon his death or resignation, were two individuals and a corporate trustee.  One individual
(referred to as the "Family Trustee") was to be selected by majority vote of his three oldest
children from among Mr. Wheeler's descendants; the other individual (referred to as the "Family
Office Trustee") was to be selected by the president of TMW from among four named

- 11 -

individuals who were longtime employees or advisors of that family business. The designated "Corporate Trustee" was The Rockefeller Trust Company of New York, New York.

54.    The 2002 Amendment contained a governing law provision specifying New York law. In particular, Article EIGHTH thereof provided: "The validity, construction and effect of the provisions of this Agreement, in all respects, shall be governed and regulated according to and by the laws of the State of New York and all questions involving the validity and administration of any trust hereby created shall be determined in accordance with said laws."

55.    Among the witnesses to the 2002 Amendment were Laurence M. Luke and James P. Dean, both lawyers who had represented Mr. Wheeler and his interests for a long time. Mr. Luke prepared the initial 1986 Trust instrument, and Mr. Dean had witnessed the execution of the December 14, 1995 and April 15, 1996 amendments.

**D. Mr. Wheeler's Final Illness and Confinement in Arizona**

56.    Mr. Wheeler died in Florida on February 8, 2007 after a long struggle with kidney cancer.

57.    Mr. Wheeler learned of problems with his kidneys some years before he was diagnosed with cancer.

58.    In February 2006 he had one kidney removed as part of his cancer treatment.

59.    By June 2006 he was weak and depressed and seriously concerned about the likely terminal nature of his illness.

60.    Although Mr. Wheeler had been alienated from his son, Defendant Thomas R. Wheeler, for some years, he was persuaded to undergo treatment at a medical facility near a home that was, upon information and belief, owned or occupied by Tommy in Fountain Hills, Arizona.

61.    In September 2006 Mr. Wheeler began treatment at a medical facility near Tommy's home in Fountain Hills.

62.    Upon information and belief, Mr. Wheeler stayed at Tommy's home until the first week of February 2007, when he was flown in a private jet to West Palm Beach, Florida, shortly before his death.

63.    During the time that Mr. Wheeler was confined to Tommy's home in Arizona, communications with his youngest daughters, Tiffany and Krystal, were cut off, and requests that they and Plaintiff made to visit him and even to obtain his telephone number were refused.

64.    The course of Mr. Wheeler's illness while he was confined in Arizona was painful and inexorable.

65.    When Mr. Wheeler was on his death bed in February one or more of the Individual Defendants reported to Plaintiff for the first time that in October 2006 Mr. Wheeler had suffered a particularly acute episode and almost died.

66.    Upon information and belief, during the time of Mr. Wheeler's confinement in Arizona he was suffering from stage four cancer and required multiple blood transfusions each week.

67.    During that time he received extensive medication, including pain killers.

68.    Mr. Wheeler also had 24-hour private nursing care for much of the time that he was in Arizona.

**E. The suspect January 6, 2007 and January 22, 2007 Amendments**

69.    On Saturday, January 6, 2007 Mr. Wheeler purportedly executed an amended and restated trust agreement dramatically reducing the interests of his youngest daughters, Tiffany and Krystal, in the distributions to be made from the Wheeler Trust upon his death.

- 13 -

70.     The January 6, 2007 document was prepared by the Michigan firm of Honigman, Miller Schwartz and Cohn LLP.  Two partners of that firm, Charles Nida and Patrick Duerr, signed as witnesses.

71.     On the same day, a purported Last Will and Testament was executed by Mr. Wheeler, also witnessed by Messrs. Nida and Duerr.  This document recites that Mr. Wheeler is "of the City of Palm Beach Gardens, County of Palm Beach, and State of Florida," and that the document was signed "at the City of Fountain Hills, County of Maricopa, and State of Arizona."

72.     Upon information and belief, the purported will dated January 6, 2007 has not been probated or offered for probate, and no notice of any probate or probate proceeding has been sent to or received by Tiffany or any representative for her.

73.     The purported January 6, 2007 amendment to the Wheeler Trust purports to reduce the interests of Tiffany and Krystal under the Wheeler Trust from an equal share of the residue with their half-siblings, the Individual Defendants, to a gift in trust of $5 million each and a one-half share each of the ownership rights to the Apartment (also in trust).

74.     The January 6, 2007 document also purports to change the fiduciary designations for the Wheeler Trust, naming the Individual Defendants, Thomas R. Wheeler, Lisa W. Huzella and Michaelon A. Wheeler, as successor trustees instead of the Family Trustee, Family Office Trustee and Corporate Trustee provided for under the 2002 Amendment.

75.     The January 22, 2007 document was also prepared by the Honigman firm, but it was not witnessed by Messrs. Nida or Duerr or any other lawyers from that firm.

76.     The January 22, 2007 document was also purportedly signed in Fountain Hills, Arizona.

- 14 -

77.    The January 22, 2007 purportedly further reduces the interests of Tiffany and Krystal under the Wheeler Trust by eliminating the distribution to them of shared ownership of the Apartment.

78.    Both the January 6, 2007 and January 22, 2007 documents contain a purported *in terrorem* clause, providing, *inter alia*, that distributions to any beneficiary challenging the validity of those purported trust agreements (or the purported will dated January 6, 2007) will lapse.

79.    The purported *in terrorem* clauses in the purported January 6, 2007 and January 22, 2007 amendments to the Wheeler Trust, however, are unenforceable and ineffective to preclude the relief sought herein.

**F.  Ownership of the Apartment**

80.    After Mr. Wheeler's death the Individual Defendants have purported to act as successor trustees of the Wheeler Trust.

81.    Among other acts that the Individual Defendants have undertaken as purported successor trustees, they have, through their counsel at the Honigman firm, threatened to evict Tiffany and Krystal from the Apartment.

82.    In May or June 2007, with the assistance of the Honigman firm, the Individual Defendants purported to arrange the transfer from the Wheeler Trust to Defendant 43 West 64th Street LLC (a Michigan corporation) of ownership of the Apartment and appurtenant property.

83.    In light of the foregoing facts and circumstances, a substantial issue exists as to whether the purported transfer of the Apartment to Defendant 43 West 64th Street LLC was valid.

- 15 -

## FIRST CAUSE OF ACTION
### (Construction)

84.     Plaintiff repeats and realleges each and every allegation set forth in the foregoing

paragraphs.

85.     By virtue of the foregoing, Plaintiff is entitled to an order construing the *in*

*terrorem* clause of the purported January 6, 2007 and January 22, 2007 amendments, and

declaring that Plaintiff is entitled, without triggering or violating such clause, to full discovery

into relevant facts relating to (a) the circumstances of the preparation and execution of those

documents, (b) the physical, mental and emotional condition of Thomas M. Wheeler at the time

of executing those documents and for the relevant period prior and subsequent thereto, (c) his

possible subjection to undue influence and/or fraud by Defendant Thomas R. Wheeler, the other

Individual Defendants and any of their agents or others, (d) the nature and extent of the assets

held by the Wheeler Trust at all relevant times and (e) the nature and extent of all transfers of

assets by the Wheeler Trust and/or Mr. Wheeler to any of the Individual Defendants, including,

without limitation, the nature and extent of all gifts and loans to them.

## SECOND CAUSE OF ACTION
### (Declaratory Relief)

86.     Plaintiff repeats and realleges each and every allegation set forth in the foregoing

paragraphs.

87.     By virtue of the foregoing, Plaintiff is entitled to a declaration, upon completion

of the discovery described above, determining (a) whether and to what extent either or both of

the subject January 2007 documents are invalid and (b) who the duly authorized Trustees are of

the Wheeler Trust.

- 16 -

### THIRD CAUSE OF ACTION
### (Accounting by Duly Authorized Trustees)

88.    Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs.

89.    By virtue of the foregoing, Plaintiff is entitled to an accounting by the duly authorized Trustees of the Wheeler Trust of all proceedings with respect thereto from the inception of the Trust to the date of the accounting.

### FOURTH CAUSE OF ACTION
### (Accounting by Individual Defendants)

90.    Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs.

91.    By virtue of the foregoing, Plaintiff is entitled to an accounting by the Individual Defendants with respect to all distributions made to them at any time of property held by the Wheeler Trust.

### FOURTH CAUSE OF ACTION
### (Declaration of Rights with respect to the Apartment; Constructive Trust)

92.    Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs.

93.    By virtue of the foregoing, Plaintiff is entitled to a declaration as to the ownership of and right to occupy the Apartment.

94.    By virtue of the foregoing, Plaintiff is entitled to a declaration as to whether the 43 West 64th Street LLC holds the Apartment in constructive trust for Plaintiff's ward, Tiffany Wheeler.

- 17 -

## **Prayer for Relief**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a)  construing the subject January 6, 2007 and January 22, 2007 documents, in light of applicable law, and determining and declaring that Plaintiff may pursue discovery and other proceedings with respect to the validity of said documents without triggering or violating the *in terrorem* clauses therein;

b)  determining and declaring, upon completion of such discovery, whether either or both of the purported January 6, 2007 and January 22, 2007 amendments are invalid;

c)  determining and declaring, upon completion of such discovery, who are the duly authorized Trustees of the Wheeler Trust;

d)  requiring the duly authorized Trustees to provide an accounting of the Trust, from inception to the date of Mr. Wheeler's death and from that date to the present;

e)  requiring Defendants Thomas R. Wheeler, Lisa W. Huzella and Michaelon A. Wheeler to account for all distributions made to them of property held by the Wheeler Trust;

f)  determining and declaring, upon completion of appropriate discovery, whether the purported transfer of the condominium Apartment at 43 West 64th Street, New York, New York from the Thomas M. Wheeler Trust to 43 West 64th Street LLC was valid and whether 43 West 64th Street LLC holds the Apartment in constructive trust for Tiffany Wheeler;

g)  awarding Plaintiff all costs, expenses and reasonable attorneys fees incurred in prosecuting this action; and

- 18 -

h)    awarding Plaintiff such further relief as may be necessary to make effective the

rights declared herein, and any other relief as the Court deems proper.

Dated: New York, New York
       December 19, 2007

Respectfully submitted,

ARNOLD & PORTER LLP

By: _____
    Charles G. Berry (CB 2389)
    Yue-Han Chow (YC 4393)
    399 Park Avenue
    New York NY 10022-4690
    (212) 715-1000
    Fax. No.: (212) 715-1399
    Charles.Berry@aporter.com
    Yue-Han Chow@aporter.com

*Attorneys for Plaintiff, Charlene Royce, as Parent
and Legal Guardian of Tiffany M. Wheeler, a Minor*

MAR 1 8 2008

IN THE STATUTORY PROBATE COURT #2

EL PASO COUNTY, TEXAS

FILED_____
COUNTY CLERK, EL PASO CO., TAS
DELIA BRIONES
BY _____
DEP

IN THE MATTER OF THE ESTATE    §
                               §
OF                             §    No. 2007-P00529
                               §
THOMAS M. WHEELER, Deceased     §
                               §

## MOTION FOR SPECIAL APPEARANCE PURSUANT TO TRCP 120a; SUBJECT TO SPECIAL APPEARANCE AND IN THE ALTERNATIVE PLEA TO THE JURISDICTION PURSUANT TO TRCP 85; SUBJECT TO SPECIAL APPEARANCE AND ALSO IN THE ALTERNATIVE PLEA IN ABATEMENT; ALSO SUBJECT TO SPECIAL APPEARANCE AND ALSO IN THE ALTERNATIVE ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND JURY REQUEST

## TO THE HONORABLE JUDGE OF SAID COURT:

Respondents Krystal Wheeler and Tiffany M. Wheeler, both daughters of Thomas M. Wheeler, deceased ("Decedent"), and Respondent Charlene Royce, their mother, who is named herein as natural guardian of Tiffany M. Wheeler, all of whom reside at 43 West 64th Street, Apartment 4A, New York, New York (collectively, "Respondents"), through their attorneys, Rincon Mounts, P.C. and Max D. Higgs, Esq., in response to the "Original Petition for Declaratory Judgment," filed February 19, 2008 (the "Petition") of Petitioners Thomas R. Wheeler, Michaelon A. Wright and Lisa W. Huzella ("Petitioners"), purportedly acting in their capacities as Independent Co-Executors of Decedent's Estate (the "Estate"), hereby pursuant to Texas Rule of Civil Procedure 120a make a special appearance objecting to the lack of personal jurisdiction of this Court over Respondents. Subject to the special appearance and in the alternative and pursuant to Texas Rule of Civil Procedure 85, Respondents assert a Plea to the Jurisdiction, objecting to the subject matter jurisdiction and venue of this Court with respect to

(a) this proceeding, (b) the subject Petition and (c) the previously filed probate proceeding. Also, subject to the special appearance, and in the alternative, Respondents assert a Plea in Abatement. Also subject to the special appearance and also in the alternative, Respondents make an original answer, affirmative defenses and request for a jury to the subject petition.

## Motion for Special Appearance pursuant to TRCP 120A

### A. Lack of Personal Jurisdiction over Respondents

1. The Petition may be dismissed for -- and this special appearance is made to assert -- lack of personal jurisdiction over Respondents.

2. This Court lacks personal jurisdiction over Respondents, and they respectfully request that the Petition be dismissed with prejudice.

3. As noted above, Respondents reside in New York City. They have lived there for several years.

4. Respondents have no connection or contact with the State of Texas. They do not own property here and have not engaged in any activity or course of conduct here.

5. The Court cannot exercise personal jurisdiction over Respondents in connection with the subject Petition because of their lack of contacts with this State.

6. When determining whether a foreign defendant must defend itself in a Texas court when a suit is brought against it by a Texas plaintiff (in the case at hand, none of Petitioners is a Texas resident), each case must be decided individually on its own facts. *Southwest Offset, Inc. v. Hudco Pub. Co.*, 622 F.2d 149, 151 (5th Cir. 1980). A Texas court may assert personal jurisdiction over a foreign defendant if the defendant (1) was amenable to service of process under the Texas long arm statute; and (2) the exercise of jurisdiction under Texas law is consistent with federal and state constitutional guarantees of due process. U.S. CONST. Amend. XIV, § 1; Tex. Civ. Prac. & Rem. Code § 17.042; *Helicopteros Nacionales de Colombia v. Hall*,

- 2 -

466 U.S. 408, 413 14 (1984); *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 95 (Tex. 1996). The Texas Supreme Court has consistently interpreted the long arm statute as reaching "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Thus, the requirements of the Texas long arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *See id.; CSR, Ltd.*, 925 S.W.2d at 594.

7.  Under the Due Process Clause, a defendant must have sufficient minimum contacts with the forum so that maintaining suit there will not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (U.S. 1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). A nonresident defendant who has purposefully availed himself of the privileges and benefits of the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 76 (1985). A defendant, however, should not be subjected to the jurisdiction of a foreign court based on random, fortuitous, or attenuated contacts. *See id.; CSR, Ltd.*, 925 S.W.2d at 595.

8.  The Texas Supreme Court has articulated a three pronged formula to ensure compliance with the federal due process standard: (1) there must be a substantial connection between the nonresident defendant and Texas arising from some action or conduct of the nonresident defendant purposefully directed toward Texas; (2) the cause of action must arise out of or relate to the defendant's contacts with Texas (specific jurisdiction), or if not, the defendant's contacts with Texas must be continuing and systematic (general jurisdiction); and (3) the assumption of jurisdiction must not offend traditional notions of fair play and substantial justice. *In re S.A.V.*, 837 S.W.2d 80, 85 (Tex. 1992); *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.

- 3 -

1966). Neither the Texas formula nor any other test for personal jurisdiction should be applied mechanically. *Id.*

9. To assist in minimum contacts analysis, the Supreme Court has drawn a distinction between specific and general jurisdiction. *See Burger King Corp.*, 471 U.S. at 472 73); *Helicopteros*, 466 U.S. at 413 15. To establish specific jurisdiction, a plaintiff must show that a given defendant purposefully directed its activities at residents of the forum, and the litigation must result from activities that arise out of or relate to such defendant's activities directed at the forum. *Burger King Corp.*, 471 U.S. at 474; *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992).

10. Toward this end, a court should weigh the following factors: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Burger King Corp.*, 471 U.S. at 477.

11. General jurisdiction requires no connection between the claim and forum, but demands a much greater connection between the defendant and the forum:

> General jurisdiction is present when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction

*Helicopters*, 466 U.S. at 414 16; *CSR Ltd.*, 925 S.W.2d at 595. General jurisdiction requires more significant contacts between the defendants and the forum because it subjects the defendants to litigation of every variety and subject matter, even when unrelated to a party's contact with the forum. *O'Quinn v. World Industry Constructors, Inc.*, 874 F. Supp. 143, 144

- 4 -

145 (E.D. Tex.), aff'd, 68 F.3d 471 (5th Cir. 1995). General jurisdiction, in other words, is "dispute blind." *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999). Given its open ended nature, the standard for establishing general jurisdiction is high and requires that the defendant's contacts be of the sort that approximate physical presence. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "By definition, general jurisdiction only exists when a defendant's contact with the forum state is so pervasive and continuing that the defendant is effectively deemed to be a resident for purposes of personal jurisdiction." *In re Texas Prisoner Litig.*, 41 F.Supp.2d 960, 962 (W.D. Mo. 1999).

12. Here, Respondents have no contacts with Texas that create general jurisdiction over them, and specific jurisdiction is wholly lacking. As noted above, Respondents reside in New York City. They have lived there for several years. Respondents have no connection or contact with the State of Texas. They do not own property here and have not engaged in any activity or course of conduct here. The Court cannot exercise personal jurisdiction over Respondents in connection with the subject Petition because of their lack of contacts with this State.

**B. Subject to Special Appearance and In The Alternative, Plea to the Jurisdiction Pursuant to TRCP 85**

13. This Court lacks jurisdiction over the subject matter of this action, and Respondents respectfully request that it be dismissed with prejudice.

14. Petitioners have failed to establish the basis for subject matter jurisdiction and venue in this Court pursuant to Texas Probate Code §§ 5 and 6.

15. Petitioners have failed to establish, and to sustain their burden of proving, that the Decedent was domiciled in Texas or had sufficient property in Texas to warrant exercise of probate jurisdiction over his Estate.

{RM Files\0102\0001\00027567.DOC /}

**1. Petitioners have failed to present evidence refuting the recitation in the Will that Decedent was a resident of Florida.**

16. Petitioners filed Decedent's purported last will and testament dated January 6, 2007 (the "Will"), in this Court on May 29, 2007.

17. Petitioners alleged in their "Application for Probate of Will and Issuance of Letters Testamentary," dated May 29, 2007 (the "Probate Petition") that they are children of the Decedent and reside and are domiciled in Colorado (Thomas M. Wheeler and Lisa W. Huzella) and Florida (Michaelon A. Wright).

18. The Will recites that it was executed "at the City of Fountain Hills, County of Maricopa, and State of Arizona" (id. p. 14).

19. The Will recites that Decedent is "of the City of Palm Beach Gardens, County of Palm Beach, and State of **Florida**" (Will, p. 1).

20. The courts of this State recognize that "[r]ecitals and declarations in wills as to a testator's residence ordinarily carry great weight and will be accepted in the absence of a showing of a change of residence before death." See Estate of McKinney v. Hair, 434 S.W.2d 217, 218 (Tex. Civ. App., Waco 1968, writ ref'd n.r.e) (internal quotations omitted).

21. Petitioners have not shown that at any time after signing the proffered Will Decedent changed his residence from the Florida residence recited in that instrument.

22. In fact, as admitted in the Probate Petition (¶ 2), "Decedent died on February 9, 2007 in West Palm Beach, Palm Beach County, **Florida**."

**2. The Wheeler Trust and its successive restatements and amendments show that Decedent had selected Florida situs and choice of law for that instrument at the time of his death and, if the last amendments prove to be invalid for any reason, that he had selected New York law.**

23. At the time of Decedent's death he was the sole trustee of an inter vivos revocable trust first established in 1986 and amended and restated thereafter, the Thomas M. Wheeler

- 6 -

Revocable Trust, under agreement between Mr. Wheeler as grantor and Mr. Wheeler as trustee, dated April 9, 1986 (the "Wheeler Trust").[1]

24. Decedent executed the April 9, 1986 Wheeler Trust in the State of Michigan.

25. Decedent executed a restatement and amendment of the Wheeler Trust on December 14, 1995, also in the State of Michigan.

26. Decedent executed a further amendment of the Wheeler Trust on April 15, 1996, also in the State of Michigan.

27. Decedent executed a "2002 Amendment and Restatement of the Thomas M. Wheeler Revocable Trust" on May 11, 2002 (the "2002 Restated Trust").

28. The 2002 Restated Trust recited that Decedent was "of Palm Beach Gardens, **Florida.**" (p. 1)

29. The 2002 Restated Trust appointed as successor trustees (after Decedent's death or incapacity) a group of three, one of which -- designated as the "Corporate Trustee" -- was The Rockefeller Trust Company, New York, **New York**. (p. 13)

30. The 2002 Restated Trust provided that **New York** law would govern, as follows: "The validity, construction and effect of the provisions of this Agreement, in all respects, shall be governed and regulated according to and by the laws of the State of **New York** and all questions involving the validity and administration of any trust hereby created shall be determined in accordance with said laws."

31. Upon information and belief, all of the foregoing instruments (the original 1986 Wheeler Trust and the restatements and amendments through the 2002 Restated Trust) were

---

[1]  Most of the documents referred to herein are in the file of the Probate Court. All others are in the possession of Petitioners, and Respondents will furnish to the Court copies of any documents not already in its possession.

prepared by Decedent's then longtime Michigan counsel, Laurence M. Luke, and the firms with which he was associated, and executed under the supervision of him or one of his colleagues in the State of Michigan.

32.  On January 6, 2007 -- 34 days before Decedent died in Florida after a long battle with kidney cancer -- he purportedly executed a "Third and Amended Restated Trust Agreement" (the "January 6, 2007 Restatement").

33.  The January 6, 2007 Restatement provides that it is governed by **Florida** law, as follows:  **"Each trust under this Trust Agreement and this Trust Agreement shall be administered, interpreted and governed in accordance with the laws of the State of Florida."**

34.  The January 6, 2007 Restatement was purportedly executed at the same time as the Will of the same date, which, as noted above, provides that Decedent is "of the City of Palm Beach Gardens, County of Palm Beach, and State of Florida" (Will, p. 1) and recites that it was executed "at the City of Fountain Hills, County of Maricopa, and State of Arizona" (id. p. 14).

35.  On January 22, 2007 -- 18 days before Decedent died in Florida -- he purportedly executed yet another amendment to the Wheeler Trust, again at Fountain Hills, Arizona (the "January 22, 2007 Amendment").

36. The January 22, 2007 Amendment did not alter the choice of Florida law provided for in the January 6, 2007 Restatement.

37. Among other provisions, the January 22, 2007 Amendment (¶ 2A(4)(a), p. 2) provided a gift of $1,000,000 to one Lizeth Modesto if she survived Decedent.

38.  The January 22, 2007 Amendment (¶ 2A(5), pp. 3-4) also provided that the Trustee distribute "the condominium located at 5568 Pine Brooke, Bloomfield Hills, Michigan" and

- 8 -

other property to a Michigan charitable organization, the Wheeler Family Foundation, Inc. and specifically instructed that the disposition of the Michigan condominium be made "however such condominium may have been owned . . . as long as it was owned by the Settlor, the Initial Trust or any entity, including Palm Beach Gardens LLC . . ."

39. Documents obtained by Respondents indicate that Palm Beach Gardens LLC is a Michigan corporation, which was formed or qualified on January 17, 2007, with an address at Rochester Hills, Michigan, evidently to hold title to residential real estate in the State of Florida. (Palm Beach Gardens is the city in Florida in which the proffered Will and the 2002 Restated Trust recite that Decedent resided.)

40. Both of the "deathbed instruments" -- namely, the January 6, 2007 Restatement and the January 22, 2007 Amendment -- were prepared and executed under the supervision of lawyers from the Michigan firm of Honigman Miller Schwartz and Cohn LLP ("Honigman"), including two of its partners, Patrick T. Duerr ("Duerr") and Charles Nida. These were not the same lawyers (including Mr. Luke) who had prepared the original 1986 Wheeler Trust and the other restatements and amendments, including the 2002 Restated Trust.

41. Both the January 6, 2007 Restatement and the January 22, 2007 Amendment reduced significantly the interest of Respondents Krystal and Tiffany Wheeler in the Wheeler Trust from the provision for them in the 2002 Restated Trust, in which they were treated essentially equally with their half-siblings, Petitioners herein.

## 3. Decedent's longstanding and continuing ties with the State of Michigan

42. Decedent was born in Kalamazoo, Michigan. His funeral service was in Kalamazoo, Michigan, and he is buried there.

43. Upon information and belief, for many years before his death, the primary business holding of Decedent (either directly or through trusts or other holdings) was in a company called TMW Enterprises, which is headquartered in Troy, **Michigan.**

44. Petitioners have not disclosed whether at the time of Decedent's death TMW Enterprises maintained any office or address in El Paso County, but upon information and belief it did not.

45. For many decades, if not Decedent's entire life, his personal business affairs were handled out of one or more offices in **Michigan,** including for many years prior to his death an office in Rochester Hills, **Michigan.**

46. Among others assisting in handling his affairs was one Margaret M. Bargardi, who upon information and belief resided and worked in Michigan at all relevant times. In addition to other responsibilities, she had signatory authority over one or more checking accounts for Decedent or entities under his control.

4. **Decedent's lack of jurisdictionally adequate ties with the State of Texas; the non-Texas nature of the Estate's property as revealed by the Inventory; and the out-of-state domicile of all but one of the interested parties.**

47. As Petitioners have confirmed, at the time of his death Decedent did not own any real property in El Paso County, Texas.

48. Although the Probate Petition recites that "Decedent owned property of a value in excess of $10,000.00 situated in El Paso, El Paso County, Texas" (¶ 4. p. 1), neither any of the Petitioners (all out-of-state residents) nor their appointed resident agent, attorney Amy Stewart Sanders (whose appointment by all three Petitioners was filed with this Court on July 13, 2007) has proffered any evidence of such property located in El Paso, Texas.

49. The "Inventory, Appraisement and List of Claims" filed with the Court on February 11, 2008 by Ms. Sanders, as attorney for Petitioners (the "Inventory") lists various property of

- 10 -

the Estate but does not specify whether any of the listed property is located in the State of Texas or in El Paso County. It appears that most, if not all of it, does not.

50. The Inventory shows that the Estate does not include any real property, in Texas or anywhere else (p. 1).

51. The Inventory lists two bank accounts, with aggregate funds of $20,247, and identifies them as accounts at "Bessemer Trust" and "Huntington National Bank." Upon information and belief, neither of those accounts is located in Texas or in El Paso County, nor does either of those banks even maintain a branch or office in El Paso County. The Bessemer account is believed to be located either in **Florida or New York**, and the Huntington National Bank account is believed to be located in **Michigan**.

52. The only personal property listed on the Inventory (at a value of $48,115) is "miscellaneous household goods, furnishings and personal effects" said to be located at 5568 Pine Brooke, Birmingham, **Michigan**.

53. The only other property listed on the Inventory (with the exception of a Lincoln Continental) is intangible property which, upon information and belief, does not have any particular situs in Texas or El Paso County. That includes "Notes Receivable," "Business Interests" and "Anticipated [Tax] Refunds." One of the notes receivable is from "a Michigan limited liability company"; another from a company called "TMW Inmuebles, S. de R.L. de C.V.," for which the schedule attached to the Inventory says "we need back-up". Upon information and belief, that company (which, from its name, may be one incorporated in Mexico) is not located in El Paso County, and the note receivable therefrom is in any event an intangible with no particular situs in this County or in Texas.

- 11 -

54. The tax refunds listed on the Inventory are indicated as being with respect to income taxes paid in **Michigan and Colorado**.

55. Upon information and belief, at the time of Decedent's death and for many years previously, Decedent or entities owned or controlled by him maintained residences and/or spent substantial time in both **Michigan and Colorado**.

56. Another item on the Inventory is described as "retainer credit for prepayment of legal services Greenberg Trager & Herbst LLP." That is a law firm in **New York City**, and upon information and belief the credit is with respect to a retainer of that firm for legal services related to the apartment, owned by Decedent or the Wheeler Trust in New York City, where Respondents reside.

57. The only other item listed on the Inventory is another intangible, described as a "57% interest in Huzella Development Company." Although this is described as a "Texas Limited Liability Company," company information available on the Internet indicates that its address is "2120 Austin Avenue, Suite 100, Rochester Hills, Michigan 48309-3667," the same address as for other entities owned or controlled by Decedent and other Wheeler family members. Upon information and belief, moreover, Decedent's ownership interest in this LLC was held and administered for him through his agents and representatives in **Michigan**.

58. Of the eleven individuals and one entity alleged in the Petition to be "necessary parties to this proceeding" (¶ 2), three are located in **New York** (Respondents herein), and all but one of the others are located in **Michigan**.

59. The only person cited as a necessary party who has an address in Texas is Lizeth Modesto, with an address at 6616 Wind Ridge, El Paso 79912. Upon information and belief, Ms. Modesto had been Decedent's companion, but they were not married.

- 12 -

60. Upon information and belief, Decedent did not own any residence at 6616 Wind Ridge, El Paso at the time of his death.

61. Respondents are unaware as to whether or not Decedent paid any real estate taxes on Ms. Modesto's residence at 6616 Wind Ridge, El Paso, but if he did, that is not sufficient basis for subject matter jurisdiction of this Court over either the probate proceeding or the proceeding Petitioners have sought to bring by the subject Petition.

## 5. Petitioners' improper attempt to change the situs of the Wheeler Trust from Florida to Texas retroactively on the eve of filing the Probate Petition.

62. On Friday evening, March 14, 2008, (after 9 p.m.) Petitioners shared with counsel for Respondents for the first time a document entitled "Notice of Change of Situs." Executed by Petitioners Thomas R. Wheeler and Michaelon A. Wright in Michigan on May 24, 2007 and by Petitioner Lisa Wheeler Huzzella in Colorado on the same date, this instrument purports to effect a change of "situs and place of administration" of the Wheeler Trust from Florida (as recited in the January 6, 2007 Restatement) to Texas. The instrument further purports to provide that the administration of the Wheeler Trust be governed by the laws of Texas.

63. This instrument also purports to make this selection retroactive to February 9, 2007, the date Decedent died.

64. This instrument appears to have been drafted under the supervision and upon the advice of attorney Duerr and/or others at the Honigman firm in Michigan.

65. Upon information and belief, Petitioners sought to change the situs of the Wheeler Trust in order to impair rights of Respondents, to whom Petitioners owed and continue to owe fiduciary duties.

66. Upon information and belief, Petitioners and their counsel Mr. Duerr and/or others at his firm in Michigan chose to attempt to change the situs of the Wheeler Trust retroactively from

- 13 -

Florida to Texas because, among other things, they determined that choice of Florida law was disadvantageous to Petitioners' personal financial interests.

67. In particular, Florida law expressly does not recognize or enforce "in terrorem" clauses such as Petitioners and Mr. Duerr have threatened to implement against Respondents.[2]

68. Because the January 6, 2007 Restatement and the January 22, 2007 Amendment significantly reduced the interests of Respondents Krystal and Tiffany Wheeler in the Wheeler Trust, Petitioners and their counsel, including Mr. Duerr, were eager to avoid application of these ambiguous provisions of Florida law.

## 6. Deprivation of Respondents' Due Process rights

69. Upon information and belief, Petitioners and their counsel Mr. Duerr and/or others at his firm in Michigan also sought to change the administration of Decedent's estate to Texas so that they could avail themselves of notice provisions under the Texas Probate Code that they knew were not calculated to convey actual, or constitutionally adequate, notice to Respondents, residents of New York.

70. In particular, upon information and belief, Petitioners and their counsel Mr. Duerr and/or others at his firm in Michigan sought to avail themselves of notice provisions that on their face permitted notice to interested persons who are not named in a will (such as heirs at law, including Krystal and Tiffany Wheeler, daughters of Decedent) by publication, by posting "at the courthouse door" of the Court in El Paso.

---

[2] See Florida Statutes § 732.517 **Penalty clause for contest.** A provision in a will purporting to penalize any interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable. § 736.1108 **Penalty clause for contest.** (1) A provision in a trust instrument purporting to penalize any interested person for contesting the trust instrument or instituting other proceedings relating to a trust estate or trust assets is unenforceable. (2) This section applies to trusts created on or after October 1, 1993. For purposes of this subsection, a revocable trust shall be treated as created when the right of revocation terminates.

- 14 -

71. Because, as noted above, Respondents live in New York City, Petitioners and Duerr knew or should have known that such publication at the El Paso courthouse door would not reach the attention of Respondents.

72. Upon information and belief, Petitioners and their counsel Mr. Duerr and/or others at his firm in Michigan also sought to avail themselves of provisions of the Texas Probate Code that did not require personal service on purported creditors or debtors of the Estate for the deadline to submit claims but allowed such to be effected in a local periodical called El Paso, Inc., which Petitioners and their counsel knew or should have known would not come to the attention of Respondents.

73. The aforementioned notice by posting and publication constituted a deprivation of Respondents' rights of due process under the federal Constitution and the Constitution of the State of Texas.

74. Upon information and belief, Petitioners, aided by their counsel Mr. Duerr and/or others at his Michigan firm and possibly others, determined to and did deprive Respondents of their Constitutional rights of due process with respect to the Probate Proceeding.

75. Such deprivation of due process vitiates the entire Probate Proceeding and nullifies the Orders entered therein and provides a further basis for the Court's lack of subject matter jurisdiction over the Petition herein.

76. Thus, upon information and belief Petitioners and their Michigan attorneys, particularly Duerr, orchestrated an effort to probate the Will in Texas despite no adequate jurisdictional basis for doing so, in order to deprive Respondents of important rights with respect to Decedent's Estate and an opportunity to be heard with respect to those rights.

77. In particular, upon information and belief, Duerr, Petitioners and others in concert with them determined to avoid having the Estate administered in Florida, New York or Michigan -- all of which appear to have had a legitimate jurisdictional basis for probate -- in order to take advantage of notice provisions under Texas law whereby Duerr and Petitioners believed they could avoid giving Respondents notice of either the probate petition or of the admission of the will to probate.

78. The egregious nature of the duplicitous conduct of Petitioners and Duerr is compounded by the fact that Duerr was in frequent contact with Respondents and lawyers representing them from February through October 2007, in connection with unsuccessful efforts to reach a settlement between Petitioners and Respondents, yet Duerr did not once mention that there was a probate proceeding pending in this Court, that the Will had been admitted to probate or that orders had been entered herein.

79. Respondents were not informed that the Will had been offered for or admitted to probate until January 29, 2008, when New York counsel for Petitioners and other defendants named in an action filed in the federal court on December 3, 2007, under the caption Royce v. Wheeler (United States District Court for the Southern District of New York, 07 CV 10968) (the "New York Action"), advised New York counsel for Respondent Charlene Royce that the Will had, in fact, been filed with this Court eight months before.[3]

80. Upon review, Respondents' counsel determined that the Will and Probate Petition had been filed on May 29, 2007, and that an order admitting it to probate had been signed by the Court a few weeks later, on June 25, 2007 (and filed on July 13, 2007).

## 7. Further irregularities evident from inspection of the probate file

---

[3] Respondents submit herewith a copy of the amended complaint in the New York Action as Exhibit A.

81. The evidence presented by Petitioners to the Court at the time of hearing of the Probate Petition failed to establish the proper subject matter jurisdiction of the Court.

82. No affidavit was submitted by the witnesses to the proffered Will, namely, Mr. Duerr himself and one of his partners, Charles Nida, both non-residents of Texas (and represented to be residents of Michgan) -- which instrument, as noted, is said to have been executed in Arizona. Instead, Petitioners proffered affidavits of two individuals, Isela Kirk and Daniel Dawes, both dated June 25, 2007 and captioned "Proof of Death and Other Facts."

83. Ms. Kirk represented that she was an employee of Bank of the West in El Paso, Texas and averred that "[d]uring his lifetime, Thomas M. Wheeler had a banking relationship with Bank of the West" and that she was familiar with his signature and believed the signature on the Will to be his. Since the Inventory later filed did not show that any bank account at Bank of the West was property of the Estate, the "banking relationship" that Ms. Kirk attested to was apparently not maintained, at least in his individual capacity, at the time of his death, despite the implication in her affidavit that it was.

84. Mr. Dawes' affidavit said simply that he had a "personal and business relationship" with Mr. Wheeler as a result of which he was able to identify Mr. Wheeler's signature. There was no indication of what such relationship consisted or what occasion Mr. Dawes had to observe Mr. Wheeler's signature.

85. Neither Ms. Kirk nor Mr. Dawes was apparently present when Mr. Wheeler is said to have signed the Will in Arizona. Nor do their bare-bones "Proofs of Death and Other Facts" (which, in fact, contain no "proof of death") describe any of the circumstances surrounding the purported execution of the Will. Those statements are silent as to Decedent's medical, mental and emotional condition on January 6, 2007 (when he was in the advanced stages of kidney

- 17 -

cancer and confined to one of the homes of his son, Petitioner Thomas R. Wheeler, in Fountain Hills, Arizona).

86. The Probate Order, entered June 25, 2007 (the same day as the submission of the Kirk and Dawes Affidavits) contains a finding that "on the date that the Will was executed, Decedent had attained the age of eighteen years and was of sound mind." (¶ 7, p. 2). However, none of the proofs submitted by Petitioners (including the only proofs submitted by purportedly disinterested witnesses, namely Kirk and Dawes) mention anything about either the soundness of Decedent's mind when the Will was signed or his freedom from undue influence or fraud.

87. Similarly, although the Probate Order (apparently in the form drafted by Petitioners' attorneys or Resident Agent Ms. Sanders without modification) contains a statement that "this Court has jurisdiction and venue over this estate," none of the submissions made in support of that Order provide any detail sufficient to establish such jurisdiction or venue. As noted, the Inventory itself suggests otherwise.

88. Among the other submissions made in support of the Probate Order was another "Proof of Death and Other Facts," this one executed by Lizeth Modesto. She attests that "Decedent was domiciled and had a fixed place of residence in El Paso County, Texas at his death" (¶ 2) but does not identify that residence. Ms. Modesto's own residence is said to be at 6616 Wind Ridge, El Paso, Texas 79912 (according to the Petition herein, ¶ 2, p. 3, which alleges that she is one of the "necessary parties"), but there is nothing on the record to indicate that Decedent was, in fact, domiciled at that or any other address in El Paso.

89. It should be noted, moreover, that Ms. Modesto is mentioned in both the January 6, 2007 Restatement and the January 22, 2007 Amendment as a recipient of a gift of $1,000,000

- 18 -

upon Decedent's death, and accordingly, she should be disqualified from submitting any proof in connection with the probate of his proffered Will.

90. In short, there are nothing other than conclusory assertions in any of the submissions made by Petitioners that support the subject matter jurisdiction of this Court with respect to the Estate.

## 8. Petitioners' failure to provide notice to Respondents of the admission of the Will to probate

91. Petitioners also failed to comply with their statutory duties to provide notice to Respondents as required by the Texas Probate Code and fundamental Due Process.

92. Due Process by Petitioners own admission requires an executor (such as Petitioners herein) to give notice of probate of a will to beneficiaries of a trust of which the executor is also a trustee, when (as here) the trust is a beneficiary of the Will.

93. Since Respondents are, by Petitioners' own admission, "persons first eligible to receive . . . trust income," Petitioners were required to give Respondents notice of the admission of the will to probate, which was on June 25, 2007.

94. Petitioners failed to give such notice.

95. Such failure to comply with the fundamental notice requirements of the Texas Probate Code, constitutes a breach of Petitioners' fiduciary duty to Respondents, as well as an independent violation of Respondents' rights of Due Process under the U.S. Constitution and the Constitution of the State of Texas.

96. Petitioners' failure to comply with the fundamental Due Process, vitiates the probate proceeding and renders null and void all actions taken by Petitioners pursuant to the authority that the Court granted them based upon Petitioners' misrepresentation that all interested parties were given proper notice of these proceedings and a proper opportunity to participate herein.

- 19 -

**C. Subject to Special Appearance and in the Alternative, Additional Grounds for Lack of Subject Matter Jursdiction over the Petition**

97. The Probate Petition sought and the Probate Order granted permission to Petitioners to proceed as "Independent Co-Executors" with "independent administration" of the Estate, "without necessity of any judicial authorization or approval" as provided in Section 145(b) of the Texas Probate Code. (See Probate Petition ¶ 9. p. 2; Probate Order, second decretal paragraph, p. 3.)

98. Although, as noted above, Respondents seek a determination that this Court does not have subject matter jurisdiction over this Estate at all, there is an independent reason why the Court does not have subject matter jurisdiction over the subject of the present Petition. Since Petitioners have been invested with authority as Independent Co-Executors, they are not permitted to seek "judicial authorization or approval" for their acts. Moreover, for as long as the proceeding is one for "independent administration" such as Petitioners sought and obtained, this Court is without jurisdiction to entertain any such application.

**D. Subject to Special Appearance and in the Alternative, Request for Leave to Conduct Discovery in Connection with Special Appearance and Plea to the Jurisdiction**

99. Without waiving the special appearance and request for dismissal on grounds of lack of subject matter and personal jurisdiction, Respondents will pursue any appropriate and necessary discovery on the issue of jurisdiction both in personam and subject matter. Pursuant to established authority, such discovery will be without prejudice to Respondents' special appearance. See Baron v. Vanies, 190 S.W. 3d 841 (Tex. App. 2006, Ft. Worth) (remanding for jurisdictional discovery; holding that a court must permit discovery as to jurisdiction when request is likely to yield facts material to determination of whether jurisdiction exists); Moore v. Elektro-Mobil Technik Gmbh, 874 S.W.2d 324, 238 (Tex. App. 1994, El Paso) (jurisdictional

- 20 -

discovery expressly contemplated by TRCP 120(a)(1) and does not constitute waiver of special appearance.

### Subject to Respondents' Special Appearance and Plea to the Jurisdiction and in the Alternative, Plea in Abatement

100.    In light of the jurisdictional failures described above, Petitioners' declaratory judgment action must also be abated due to its defective pleadings, lack of notice to Respondents, and the lack of established residency of Decedent (see earlier arguments made herein, supra). Additionally, Petitioners' declaratory judgment action must also be abated/stayed in light of Respondents' earlier-filed declaratory relief action, which was filed in federal court in the United States District Court, Southern District of New York. That action, styled "Charlene A. Royce, as parent and guardian of Tiffany M. Wheeler, a Minor, Plaintiff, against Thomas R. Wheeler, Lisa W. Huzella, and Michaelon A. Wright, each individually and as acting successor trustee of the Thomas M. Wheeler Revocable Trust, u/a dated April 9, 1986, as Amended and Restated, 43 West 64th Street LLC, a Michigan corporation, and Wheeler Family Foundation, Inc., a Delaware nonprofit corporation, Defendants and Krystal Wheeler, Nominal Defendant," was filed in the Southern District on December 3, 2007, more than two months prior to the instant declaratory action. As a "matter of comity . . . it is the custom for the court in which the later action is instituted to stay proceedings therein until the prior action is determined or, at least, for a reasonable time, and the custom has practically grown into a general rule which strongly urges the duty upon the court in which the subsequent action is instituted to do so." *Space Master Int'l, Inc. v. Porta-Kamp Mfg. Co.*, 794 S.W.2d 944, 946 (Tex. App.—Houston [1st Dist.] 1990, no writ ). Thus, this action must be stayed. Moreover, the hearing currently set for April 2, 2008 regarding Petitioners' motion to approve more than $19 million in payments

- 21 -

out of the corpus of the trust must be abated, until a determination as to the propriety of this Court's jurisdiction over parties and issues can be had.

### Subject to Respondents' Special Appearance, Plea to the Jurisdiction and Plea in Abatement, Respondents' Original Answer pursuant to Rule 92

101.   Deny the allegations in paragraph 1.

102.   Deny the allegations in paragraph 2, except admit that Respondents reside at the address indicated for them and that Tiffany M. Wheeler will reach her eighteenth birthday on April 6, 2008, and deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the addresses of the others listed.

103.   The allegations in paragraph 3 are legal contentions to which no response is necessary.

104.   The allegations in paragraph 4 are legal contentions to which no response is necessary.

105.   The allegations in paragraph 5 is a legal contention to which no response is necessary.

106.   Deny the allegations in paragraph 6, except admit that Respondents filed the New York Action and refer to the allegations in the Amended Complaint therein, dated December 19, 2007 (a copy of which is furnished herewith) for a full and accurate statement of its contents, and further admit that Respondents were not aware of the pendency of the probate proceeding in this Court until January 29, 2008, because Petitioners never provided notice of such to them. Respondents further aver that shortly after the New York Action was first filed, Respondents' New York counsel received a call from Petitioners' Michigan attorney, Patrick Duerr, who asked for and received a substantial extension of time (ultimately aggregating more than three months,

- 22 -

until March 14, 2008) in order to respond to that pleading; Duerr did not advise Respondents' counsel then (nor had he previously advised Respondents or their counsel despite frequent communication with them throughout the period from March to November 2007) that the Will had been offered or admitted to probate in this Court or that any administration of the Estate was proceeding here; Petitioners' New York litigation counsel first contacted Respondents' counsel in the New York Action on January 16, 2008, asking for and receiving a further extension of Petitioners' time to respond to the Amended Complaint therein; and it was not until January 29, 2008 that Petitioners' New York counsel called asking for yet another extension of time and for the first time advised Respondents' New York counsel of the pendency of the probate proceeding herein.

107.   Deny the allegations on paragraph 7, except admit that Decedent died on February 9, 2007, and aver that it was in West Palm Beach, Florida, and that Decedent's five children are as alleged.

108.   Deny the allegations of paragraph 8, except refer to the subject trust agreement and amendments for a true and accurate statement of their contents.

109.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9.

110.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

111.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11, except refer to the subject trust agreement for a true and accurate statement of its contents.

{RM Files\0102\0001\00027567.DOC /}

112.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12, refer to the subject trust agreement for a true and accurate statement of its contents.

113.    With respect to the allegations of paragraph 13, refer to the subject trust agreement for a true and accurate statement of its contents.

114.    With respect to the allegations of paragraph 14, refer to the subject trust agreement for a true and accurate statement of its contents.

115.    Deny the allegations and requests for relief in paragraph 15, except deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the value of assets and liabilities of the estate.

116.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16, and aver that Petitioners have failed to provide adequate and necessary information concerning claims of creditors, proposed applications of funds, cash flows, actual or contemplated financing arrangements and the evident conflict between the proposed borrowing from an entity (Triple L Partners, L.P.) in which Petitioners concededly have a direct pecuniary interest.

117.    With respect to the allegations in paragraph 17, deny upon information and belief that the loan Petitioners have apparently already "entered into" and that they ask the Court to "ratify" was made in "good faith and on an arm's length basis"; deny knowledge or information sufficient to forma belief as to the truth of the rest of the allegations in paragraph 17; and aver creditors, proposed applications of funds, cash flows, actual or contemplated financing arrangements and the evident conflict between the proposed borrowing from an entity (Triple L Partners, L.P.) in which Petitioners concededly have a direct pecuniary interest.

- 24 -

118.    With respect to the allegations in Paragraph 17, deny upon information and belief that the loan Petitioners have apparently already "entered into" and that they ask the Court to "ratify" was made in "good faith and on an arm's length basis"; deny knowledge or information sufficient to form a belief as to the truth of the rest of the allegations in paragraph 17; and aver that Petitioners have failed to provide adequate and necessary information concerning claims of creditors, proposed applications of funds, cash flows, actual or contemplated financing arrangements and the evident conflict between the proposed borrowing from an entity (Triple L Partners, L.P.) in which Petitioners concededly have a direct pecuniary interest.

119.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19, except refer to the subject trust agreement for a true and accurate statement of its contents.

120.    Deny the allegations and requests for relief in paragraph 20.

121.    Deny the allegations and requests for relief in paragraph 21, except deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the reference Account Information that Petitioners have failed to furnish.

122.    Deny the allegations and requests for relief in paragraph 22.

## Subject to Special Appearance and in the Alternative Affirmative Defenses

123.    The Court lacks personal jurisdiction over Respondents.

124.    The Court lacks subject matter jurisdiction with respect to the relief sought in the Petition.

125.    The Petition fails to state a cognizable claim or cause of action.

- 25 -

126.   The Court lacks jurisdiction to render advice or approval of transactions undertaken or contemplated by Petitioners, who purport to act as Independent Co-Executors under court-ordered independent estate administration.

127.   The requested relief is not timely sought.

128.   The relief is sought by the doctrine of unclean hands.

129.   Petitioners are estopped from seeking the requested relief by virtue of their conflicts of interests and breaches of fiduciary duties.

130.   The Petition is barred by the pendency of the New York Action.

131.   Petitioners are estopped from proceeding with the Petition by virtue of the lack of candor (and consequent breach of the fiduciary responsibility of full and fair disclosure to beneficiaries) that Petitioners and their counsel, including Duerr, have demonstrated in communications (and failure to communicate) with Respondents and their counsel, including, without limitation, Petitioners' requesting and obtaining of repeated consensual extensions of time to respond to the Amended Complaint in the New York Action while Petitioners were busy drafting and filing the Petition herein, in the evident hope of manufacturing proceedings in this Court to try to persuade the New York court to abstain from adjudicating the New York Action.

## Subject to Special Appearance and in the Alternative Request for Trial by Jury

Respondents hereby request a trial by jury of all issues of fact.

WHEREFORE, Respondents respectfully request that this Court:

A. Grant Respondents' motion for a special appearance and dismiss the subject action for lack of in personam jurisdiction;

- 26 -

B. Subject to and without waiving the special appearance and in the alternative, sustain Respondents' plea to the jurisdiction and dismiss the Petition for lack of subject matter jurisdiction and improper venue;

C. Subject to and without waiving the special appearance, and in the alternative, determine that this Court lacks jurisdiction and venue over the underlying probate proceeding, which Petitioners improperly commenced in this Court;

D. Subject to and without waiving the special appearance and in the alternative, dismiss the probate proceeding, and vacate the orders therein *nunc pro tunc*;

E. Subject to the special appearance and in the alternative, abate the subject action.

F. Subject to the special appearance and in the alternative, determine that after trial is had in this cause Petitioners take nothing from their suit; and

G. Subject to and without waiving the special appearance and in the alternative, grant such other relief whether in law or in equity, as the Court deems appropriate.

Dated: El Paso, Texas
March 18, 2008

Respectfully submitted,

RINCON MOUNTS, P.C.
1014 N. Mesa, Suite 200
El Paso, Texas 79902
(915) 532-6800
(915) 532-6808 (fax)

By: _____
Carlos Rincon
State Bar No. 16932700
John Anderson
State Bar No. 24011465

- 27 -

MAX HIGGS LAW OFFICE
615 E. Schuster, Bldg. 6
El Paso, Texas 79902
(915) 351-1963
(915) 975-6529 (fax)

By: _____
Max D. Higgs, Esq.
State Bar No. 09603500

*Attorneys for Respondents Krystal Wheeler and*
*Charlene Royce, Natural Guardian of Tiffany M.*
*Wheeler*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was served certified, mail return receipt requested on the 13th day of March, 2008 to:

**Ms. Amy Stewart Sanders**
Ryan & Sanders, L.L.P.
310 N. Mesa, Suite 300
El Paso, TX 79901

**Katharine J. Hodgins**
Attorney General of Texas
Consumer Protection & Public
 Health Division
Charitable Trusts Section
P.O. Box 12548
Austin, Texas 78711

**Robert Warach**
Robert Warach & Associates
7300 Viscount Blvd., Suite 101
El Paso, TX 79925

_____
CARLOS RINCON

- 28 -

VERIFICATION

STATE OF NEW YORK          §
                          §
COUNTY OF NEW YORK         §

BEFORE ME, the undersigned notary public, on this day personally appeared Krystal Wheeler, who being duly sworn by me deposed and said:

"My name is Krystal Wheeler. I am over 18 years of age and am competent to make this affidavit. I am the Krystal Wheeler referred to by name in Plaintiff's Original Petition for Declaratory Judgment. I have read the Motion for Special Appearance being filed on my behalf in this case and the factual statements therein are true and correct based on my personal knowledge."

Further, Affiant sayeth not.

Krystal Wheeler

SUBSCRIBED AND SWORN TO BEFORE ME on this _17th_ day of _March_, 2008, to certify which witness my hand and official seal.

Notary Public in and for the
State of New York

LOUIS H. CHAMPAGNE
Notary Public, State of New York
No. 01CH6066853 Qualified in Queens County
Certificate Filed in New York County
Commission Expires November 26, 2009

## VERIFICATION

STATE OF NEW YORK      §

                             §

COUNTY OF NEW YORK    §

BEFORE ME, the undersigned notary public, on this day personally appeared Charlene A. Royce, who being duly sworn by me deposed and said:

"My name is Charlene A. Royce. I am over 18 years of age and am competent to make this affidavit. I am the mother and natural guardian of Tiffany M. Wheeler referred to by name in Plaintiff's Original Petition for Declaratory Judgment. I have read the Motion for Special Appearance being filed on my behalf in this case and the factual statements therein are true and correct based on my personal knowledge."

Further, Affiant sayeth not.

_____

**Charlene A. Royce**

SUBSCRIBED AND SWORN TO BEFORE ME on this _17th_ day of _March_ , 2008, to certify which witness my hand and official seal.

_____

Notary Public in and for the
State of New York

LOUIS H. CHAMPAGNE
Notary Public, State of New York
No. 01CH6066853 Qualified in Queens County
Certificate Filed in New York County
Commission Expires November 26, 2009

STATE OF FLORIDA
OFFICE of VITAL STATISTICS
CERTIFIED COPY

VOID IF ALTERED OR ERASED

/Amended by VS   JUN 2 4 2007

AFFIDAVIT OF AMENDMENT TO CERTIFICATE OF DEATH

STATE OF FLORIDA
DEPARTMENT OF HEALTH

FLORIDA   Page 2 of 2

FILE NUMBER   07-030540

Thomas   Morgan   Wheeler

PLACE OF DEATH   West Palm Beach   County Palm Beach

DATE OF DEATH   MONTH 09   DAY 07   YEAR 2007

| ITEM TO BE AMENDED | AS IT NOW APPEARS ON RECORD | CORRECT INFORMATION |
|---|---|---|
| Item #14a | Florida | Texas |
| Item #14b | Palm Beach | El Paso |
| Item #14c | Juno Beach | El Paso |
| Item #14d | 530 North Ocean Drive Unit 1003 | 6616 Wind Ridge |
| Item #14e | 1003 | Blank |
| Item #14f | 33408 | 79912 |
| Item 22b | Executor | Secretary |
| Item 23b | Grosse Isle | Rochester Hills |
| Item 23c | 8553 Woodside | 2120 Austin Ave #100 |
| Item 23d | 48138 | 48309 |

(APPLICANT DO NOT WRITE BELOW THIS LINE)

ABSTRACT OF SUPPORTING EVIDENCE

2120 Austin Avenue #100   Rochester Hills, MI   48309

Laura Oakes
Notary Public, State of Michigan
County of Oakland
My Comm. Expires Apr 4, 2008
Acting in County of

1495 NW 17th Avenue   Miami, FL   33125

June 20 2007

DATE FILED   JUN 2 4 2007

VOID IF ALTERED OR ERASED

---

VOID IF ALTERED OR ERASED

2007   030540
FLORIDA CERTIFICATE OF DEATH   Page 1 of 2

Thomas   Morgan   Wheeler

Male

April 6, 1927

West Palm Beach   Palm Beach

Good Samaritan Medical Center
West Palm Beach

Juno Beach   Palm Beach

530 North Ocean Drive
Unit 1003

Chief Executive Officer

Autoclave

Mary Louise Kellogg Wheeler
Executor

8553 Woodside
Grosse Isle   Michigan   48138

Florida Funeral Home & Crematory
35535-234

Howard R. Sandler, M.D.

1495 North West 17th Avenue
Miami   Florida

1495 North Flagler Drive
West Palm Beach

33401

MAR 9, 2007

Renal sepsis

APR 1 6 2008

---



REDACTED

State Registrar

WARNING:
THIS DOCUMENT IS PRINTED OR PHOTOCOPIED ON SECURITY PAPER WITH A WATERMARK OF THE GREAT SEAL OF THE STATE OF FLORIDA. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARK. THE DOCUMENT FACE CONTAINS A MULTI-COLORED BACKGROUND AND GOLD EMBOSSED SEAL. THE BACK CONTAINS SPECIAL LINES WITH TEXT AND SEAL IN THERMOCHROMIC INK.

DH FORM 1947 (08/04)

51199802

CERTIFICATION OF VITAL RECORD

FLORIDA DEPARTMENT of HEALTH

* 5 1 1 9 9 8 0 2 *

VOID IF ALTER

REDACTED

5119 9802

CERTIFICATION OF VITAL RECORD

THIS DOCUMENT IS PRINTED OR PHOTOCOPIED ON SECURITY PAPER WITH A WATERMARK OF THE GREAT SEAL OF THE STATE OF FLORIDA. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARK. THE BACKGROUND AND THE PHRASE "CERTIFICATION OF VITAL RECORD" IS PRINTED IN GOLD EMBOSSED SEAL / THE BACK CONTAINS SPECIAL LINES WITH TEXT AND SEALS IN THERMOCHROMIC INK.

DH FORM 1947 (08/04)

WARNING: State Registrar

APR 1 6 2008

FLORIDA DEPARTMENT OF
HEALTH

*51199802*

511 99802

**FLORIDA CERTIFICATE OF DEATH**

/Amended by VS    JUN 2 4 2007    2007 030540    Page 1 of 2

LCAL FILE NO. 6007-2548

| 1. DECEDENT'S NAME (First, Middle, Last, Suffix) Thomas Morgan Wheeler | 2. SEX Male |
|---|---|

| 3. DATE OF DEATH (Month, Day, Year) April 6, 1927 | 4a. AGE-Last Birthday (Years) 79 | 4b. UNDER 1 YEAR Months Days | 4c. UNDER 1 DAY Hours Minutes | 5. DATE OF DEATH (Month, Day, Year) February 9, 2007 |

| 6. SOCIAL SECURITY NUMBER | 7. BIRTHPLACE (City and State or Foreign Country) Kalamazoo, Michigan | 8. COUNTY OF DEATH Palm Beach |

| 9. PLACE OF DEATH | HOSPITAL: ☐ Inpatient ☐ Emergency Room/Outpatient ☐ Dead on Arrival NON-HOSPITAL: ☐ Hospice Facility ☐ Nursing Home/Long Term Care Facility ☐ Decedent's Home ☐ Other |
| 10. FACILITY NAME (If not institution, give street address) Good Samaritan Medical Center | 11a. CITY, TOWN, OR LOCATION OF DEATH West Palm Beach | 11b. INSIDE CITY LIMITS? X Yes ☐ No |

| 12. MARITAL STATUS (Specify) ☐ Married X Married, but separated ☐ Widowed ☐ Divorced ☐ Never Married | 13. SURVIVING SPOUSE'S NAME (If wife, give maiden name) Nancy Ann Fitzgibins |

| 14a. RESIDENCE - STATE Florida | 14b. COUNTY Palm Beach | 14c. CITY, TOWN, OR LOCATION Juno Beach |

| 14d. STREET ADDRESS 530 North Ocean Drive | 14e. ZIP CODE 33408 | 14f. INSIDE CITY LIMITS? X Yes ☐ No |

| 15a. DECEDENT'S USUAL OCCUPATION (Indicate type of work done during most of working life). Do not use "retired" Chief Executive Officer | 15b. KIND OF BUSINESS/INDUSTRY Automotive |

| 16. DECEDENT'S RACE (Specify the race/races to indicate what decedent considered himself/herself to be. More than one race may be specified.) X White ☐ Black or African American ☐ American Indian or Alaskan Native (Specify tribe) ☐ Asian Indian ☐ Chinese ☐ Filipino ☐ Japanese ☐ Korean ☐ Vietnamese ☐ Other Asian (Specify) ☐ Native Hawaiian ☐ Guamanian or Chamorro ☐ Samoan ☐ Other Pacific Isl. (Specify) ☐ Other (Specify) |

| 17. DECEDENT OF HISPANIC OR HAITIAN ORIGIN? (Specify if decedent was of Hispanic or Haitian Origin.) ☐ Yes (If Yes, specify) X No ☐ Mexican ☐ Puerto Rican ☐ Cuban ☐ Central/South American ☐ Other Hispanic (Specify) ☐ Haitian |

| 18. DECEDENT'S EDUCATION (Specify the decedent's highest degree or level of school completed at time of death.) ☐ 8th or less ☐ High school but no diploma ☐ High school diploma or GED ☐ Some college but no degree ☐ College degree (Specify) ☐ Associate X Bachelor's ☐ Master's ☐ Doctorate | 19. WAS DECEDENT EVER IN U.S. ARMED FORCES? ☐ Yes ☐ No |

| 20. FATHER'S NAME (First, Middle, Last) Michael Lebel Wheeler | 21. MOTHER'S NAME (First, Middle, Maiden Surname) Mary Luella Fitzpatrick |

| 22a. INFORMANT'S NAME Margaret Bargardi | 22b. RELATIONSHIP TO DECEDENT Executor | 22c. INFORMANT'S MAILING - STATE Michigan |

| 22b. STREET OR TOWN Grosse Isle | 22c. STREET ADDRESS 8553 Woodside | 22d. ZIP CODE 48138 |

| 23. PLACE OF DISPOSITION (Name of cemetery, crematory, or other place) Mount Olivet Cemetery | 23b. LOCATION - STATE Michigan | 23c. LOCATION - CITY OR TOWN Kalamazoo |

| 24. METHOD OF DISPOSITION ☐ Burial ☐ Entombment X Cremation ☐ Donation ☐ Removal from State ☐ Other | 25a. FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH | |
| 26. IF CREMATION, DONATION OR BURIAL AT SEA, WAS MEDICAL EXAMINER APPROVAL GRANTED? ☐ Yes ☐ No | 27a. LICENSE NUMBER (of Licensee) CO101 | 25b. FACILITY'S MAILING - STATE Florida |

| 28. NAME OF FUNERAL FACILITY Florida Funeral Home & Crematory | 28a. FACILITY'S MAILING - STATE Florida |

| 28b. CITY OR TOWN Miami | 28c. STREET ADDRESS 1495 North West 17th Avenue | 28d. ZIP CODE 33125-234 |

| 30. CERTIFIER: X Certifying Physician - To the best of my knowledge, death occurred at the time, date and place, and due to the cause(s) and manner stated. ☐ Medical Examiner - On the basis of examination, and/or investigation, in my opinion, death occurred at the time, date and place, due to the cause(s) and manner stated. |
| 31a. (Signature of Certifier) | 31b. SIGNATURE OF Certifier | 31c. DATE SIGNED (mm/dd/yyyy) 02/27/07 | 32. TIME OF DEATH (24 Hr.) 1247 | 33. MEDICAL EXAMINER'S CASE NUMBER |

| 34a. LICENSE NUMBER (of Certifier) | 34b. CERTIFIER'S NAME Dr. Avram Smukler, M.D. | 35. NAME OF ATTENDING PHYSICIAN (If other than Certifier) |

| 36a. CERTIFIER'S STATE Florida | 36b. CERTIFIER'S CITY OR TOWN West Palm Beach | 36c. STREET ADDRESS 1309 North Flagler Drive | 36d. ZIP CODE 33401- |

| 37. LOCAL REGISTRAR - Signature and Date Laurie Birger 2/27/07 | 38a. LOCAL REGISTRAR - Signature Dennis Bethel | 38b. DATE FILED BY REGISTRAR (Mo., Day, Yr.) MAR 1 3 2007 |

| 39. PROBABLE MANNER OF DEATH X Natural ☐ Accident ☐ Suicide ☐ Homicide ☐ Pending Investigation ☐ Undetermined | 40. REPORTED TO MEDICAL EXAMINER? ☐ Yes X No |

| 41. CAUSE OF DEATH - PART I (See instructions on back) IMMEDIATE CAUSE (Final disease or condition resulting in death) a. Renal Cancer | The following are under the jurisdiction of the medical examiner. Enter the chain of events - diseases, injuries, or complications - that directly caused the death. Enter only one cause on a line. DO NOT enter terminal event such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. | Approximate Interval: Onset to Death 1 year |
| Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | b. c. d. | |

| PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in PART I | 42a. WAS AN AUTOPSY PERFORMED? ☐ Yes ☐ No | 42b. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☐ Yes ☐ No |

| 43a. IF SURGERY MENTIONED IN PART I OR II, ENTER REASON FOR SURGERY | 43b. DATE OF SURGERY (Mo., Day, Yr.) | 43c. DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes ☐ No ☐ Probably ☐ Unknown |

| 44. IF FEMALE, WAS SHE PREGNANT WITHIN THE PAST YEAR? ☐ No ☐ Unknown ☐ If Yes, specify: ☐ at time of death ☐ within 1 to 42 days of death ☐ within 43 days to 1 year of death |

| 45. DATE OF INJURY (Month, Day, Year) | 47. TIME OF INJURY (24 Hr.) | 48. INJURY AT WORK? ☐ Yes ☐ No | 49a. LOCATION OF INJURY - STATE |

| 49b. CITY OR TOWN | 49c. STREET ADDRESS | 49d. APT. NO. | 49e. ZIP CODE |

| 50. DESCRIBE HOW INJURY OCCURRED | 51. PLACE OF INJURY (e.g. Decedent's home, construction site, restaurant, wooded area) |

| IF TRANSPORTATION INJURY, 52a. Status of Decedent ☐ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (Specify) | 52b. Type of Vehicle ☐ Car/Minivan ☐ S.U.V. ☐ Motorcycle ☐ Pickup Truck/Cargo Van ☐ Bus ☐ Heavy Transport ☐ Other (Specify) |

DO NOT COPY OR ERASED

OR ERASED

## AFFIDAVIT OF AMENDMENT TO CERTIFICATE OF DEATH

STATE OF FLORIDA
DEPARTMENT OF HEALTH

**FLORIDA**         Page 2 of 2

| | | |
|---|---|---|
| NAME OF DECEASED (TYPE OR PRINT) | Thomas Morgan Wheeler | STATE FILE NO. 07-030540 |
| DATE OF DEATH: MONTH 02 DAY 09 YEAR 07 | PLACE OF DEATH COUNTY Palm Beach | CITY, TOWN, OR LOCATION West Palm Beach |

| ITEM OMITTED OR IN ERROR | DEATH CERTIFICATE SHOWS | SHOULD BE |
|---|---|---|
| Item #14a | Florida | Texas |
| Item #14b | Palm Beach | El Paso |
| Item # 14c | Juno Beach | El Paso |
| Item #14d | 530 North Ocean Drive Unit 1003 | 6616 Wind Ridge |
| Item #14e | 1003 | Blank ------ |
| Item #14f | 33408 | 79912 |
| Item 22b | Executor | Secretary |
| Item 23b | Grosse Isle | Rochester Hills |
| Item 23c | 8553 Woodside | 2120 Austin Ave #100 |
| Item 23d | 48138 | 48309 |
| | | |
| | | |
| | | |

I HEREBY DECLARE THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT.

SIGNATURE ADDRESS 2120 Austin Avenue #100 Rochester Hills, MI 48309

SUBSCRIBED AND SWORN TO BEFORE ME ON _____ 20 07

Personally Known X OR Produce Identification
ID Produced: Tina Smarch

SIGNATURE OF NOTARY

TINA SMARCH
Notary Public, State of Michigan
County of Oakland
My Commission Expires Apr. 8, 2008
Acting in the County

FUNERAL DIRECTOR'S SIGNATURE _____ 1495 NW 17th, Avenue ADDRESS Miami, FL 33125

SUBSCRIBED AND SWORN TO BEFORE ME ON June 20 20 07

Personally Known X OR Produce Identification
ID Produced: Laurie Gargis

SIGNATURE OF NOTARY Laurie Gargis

Printed Name of Notary

STAMP
LAURIE A. GARGIS
MY COMMISSION # DD 301969.
EXPIRES: June 4, 2008
Bonded Thru Notary Public Underwriters

**(APPLICANT DO NOT WRITE BELOW THIS LINE)**

### ABSTRACT OF SUPPORTING EVIDENCE

| | NAME AND KIND OF DOCUMENT (INCLUDING BY WHOM ISSUED AND DATE OF ISSUE) | DATE ORIGINAL DOCUMENT WAS MADE |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |

NO EVIDENCE REQUIRED

INFORMATION CONCERNING REGISTRATION IN DOCUMENT OF CORRESPONDING NUMBER ABOVE

| | | |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |

ADDITIONAL INFORMATION

I certify that I have examined the documents referred to above, that they show no changes or erasures and appear to be authentic.

STATE REGISTRAR OF VITAL STATISTICS

EVIDENCE REVIEWED BY Rhonda Deese

DATE FILED JUN 24 2007

OFFICE of VITAL STATISTICS

CERTIFIED COPY

STATE OF FLORIDA

VOID IF ALTE

