UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————

|  |  |  |
|---|---|---|
| CHARLENE ROYCE, as parent and guardian of: TIFFANY M. WHEELER, and TIFFANY M. WHEELER | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS R. WHEELER, LISA W. HUZELLA, and MICHAELON A. WRIGHT, each individually and as acting successor trustee of the Thomas M. Wheeler Revocable Trust, u/a dated April 9, 1986, as Amended and Restated, 43 WEST 64TH STREET LLC, a Michigan corporation, and WHEELER FAMILY FOUNDATION, INC., a Delaware nonprofit corporation, | : | Civil Action No.: 07-CV-10968 (RWS) |
| | : | |
| | : | AFFIDAVIT OF |
| | : | AMY STEWART SANDERS |
| | : | |
| | : | |
| Defendants, | : | |
| | : | |
| – and – | : | |
| | : | |
| KRYSTAL WHEELER, | : | |
| | : | |
| Nominal Defendant. | : | |

—————————————————————————

| | |
|---|---|
| STATE OF TEXAS | ) |
| | ) ss: |
| COUNTY EL PASO | ) |

     Amy Stewart Sanders, being duly sworn, hereby deposes and says:

     1.     I am a partner in the law firm of Ryan Sanders & Gluth, LLP, 310 N. Mesa, Suite 300, El Paso, Texas 79901.

2.    I represent the above-named defendants, Thomas R. Wheeler, Michaelon A. Wright and Lisa W. Huzella, acting in their capacities as Independent Co-Executors of the Estate of Thomas M. Wheeler, deceased ("Mr. Wheeler" or "Decedent"), and in their capacities as Co-Trustees of the Thomas M. Wheeler Trust, arising under an agreement originally dated April 9, 1986, as amended thereafter, in connection with probate proceedings pending in the state of Texas before the El Paso County Statutory Probate Court #2, in the case captioned *In the Matter of the Estate of Thomas M. Wheeler*, Case No. 2007-P00529 (the "Texas Probate Proceedings").

3.    I submit this affidavit in support of the Defendants' Reply Memorandum in further support of the motion to dismiss the above-captioned action for lack of subject matter jurisdiction, and to provide additional information and documents relating to the Texas Probate Proceedings.  I base this affidavit upon my personal knowledge and a review of relevant records and public filings.

4.    I am not related to the Decedent and I am not entitled to receive any portion of his Estate or Trust.

5.    On February 19, 2008, I filed the Original Petition for Declaratory Judgment (the "Petition") in the Texas Probate Proceedings in the same case and caption as the Application for Probate of Will and Issuance of Letters Testamentary.  *See* Sanders Aff., dated March 14, 2008, ¶¶ 23-30.

6.    Respondents Krystal Wheeler, Tiffany Wheeler and Charlene Royce, as interested parties to the Original Petition, filed a Motion for Special Appearance on March 18, 2008 through their Texas counsel.  *See* Declaration of Charles Berry, dated April 23, 2008 at Exh. B.

7.    The Honorable Eduardo Gamboa, Judge of the Statutory Probate Court #2 of El Paso County Texas, scheduled a hearing for March 25, 2008, to consider motions

for continuance to adjourn the hearing on the Petition for Declaratory Judgment and Respondents' request to conduct discovery.

8.    Judge Gamboa held a conference in his chambers, at which time I explained the need for liquidity to continue operations and fully fund the gifts under the Trust. Respondents objected to the request for declaratory relief, asserting that the Texas court had no personal jurisdiction over them, that the Texas court did not have jurisdiction over the Trust, and that the Decedent was not domiciled there. Respondents further requested discovery in connection with the Decedent's domicile. Following the discussion, Judge Gamboa granted the Respondents' request to conduct discovery.

9.    The parties attempted to agree upon a form of order to conduct discovery, but were unable to do so, and consequently, a second judicial conference was scheduled for April 29, 2008.

10.    On April 29, 2008, I filed the Co-Trustees' Response to Motion for Special Appearance which, *inter alia*, detailed Mr. Wheeler's contacts with Texas. A true and correct copy of the Response to Motion for Special Appearance, filed on April 29, 2008, is attached hereto as Exhibit 1.

11.    At the second judge's conference, held on April 29, 2008, Judge Gamboa limited the scope of initial discovery to the issue of domicile, and gave the Respondents 45 days in which to conduct discovery. On May 6, 2008, Judge Gamboa signed the order reflecting this ruling. In that order, Judge Gamboa scheduled a hearing on June 16, 2008 at 2:00 p.m., at which time the Court would: (*i*) consider Respondents' Motion for Special Appearance; and (*ii*) subject to a determination that the Court has appropriate subject matter jurisdiction, proceed to hold another status/scheduling conference at which time a scheduling order will be issued controlling matters such as the discovery periods and jury trial date. A true and correct copy of Judge Gamboa's order, dated May 6, 2008,

is attached hereto as Exhibit 2.  The hearing which is scheduled for June 16, 2008 is likely to be rescheduled for June 30, 2008 or July 1, 2008.

12.    On May 7, 2008, Respondents' Texas counsel served broad document requests upon the Petitioners, seeking, *inter alia*, any and all documents and information relating to Mr. Wheeler's domicile.  A true and correct copy of Respondents' First Requests for Production of Documents by Petitioners Relating to Decedent's Domicile, Propounded Subject to Respondents' Special Appearances, dated May 7, 2008, is attached hereto as Exhibit 3.

13.    On May 8, 2008, Respondents' Texas counsel served upon Petitioners a First Set of Interrogatories relating to the issue of domicile.  A true and correct copy Respondents' First Interrogatories to Petitioners Relating to Decedent's Domicile, Propounded Subject to Respondents' Special Appearances, dated May 8, 2008, is attached hereto as Exhibit 4.

*        *        *        *        *

The above facts are true and correct, to the best of my knowledge, information and belief.

DATED:    El Paso, Texas
          May 15, 2008

Amy Stewart Sanders

Sworn to and subscribed
before me this 15 day of May, 2008.

Notary

MICHAEL MONTES
Notary Public, State of Texas
My Commission Expires
SEPT. 4, 2009

# SANDERS AFFIDAVIT

# EXHIBIT 1

IN THE STATUTORY PROBATE COURT #2

EL PASO COUNTY, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE | § | |
| | § | |
| OF | § | No. 2007-P00529 |
| | § | |
| THOMAS M. WHEELER, deceased. | § | |

**RESPONSE TO MOTION FOR SPECIAL APPEARANCE PURSUANT TO TRCP 120a;
RESPONSE TO PLEA TO THE JURISDICTION PURSUANT TO TRCP 85;
RESPONSE TO PLEA IN ABATEMENT;
AND RESPONSE TO ORIGINAL ANSWER**

TO THE SAID HONORABLE COURT:

COME NOW **THOMAS R. WHEELER, MICHAELON A. WRIGHT** and **LISA W. HUZELLA,** acting in their capacities as Independent Co-Executors of the Estate of **THOMAS M. WHEELER,** deceased (the "Co-Executors"), and in their capacities as Co-Trustees of the **THOMAS M. WHEELER TRUST** (the "Co-Trustees", and together with the Co-Executors, the "Petitioners") arising under agreement originally dated April 9, 1986, and amended thereafter (the "Trust Agreement"), and file this, their Response to Motion for Special Appearance Pursuant to TRCP 120a; Response to Plea to the Jurisdiction Pursuant to TRCP 85; Response to Plea in Abatement; and Response to Original Answer (the "Motion") and would show the Court as follows:

## Response to Motion for Special Appearance Pursuant to TRCP 120A[1]

**A.**  **Personal Jurisdiction over Respondents is Irrelevant in this in rem Proceeding.**

1.  **KRYSTAL WHEELER**, **TIFFANY M. WHEELER**, and **CHARLENE ROYCE**, as natural guardian of **TIFFANY M. WHEELER** ("Respondents") assert, in pleadings which are not supported by independent evidence, that this Court lacks personal jurisdiction over Respondents. Respondents bear the burden of proof in proving such lack of personal jurisdiction. *Kawasaki Steel Corp. v. Middleton*, 669 S.W.2d 199, 203 (Tex. 1985). Petitioners assert that: (i) this proceeding is a proceeding in rem, that the Court has jurisdiction over the res, being the Estate of Thomas M. Wheeler, deceased (the "Estate") and the Thomas M. Wheeler Trust (the "Trust"); (ii) personal jurisdiction over Respondents is not required; and (iii) Respondents have notice of the Original Petition for Declaratory Judgment (the "Declaratory Judgment Petition") and Respondents can choose to either participate in that the declaratory judgment proceeding or not to participate in that proceeding.

2.  Section 2(e) of the Probate Code (the "Probate Code") provides as follows:

> The administration of the estate of a decedent, from the filing of the application for probate and administration, or for administration, until the decree of final distribution and the discharge of the last personal representative, shall be considered as one proceeding for purposes of jurisdiction. The entire proceeding is a proceeding in rem.

*See also*, *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981); *Soto v. Ledezma*, 529 S.W.2d 847, 850 (Tex.Civ.App.—Corpus Christi, 1975, no writ).

3.  As in rem proceedings, probate proceedings bind all persons, regardless of whether or not the persons who have rights to the subject matter of the proceeding were

---

[1] The headings in this pleading are formatted consistently with the headings in Respondents' Motion.

{00053831.DOC . 5 }

personally served and answered. *Schindler v. Schindler*, 119 S.W.3d 923, 928 (Tex.App.—Dallas 2003, pet. denied); *Ladehoff v. Ladehoff*, 436 S.W.2d 334, 336 (Tex. 1968). As noted by the court in *Soto v. Ledezma*, 529 S.W.2d at 850, "[W]hen citation has been posted in accordance with Tex.Prob.Code Ann. § 129(a) (1956), the entire world must take notice of proceedings for probate of a will or for the appointment of an administrator. By nature such proceedings are in rem and personal notice is not necessary". As noted by one practitioner, author and speaker:

> One of the justifications for this rule is that a person who is "close enough" to the testator to have some pecuniary interest in the outcome of the will contest should also be "close enough" to either know when the testator dies or to be willing to check up on the testator from time to time. Therefore, it is not unduly harsh to impose a "rule" whereby this person is also presumed to "know" when a probate proceeding has been opened.

Moore, Joyce, *Another Look at Will Contests*, Adv. Estate Planning and Prob. Law Course, San Antonio, Texas, June 2007. A court which has jurisdiction over a decedent's estate and/or a trust is not required to have personal jurisdiction over each of the beneficiaries of the estate and the trust. If the court were required to have personal jurisdiction over each of the beneficiaries, there would undoubtedly be situations in which no court would have personal jurisdiction over both the estate or trust and all of the beneficiaries.

4.    As noted in a recent opinion, "[A] judgment admitting an instrument to probate as a will fixes and confirms the rights of those who are named as devisees and legatees and for those who take under them". *Stovall v. Mohler*, 100 S.W.3d 424, 428 (Tex.App.—San Antonio 2002, pet. denied). However, the persons who have an interest in the Estate and the Trust are not without recourse. As stated by the Texas Supreme Court in *Ladehoff*:

> Since a probate judgment, such as the one here in question, is binding upon every one until it is set aside by a proper direct attack, the Legislature, as is evident from the Probate Code, has liberally provided several alternative methods by which

3

> interested persons may make such direct attacks. (citation omitted) Section 28 authorizes an appeal by an interested person to the district court. Section 30 authorizes an interested person to revise and correct probate proceedings within two years by writ of certiorari. Minors have two years from the removal of their disability within which to apply for such revision and correction. Section 31 authorizes statutory bills of review which may be filed in the court in which the probate proceedings were had. Minors must institute a bill of review within two years after the removal of their disabilities. Section 93 provides a means to contest a will that has been admitted to probate by the institution of suit by an interested party within two years from the order admitting it to probate.

*Ladehoff*, 436 S.W.2d at 336-37. *See also*, *Soto v. Ledezma*, 529 S.W.2d at 850. If Respondents wish to directly attack the probate judgment, Texas law provides an opportunity and method to do so. However, Respondents have not done so. At this juncture, each of the persons who have an interest in the Estate and the Trust has received notice of the Petition for Declaratory Judgment, and each of those persons must now decide whether to enter an appearance or whether they will forego that opportunity. Regardless of Respondents' decision, this Court has jurisdiction over the res and can proceed to hear the Petition for Declaratory Judgment.

**B.    This Court has Jurisdiction.**

5.      Respondents incorrectly allege that this Court does not have jurisdiction and venue over this matter. Jurisdiction is proper under Section 6 of the Probate Code, which provides as follows:

> Wills shall be admitted to probate, and letters testamentary or of administration shall be granted:
>
> (a)    In the county where the deceased resided, if he had a domicile or fixed place of residence in this State…

6.      On March 14, 2008, four days prior to the filing of Respondents' Motion, Petitioners filed a Memorandum of Law in Support of Defendants' Motion to Dismiss (the "Memorandum of Law") in the proceeding which is pending in the United States District Court

4

for the Southern District of New York under case number 07-CV-10968 (RWS)(FM) (the "New York Proceeding"). Petitioners' Memorandum of Law is supported by sworn affidavits which contain evidence that is directly contrary to the conclusory allegations asserted by Respondents in their Motion, particularly regarding Decedent's ties to and domicile in El Paso. Respondents, through legal counsel, received a copy of the Memorandum of Law and are or should be well aware of its contents. However, in their Motion, Respondents failed to even acknowledge to this Court the information and evidence contained in Petitioners' Memorandum of Law. Moreover, Respondents' Motion is supported only by the sworn statements of Respondents themselves, and not by any independent evidence.

7.      Section 6 of the Probate Code requires venue in the county of the decedent's domicile. A person has only one domicile, despite the fact that he may have multiple residences. *In re Estate of Steed*, 152 S.W.3d 797, 803 (Tex.App.—Texarkana 2004, pet. denied). The elements of domicile are (i) actual residence and (ii) an intention to make that place a permanent home. *Id.* at 804. The action and the intention to acquire a domicile must coexist. *Id*; *Maddox v. Surber*, 677 S.W.2d 226, 228-29 (Tex.Civ.App.—Houston [1st Dist.] 1984, no writ).

8.      As evidenced by the Affidavits of Donald R. Brooks and Robert T. Howard, attached hereto, denoted as Exhibit "A" and "B" respectively, and incorporated herein for all purposes, Decedent resided in El Paso County, Texas on the date of his death. (Ex. "A", ¶ 3; Ex. "B", ¶ 4.) Petitioners assert that Decedent was domiciled in El Paso for approximately twenty years. As evidenced by Exhibit "C" attached hereto and incorporated herein for all purposes, Decedent did not claim real property which he owned in the state of Michigan as his principal residence. Decedent's driver's license was issued by the state of Texas as evidenced by Exhibit

5

"D" attached hereto and incorporated herein for all purposes. Decedent was registered to vote in

Texas as evidenced by Exhibit "E" attached hereto and incorporated herein for all purposes. For

federal and state tax purposes, Decedent was domiciled in the state of Texas. During his

lifetime, Decedent filed tax returns or reports as a person who was not domiciled in various

states, including Colorado, Kansas, Kentucky, Michigan, Missouri, New Mexico, New York,

Oklahoma and South Carolina. Each gift tax return filed by Decedent reflects that he was

domiciled in Texas as indicated by certain returns which are denoted as Exhibit "F" attached

hereto and incorporated herein for all purposes. In 2004, Decedent sold a home which he owned

in El Paso and began residing with a companion, Lizeth Modesto ("Ms. Modesto"). At the time

of his death, Decedent was in the process of having architectural plans drawn for a home which

he intended to build on Singing Hills in El Paso County, Texas and in which he and Ms. Modesto

would reside. Decedent did not establish a residence or become domiciled in a state other than

Texas prior to his death. As indicated in the Affidavit of Robert T. Howard, Decedent originally

owned and maintained a controlling interest in a business which is located in El Paso, employed

approximately one hundred people, was created following the sale of a business connected with

the automotive wiring industry and which owned maquiladoras in Mexico. (Ex. "B", ¶¶ 5, 6, 8,

9.). Decedent subsequently sold that business to a family holding company in which Decedent

maintained a controlling and partial ownership interest, and Decedent continued to support the

business in the form of loans. Decedent was actually residing and domiciled in El Paso County

on the date of his death and allegations that El Paso County was not his domicile on the date of

his death are factually incorrect.

{00053831.DOC . 5 }

9.      Like many high net worth individuals, Decedent had business contacts with other states, including banking relationships in New York and business relationships in Michigan, which is particularly understandable since Decedent was involved in the automotive industry. However, having business relationships in multiple states does not cause an individual to be a resident or domiciliary of any such state in the absence of an actual residence in such a state and an intention to make that place a permanent home. Each individual who owns shares of stock of a corporation which is incorporated in Delaware for tax purposes is certainly not domiciled in Delaware.

10.     As indicated in the Affidavit of Donald R. Brooks, Decedent intended to purchase a home in Florida and to move there in the future. (Ex. "A", ¶¶ 13, 16.) On February 1, 2007, Decedent traveled to Florida to watch the Super Bowl with his longtime friend and business associate, and to see a home which his daughter had identified as a possible home for him to purchase. (*Id*, ¶ 13.) On the date of his death, Decedent did not own a home in Florida, and he had not moved from El Paso to Florida. For a place to become a residence, a person must have some right to possession as distinguished from merely being a visitor. *Snyder v. Pitts*, 150 Tex. 407, 241 S.W.2d 136, 140 (1951). Decedent did not have an actual residence in Florida and he had no right of possession in the home of his host. Accordingly, Decedent was merely a visitor in the state of Florida on the date of his death.

11.     As indicated in the Affidavit of Donald R. Brooks, prior to his trip to Florida, Decedent received medical treatment at the Mayo Clinic in Arizona. (Exhibit "A", ¶ 11.) Petitioners call the Court's attention to the fact that persons who are domiciled in El Paso frequently choose to receive medical care at the Mayo Clinic in Arizona in light of its proximity

7

{00053831.DOC . 5 }

to El Paso. Petitioners assert that it would have been more convenient for Decedent to obtain treatment at a Mayo Clinic facility other than the facility in Arizona if he were living in Michigan, New York or Florida. While Decedent received treatment at the Mayo Clinic, he stayed in a vacation home in Fountain Hills, Arizona which is owned by his son. (*Id*, ¶ 11.) Again, Decedent was a guest in his son's vacation home, and he had no right of possession of the residence in which he was a guest. Decedent had not moved to Arizona; he was simply staying in a home owned by one of his children rather than staying in a hotel while he received medical treatment. The permanent home of Decedent's son is in Colorado. During the time that Decedent received medical treatment in Arizona, Ms. Modesto, Decedent's son and Decedent's caregivers were with Decedent most evenings. However, typically, Decedent's son was not at his vacation home as he was attending to his personal matters during the day. During the day, Decedent was with caregivers and Ms. Modesto, although Ms. Modesto occasionally returned to El Paso for short periods of time. While Decedent saw his son in the evenings, Decedent certainly was not confined to or forced by his son to remain at the vacation home in Fountain Hills.

### 1.      Decedent was a Resident and Domiciliary of El Paso County, Texas.

12.      Respondents complain that Petitioners failed to establish that Decedent was domiciled in Texas on the date of his death. The pleadings filed in this cause and the evidence presented at the hearing to admit to probate the Last Will and Testament of Thomas M. Wheeler (the "Will") refute Respondents' unsupported allegations. The Application for Probate of Will and Issuance of Letters Testamentary filed by the Independent Co-Executors of the Estate herein establish that jurisdiction and venue in this Court are proper because Decedent was domiciled

{00053831.DOC . 5 }

and had a fixed place of residence in El Paso County, Texas on the date of his death. At the hearing on that application, testimony was presented from Ms. Modesto, Decedent's companion with whom he resided on the date of his death, that Decedent was domiciled in El Paso County at that time. Ms. Modesto also signed a Proof of Death and Other Facts which reflects that Decedent was domiciled in El Paso County on the date of his death and that Proof of Death and Other Facts was filed herein. Petitioners also signed Proofs of Death and Other Facts which reflect that Decedent was domiciled in El Paso County on the date of his death and those documents were filed herein. Respondents assert that Petitioners have not demonstrated that Decedent changed his domicile from Florida following the date that the Will was executed. In fact, Decedent was never a resident of Florida. As described above, Decedent never established a residence or domicile in Florida, as he anticipated, and thus Decedent remained domiciled in El Paso County, Texas until his death.

13.    Respondents also complain that the testimony of Decedent's companion was inappropriate because she receives a gift under the terms of the Trust. In the vast majority of hearings on applications to probate wills, the individual who is the executor and/or the witness at the hearing is a spouse or family member of the decedent, and is a person who receives a testamentary gift from the decedent and who is interested in the estate. A decedent's family members are often in the best position to have the information which is necessary to establish the location of the decedent's domicile on the date of death. There is no prohibition against offering the testimony of family members or individuals who receive a gift following the decedent's lifetime to prove the decedent's domicile on the date of death. In fact, such testimony is

9

routinely utilized for that purpose.  Respondents do not and cannot cite any authority to support their position.

14.    At the hearing to admit the Will to probate, Petitioners presented the testimony of Decedent's companion, Ms. Modesto, regarding the Decedent's domicile on the date of his death.  Decedent and Ms. Modesto had maintained a relationship for seven years, had resided together for four years and were residing together when Decedent died.  Decedent and Ms. Modesto travelled together frequently, and Ms. Modesto accompanied Decedent for medical treatment during his illness.  Under these circumstances, Ms. Modesto is the person who is in the best position to know where Decedent was domiciled at the time of his death as she lived with him.  Accordingly, Petitioners presented the witness with the most direct knowledge regarding this issue, supported by the Proofs of Death and Other Facts signed and filed by Petitioners in their individual capacities.

      **2.**    **The Trust has a Situs in Texas and Texas law Governs the Trust.**

15.    Respondents assert that Decedent selected Florida situs and choice of law for the Trust and, if those designations are invalid for any reason, that New York law should govern. Paragraph 10B(6) of the Trust Agreement which provides as follows:

> Notwithstanding anything in this Trust Agreement to the contrary, the Trustee of each trust created under this Trust Agreement has discretion at any time or times to transfer the situs of such trust to such other state of the United States of America, such other country, or such other jurisdiction as the Trustee determines, without obtaining judicial authorization or approval (unless such judicial authorization or approval is required by applicable law) and without the filing of any bond. The Trustee's determination to transfer the situs of any trust under this Trust Agreement shall be evidenced by an instrument in writing signed, witnessed and acknowledged by the Trustee in the same manner as would be required for a deed. The Trustee is authorized to take whatever actions are necessary to effect a transfer of situs.  If judicial authorization or approval is required to effect a transfer of situs, the Settlor intends and desires that the appropriate judiciary

10

accept the determination of the Trustee concerning the transfer of the situs of such trust even if one or more beneficiaries disagree with such determination. After the Trustee's transfer of the situs of a trust pursuant to this Section 10B(6) the administration of such trust shall be governed by the law of the new situs of such trust, and all references to state and local law under this Trust Agreement shall be deemed to include references to the relevant law of the new situs.

The Co-Trustees assert that the foregoing provision gives the Co-Trustees the sole discretion to change the situs of the Trust notwithstanding any disagreement of a third party regarding the decision of the Co-Trustees.

16.    In accordance with the terms of the Trust, the Co-Trustees changed the situs and governing law of the Trust to Texas effective as of the date of Decedent's death. Copies of the Notices of Change of Situs executed by the Co-Trustees are attached hereto, denoted as Exhibit "G" and are incorporated herein for all purposes. Consistent with the administration of the Estate in Texas, Texas is now the situs of the Trust and Texas law governs the administration of the Trust pursuant to the authority given to the Co-Trustees to change the situs and governing law.

### 3.    Decedent's Ties with other States are Irrelevant for a Resident and Domiciliary of El Paso County.

17.    In connection with the change in situs of the Trust, Respondents assert that Decedent had longstanding and continuing ties with the state of Michigan. As explained herein, Decedent was involved in the automotive industry which led to maintaining business relationships in Michigan. Decedent also maintained a controlling interest in a business which is located in El Paso through a family holding company. Moreover, Decedent's business relationships in and his ties to Michigan are not considerations which are relevant to the change of situs of the administration of the Trust. Pursuant to the plain language of the Trust

11

Agreement, Decedent intended for the Co-Trustees to have the authority to change the situs and governing law of the Trust, the Co-Trustees properly exercised that authority, and Respondents were aware of the exercise of that authority for several days prior to the date on which their Motion was filed herein.    In addition, it is Petitioners' understanding that counsel for Respondents received a copy of the Trust Agreement in June of 2007.    As indicated in the Amended Complaint, Respondents knew that Ms. Modesto was "a close personal friend" of Decedent and that she lived in El Paso.  (Ex. "G", ¶¶ 9, 11, 12.)  Moreover, Respondents had known since January that the probate proceeding for the Estate was pending in El Paso. Following Decedent's death, legal counsel for Respondents was in communication with legal counsel for Petitioners and Respondents had ample opportunity to request information which Respondents wished to receive.    In addition, in light of Decedent's long history as a Texas domiciliary, Respondents could have and should have reviewed the public records in El Paso County to determine if a probate proceeding related to the Estate had been initiated.    That information is easily available and accessible through the website maintained by El Paso County or a telephone call to the El Paso County Clerk's office.

### 4.    **Decedent was a Resident and Domiciliary of El Paso County, Texas.**

18.    Respondents assert that there are insufficient ties with the state of Texas to permit this Court to exercise jurisdiction over the Estate.  As set forth above, venue is proper in this Court under Section 6 of the Probate Code, and this Court has jurisdiction of the Estate pursuant to Section 5 of the Probate Code.  The critical determination for the purposes of jurisdiction and venue is whether Decedent was a resident of and was domiciled in El Paso County on the date of

{00053831.DOC . 5 }

his death. If so, whether he owned property which is located in El Paso County or whether the majority of his property is located in Texas or in other states, is irrelevant.

19.    In addition, pursuant to Section 250 of the Probate Code, a probate inventory reports the assets which come to the knowledge of or into the possession of the personal representative of the estate. Such assets are commonly known as probate assets. Because assets which were owned by a decedent and which pass under the terms of a contractual arrangement, such as a beneficiary designation, pay on death designation, transfer on death designation, joint tenancy with right of survivorship designation, or pursuant to the terms of a trust agreement, do not come into the possession of the personal representative or to the knowledge of the personal representative in his or her capacity as such, those assets are not properly reported on a probate inventory. Accordingly, the Inventory, Appraisement and List of Claims filed in the Estate (the "Inventory") does not report all of the assets which Decedent owned on the date of his death, and should not do so under the circumstances of the Estate.

20.    Moreover, Petitioners assert that the situs of Decedent's intangible personal property, including but not limited to his interest in Huzella Development Company, LLC, a Texas limited liability company, is in Texas. Personal property ordinarily has a situs in the jurisdiction where the owner lives. *First Trust Joint Stock Land Bank of Chicago v. City of Dallas*, 167 S.W.2d 783, 785 (Tex.Civ.App.—Dallas 1942, writ ref'd); *Zanes v. Merchantile Bank & Trust Co. of Texas*, 49 S.W.2d 922, 926 (Tex.App.—Dallas 1932, writ ref'd).

21.    Respondents note that information available on the Internet indicates that an address for Huzella Development Company, LLC is a street address in Rochester Hills, Michigan. However, the records of the Texas Secretary of State reflect that this entity was

organized and operates under the laws of the state of Texas, its registered office is in El Paso, Texas and its business activities include real estate development in El Paso County. Consequently, Decedent's intangible personal property, particularly Decedent's interest in Huzella Development Company, LLC, has a situs in Texas.

### 5-6.    Change of Situs and Governing Law of the Trust was Proper.

22.    As set forth above, the Co-Trustees of the Trust changed the situs of the Trust and the law governing the administration of the Trust to Texas in accordance with the authority given to the Co-Trustees by Decedent in the Trust. Respondents' allege that the situs of the Trust was changed to Texas in order to impair rights of Respondents. Petitioners assert that the situs was changed to Texas so that the law governing the administration of Decedent's Estate and the law governing the administration of the Trust would be from the same state. Moreover and as evidenced by the Affidavit of Patrick T. Duerr attached hereto, denoted as Exhibit "H" and incorporated herein for all purposes, at the time that the situs was changed, Petitioners had no indication that Respondents would assert any of the matters alleged in the Amended Complaint filed by Respondents in the New York Proceeding (the "Amended Complaint") (Ex. "G", ¶¶ 9, 11, 12.) In fact, the Amended Complaint was not filed until almost seven months after the situs and governing law of the Trust were changed.

23.    Respondents also allege that Petitioners sought administration of the Estate in Texas in order to take advantage of the notice provisions required under Texas law. As explained repeatedly herein, Petitioners filed the Will for probate in this Court and in El Paso County, Texas because Decedent was domiciled in El Paso County, Texas on the date of his death. Legal counsel for Petitioners reviewed whether it would be appropriate to file the Will for

probate in Florida, Michigan and other venues, and determined that it would not be appropriate because Decedent was domiciled in Texas for approximately twenty years prior to and on the date of his death. As explained in more detail herein, at the time that the Will and Trust were executed, Decedent anticipated that he would move to Florida in the future, but Decedent's death occurred before the move took place. In fact, Decedent was never domiciled in Florida during his lifetime. Accordingly, Petitioners appropriately filed the Will for probate in the county and state where Decedent was domiciled when he died.

24.    As also described herein, Petitioners did not anticipate any of the matters described in the Amended Complaint as legal counsel for Petitioners was in the process of negotiating an agreement with legal counsel for Respondents for the temporary occupancy of Respondents in the condominium, which lies at the heart of the dispute now initiated by Respondents, until a new condominium which Ms. Royce represented that Respondents were acquiring was ready for occupancy. Respondents are critical of the fact that legal counsel for Petitioners did not volunteer information regarding the probate proceeding. Despite the statements contained in paragraph 106 of the Motion, attorneys ordinarily do not volunteer information during the course of negotiations. In addition, from at least the date of Decedent's funeral, Respondents knew that Ms. Modesto was Decedent's companion and that she lived in El Paso. Respondents also knew the history of a business which had been owned by Decedent and that the business was located in El Paso. Moreover, Respondents received a great deal of information which they requested from Petitioners, including a copy of the Trust as early as June of 2007, but Respondents never asked Petitioners about a probate proceeding. If Respondents sincerely wanted to know whether or not a probate proceeding had been opened in connection

15

{00053831.DOC . 5 }

with the Estate prior to filing of the Amended Complaint, Petitioners assert that more than

adequate information existed to indicate that Respondents should review the public records in El

Paso, Texas to determine if a probate matter had been filed here, and that Respondents had ample

opportunity to request that information from Petitioners along with other information Petitioners

provided in the same period of time.    However, until Petitioners received the Amended

Complaint, Petitioners believed that the negotiations for temporary occupancy of the

condominium by Respondents were continuing.    In fact, as indicated in the Affidavit of Patrick

T. Duerr, the attorney who represented Respondents in those negotiations, had no knowledge of

the Amended Complaint at the time that it was filed in December of 2007 (Ex "G", ¶ 12.)    The

assertion that there was a conspiracy at all, or for that matter, as early as May of 2007 to deprive

Respondents of their rights in the Estate, the Trust or their rights to due process is entirely

unfounded and unsupported under the facts and circumstances.

     25.    Respondents incorrectly allege that citation by posting as required by the Probate

Code is a deprivation of Respondents' Constitutional rights of due process, despite clear judicial

precedent to the contrary.    *Estate of Ross*, 672 S.W.2d 315, 318 (Tex.App. 1984, writ ref'd

n.r.e.), cert. denied, 470 U.S. 1084 (1985); *Soto*, 529 S.W.2d at 850; *In re Estate of Blevins*, 202

S.W.3d 316, 329 (Tex.App.—Tyler, 2006, no pet.).    In *Estate of Ross*, the court explained:

> Texas courts hold that posting notice of the application for probate, when a will
> has been produced for the court, is sufficient without giving personal notice
> (citations omitted).    The order admitting the will to probate is not such a final
> determination of its validity as to deny appellants a remedy.    Even though the
> burden of proof shifts to appellants, they may contest the validity of the probate
> will by initiating a proceeding under TEX.PROB.CODE ANN. Sec. 93 (Vernon
> 1980).    We hold that appellee's failure to obtain personal service upon appellants
> does not violate the due process provision of the federal constitution.

672 S.W.2d at 318. The United States Supreme Court denied the petition for certiorari in *Estate of Ross*. As also noted by the court in *Estate of Ross*, "[P]ersons interested in an estate are charged with notice of the contents of the probate records." *Id.* at 318. *See also*, *Mooney* 622 S.W.2d at 85.

### 7.    **Proper Probate Proceeding.**

26.    Respondents assert that the evidence which was presented by Petitioners at the hearing to admit the Will to probate failed to establish that this Court has subject matter jurisdiction. Ms. Modesto testified at the hearing that Decedent was domiciled in El Paso County on the date of his death. The Proofs of Death and Other Facts submitted by Ms. Modesto and each of Petitioners also evidence the fact that Decedent was domiciled in El Paso County on the date of his death. As set forth above in greater detail, the fact that Decedent was domiciled in El Paso County provides the Court with jurisdiction and venue over the Estate pursuant to Sections 5 and 6 of the Probate Code.

27.    Respondents next complain that no affidavit was submitted by the subscribing witnesses to the Will. Texas law simply does not require affidavits by the subscribing witnesses under these circumstances. Pursuant to Section 84(b) of the Probate Code, when the subscribing witnesses to the will are not residents of the County in which the hearing is held and no opposition to the probate of the will has been filed, an attested written will produced in court may be proved by the sworn testimony of two witnesses who are familiar with the signature of the testator. As indicated by the signature blocks for the subscribing witnesses, both of those persons have an address in Michigan. As Section 84 provides an efficient and economical alternative for proving a decedent's will by permitting identification of the decedent's signature,

17

Section 84 does not require that the witnesses to the signature be persons who were present at the time that the will was executed. *Estate of Howard Page*, 544 S.W.2d 757, 759 (Tex.Civ.App.— Corpus Christi, 1976, writ ref'd. n.r.e.). Such a requirement would eliminate the utility of a statutory alternative to testimony of the subscribing witnesses themselves.

28.     Moreover, the evidence required to prove that a will which is not self-proved under Section 84(b) of the Probate Code is a valid will is not dictated by the statute. As noted by the court in *Jones v. Whiteley*, 533 S.W.2d 881, 883 (Tex. App.—Fort Worth, 1976, writ ref'd n.r.e.):

> However, it has been held that the provision relating to proof of the will in court "only furnishes a guide under the conditions stated in the statute, and using the word 'may' is a recognition of other methods of proof and of other conditions under which that statute is not applicable" (footnote omitted) Massey v. Allen, 248 S.W. 1067 at 1069 (Tex. Comm'n App., 1923, opinion adopted). The same case also observes that the statute setting out the proof necessary to probate a will (Art. 3271, the predecessor of the present Sec. 88 of the Probate Code), "...requires certain facts to be proved to the satisfaction of the court, showing, among other things, that the testator executed the will with the formality and solemnity required by the law to make it a valid will. There is no method designated in this article of making such proof, but it is only required that it be done to the satisfaction of the court."

29.     Respondents next complain that the Proofs of Death and Other Facts do not reflect the circumstances surrounding the execution of the Will or Decedent's medical, mental and emotional condition on the date that the Will was executed. Similarly, Respondents complain that none of the Proofs of Death and Other Facts reflect that Decedent was of sound mind when the Will was signed, that Decedent signed the Will freely and that he was not subject to undue influence or fraud.

30.     Section 88 of the Probate Code sets forth the evidence which is required to admit a will to probate and obtain the issuance of letters testamentary. If a will is not self-proved,

Section 88(b)(2) requires evidence that the testator executed the will with the formalities and solemnities and under the circumstances required by law for a valid will. Section 59 of the Probate Code contains the following requirements for a will to be valid in Texas: (i) the will must be in writing; (ii) the will must be signed by the testator; (iii) if not wholly in the handwriting of the testator, the will must be attested by two or more credible witnesses. Clearly the Will was in writing and was attested by two credible witnesses. Moreover, evidence that the signature on the Will is Decedent's signature was offered at the hearing by Ms. Kirk and Mr. Dawes and is memorialized in the Proofs of Death and Other Facts executed by them. Moreover, the attestation clause raises a rebuttable presumption of proper execution and validity of the will. *Estate of Howard Page*, 544 S.W.2d at 760; *Jones v. Whiteley*, 533 S.W.2d at 884.

31.     After a will has been admitted to probate, an interested person may sue to contest the validity of the will pursuant to Section 93 of the Probate Code. After the Will has been admitted to probate, it "… should not be set aside upon a bare suspicion of wrongdoing." *Estate of Flores*, 76 S.W.3d 624, 629-30 (Tex.App.—Corpus Christi 2002, no pet.). Instead, the contestant bears the burden of proof to demonstrate that the will is invalid, including on the basis that the decedent lacked testamentary capacity. *Id.* at 629-30; *Cravens v. Chick*, 524, S.W.2d 425 (Tex.App.—Fort Worth 1975), writ ref'd. n.r.e. *per curiam*, 531 S.W.2d 319 (1975).

32.     Respondents next complain that the Order Admitting Will to Probate and Granting Letters Testamentary reflects the Court's determination that the Court has jurisdiction and venue over the Estate, but that the evidence presented at the hearing is insufficient to establish jurisdiction and venue. To the contrary, both the testimony of Ms. Modesto taken at the hearing and the Proofs of Death filed by Ms. Modesto and each of Petitioners, in their individual

capacities, reflect that Decedent was domiciled in El Paso County on the date of his death, which is the only requirement for this Court to have both jurisdiction and venue over this Estate.

33.    Respondents next complain that the evidence presented at the hearing does not identify Decedent's particular address in El Paso County on the date of his death.  Petitioners assert that there is no requirement in Texas law to identify a decedent's particular address, only to demonstrate that a decedent was a resident of the county in which the will is offered for probate.  In addition, such information should not routinely become a part of the public record.  For example, in situations in which a decedent's home is vacant following his or her death, a requirement to disclose the decedent's address in the public records could expose the home and its contents to theft or vandalism.

34.    Respondents assert that the Inventory, Appraisement and List of Claims (the "Inventory") filed in the Estate does not report that Decedent owned an account at Bank of the West on the date of his death.  Respondents conclude, without any supporting evidence, that Decedent did not maintain a business relationship with Bank of the West and that the testimony of Isela Kirk at the hearing on the application to admit the Will to probate is questionable.  Those accounts passed under the terms of the Trust and are not reported on the Inventory.  However, the fact that the Inventory does not report those assets does not lead to the conclusion that Decedent did not have a business relationship with such bank or that Isela Kirk was not familiar with Decedent's signature.

35.    Mr. Dawes testified that he had a business relationship with Decedent.  In the absence of a challenge to that testimony, it was properly accepted by the Court.  In fact, Mr. Dawes' relationship with Decedent dates to approximately 1999 when Decedent became an

{00053831.DOC . 5 }

investor in a company which employed Mr. Dawes and which developed apartment complexes in El Paso, Texas and Alamogordo, New Mexico. Mr. Dawes communicated with Decedent regarding his investment, and met with Decedent to obtain his signature on documents.

36.    Respondents next complain that Ms. Modesto should have been disqualified from offering any testimony at the hearing to admit the Will to probate because she is the beneficiary of a gift under the Trust. There is no requirement that a witness who testifies at a hearing to admit a will to probate be disinterested. To the contrary, most witnesses in probate proceedings are interested because they are family members and such persons are in the best position to have personal knowledge regarding where the decedent resided at death.

### 8.    Notice of Admission of Will to Probate was not Required.

37.    Respondents complain that Petitioners failed to comply with statutory duties to provide notice to Respondents of the admission of the Will to probate as required by the Probate Code and fundamental due process. Respondents allege that the failure to give such notice is generally a violation of the Probate Code, the U.S. Constitution and the Constitution of the State of Texas; however, Respondents do not cite to any specific statutory or constitutional provisions for their arguments.

38.    Respondents' allegations that Petitioners failed to comply with the notice requirements of the Probate Code are factually and legally incorrect. At the time that the Will was offered for and admitted to probate, Section 128(a) of the Probate Code required that citation be served by posting, and citation was properly posted.

39.    The Probate Code has now been amended to include Section 128A which requires an independent executor to give notice to certain persons that a will has been admitted to

21

{00053831.DOC . 5 }

probate. However, Section 128A became effective on September 1, 2007, and applies only to estates in which the decedent died on or after September 1, 2007. Section 5 of S.B. No. 593, Acts of the 80th Legislature, Regular Session, 2007, a copy of which is attached hereto, denoted as Exhibit "I" and incorporated herein for all purposes, amended Section 6.02 of H.B. No. 391, Acts of the 80th Legislature, Regular Session, 2007, and provides in part as follows:

> The changes in law made by this article apply only to the estate of a decedent who dies on or after the effective date of this article.

Section 6 of S.B. No. 593 provides as follows:
> The changes in law made by Sections 1, 2, 3, and 4 of this Act apply only to the estate of a decedent who dies on or after the effective date of this Act. The estate of a decedent who dies before the effective date of this Act is governed by the law in effect on the date of the decedent's death, and the former law is continued for that purpose.

Section 7 of S.B. No. 593 Acts of the 80th Legislature, Regular Session, 2007, provides that: "[T]his Act takes effect September 1, 2007."

40.    Decedent died on February 9, 2007, the application to admit Decedent's Will to probate was filed on May 29, 2007, the hearing to admit the Will was held on June 25, 2007, and the order admitting the Will to probate was filed on July 13, 2007 after all of the oaths required of the Independent Co-Executors had been filed. All of those actions occurred prior to September 1, 2007. Accordingly, Petitioners had no statutory duty under the Probate Code to give notice to Respondents that the Will had been admitted to probate.

41.    Moreover, under Texas law, "[P]ersons interested in an estate admitted to probate are charged with notice of the contents of the probate records." *Mooney*, 622 S.W.2d at 85; *Estate of Ross*, 672 S.W.2d at 318. Beginning shortly after Decedent's death and continuing until late November 2007, legal counsel for Respondents was in communication with legal

counsel for Petitioners.  If Respondents had desired information regarding the status of any

probate proceeding, Respondents' legal counsel could certainly have requested that information

from Petitioners' legal counsel.  Finally, in light of Decedent's longstanding domicile in El Paso

County, Texas and his relationship with a companion who lived in El Paso, Respondents could

have and should have logically reviewed the public records for El Paso County to determine if a

probate proceeding had been filed here.  Under the circumstances in which Respondents had

ample opportunities to ask if a probate proceeding had been filed, and had unfettered access to

public records in the county and state where Decedent had resided for a period of at least twenty

years, Respondents should not now complain that Petitioners failed to advise Respondents of the

probate matter.

**C.**     **Declaratory Judgment Proceedings are Proper in Independent Administrations.**

42.     Respondents assert that the fact that Petitioners have been appointed to serve as

Independent Co-Executors of the Estate precludes them from seeking a declaratory judgment for

approval of the actions requested in the Declaratory Judgment Petition filed herein.  Respondents

cite no authority in support of this position.

43.     As an initial matter, Petitioners filed the request for a declaratory judgment in

their capacities as Co-Trustees of the Trust as well as in their capacities as Independent Co-

Executors of the Estate.  Clearly, Petitioners are authorized to request a declaratory judgment in

their capacities as Co-Trustees of the Trust pursuant to Section 115.001 of the Texas Property

Code.

44.     Moreover, Respondents' position is contrary to the provisions of the Probate Code

and several reported cases.  The court's jurisdiction over estates which are administered by an

{00053831.DOC . 5 }

independent executor is limited pursuant to Section 145(h) of the Probate Code; however, the court's jurisdiction is not eliminated and Texas law does not limit the ability of an independent executor to bring an action for declaratory judgment as a matter incident to an estate pursuant to Sections 5A(b) and 5(f) of the Probate Code. *In re Est. of Bean,* 206 S.W.3d 749, 756-58 (Tex.App.—Texarkana, 2003, pet. denied); *Estate of Bertha H. Lee, deceased*, 981 S.W.2d 288, 291-92 (Tex.App.—Amarillo, 1998, pet. denied); *Columbia Rio Grande Reg'l Hosp. v. Stover*, 17 S.W.3d 387, 392-94 (Tex.App.—Corpus Christi, pet denied). Pursuant to Section 5(f) of the Probate Code, "[A]ll courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate…" Section 5A(b) of the Probate Code defines matters incident to an estate to include: "… the interpretation and administration of testamentary trusts…and generally all matters relating to the collection, settlement, partition and distribution of estates of deceased persons." The determinations which are sought by Petitioners in their Declaratory Judgment Petition clearly fall within the interpretation and administration of the Trust and the determinations directly relate to the settlement, partition and distribution of the Estate. Under Texas law, testators are able to take advantage of the reduced costs and expenses associated with the independent administration of an estate, with the assurance that the independent executor of an estate is able to obtain assistance from the probate court to efficiently and economically resolve issues related to the administration of an estate when appropriate. Texas law does not place an independent executor in the position of being exposed to liability for administrative decisions relating to the estate without access to assistance with those decisions from the probate court.

{00053831.DOC . 5 }

**D.**    **Request to Conduct Discovery.**

45.    Respondents assert the need for discovery on the issues of personal and subject matter jurisdiction. As set forth above, the pertinent issue before the Court is whether Decedent was domiciled in El Paso County on the date of his death. This proceeding is a proceeding in rem pursuant to Section 2(e) of the Probate Code. Accordingly, if Decedent was domiciled in El Paso County when he died, this Court has jurisdiction over the res, which is the Estate and the Trust as a matter incident to the Estate. Any discovery should be strictly limited to the determination of the domicile of Decedent on the date of his death.

46.    In their Motion, Respondents cite cases for the proposition that a court must permit discovery as to jurisdiction when the request is likely to yield facts which are material to the determination of whether jurisdiction exists. *Baron v. Vanier*, 190 S.W.3d 841 (Tex. 2006). However, Respondents have failed to specify any facts or information which would overcome the statutory in rem jurisdiction provided by Section 2(e) of the Probate Code and reported authorities. *Mooney*, 622 S.W.2d at 85; *Soto*, 529 at 850. Respondents also have not indicated what they anticipate discovering or the manner in which they will pursue discovery. In *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.2d 150, 162 (Tex. 2003), the Supreme Court of Texas upheld the denial of a motion for continuance for discovery on a particular issue because none of the discovery could have raised a fact issue as to the issue in contention in that case. Similarly in this case, discovery regarding personal and subject matter jurisdiction is irrelevant because this is an in rem proceeding. Petitioners assert that it is not appropriate to incur the time and expense which would be required to engage in discovery on issues which are not relevant, and that the assets of the Estate and the Trust should not be consumed in that manner.

25

**E.    Response to Plea in Abatement**

47.    Respondents urge that the declaratory judgment action initiated by Petitioners must be abated or stayed because Respondents filed the Amended Complaint in the New York Proceeding in December of 2007, before the Declaratory Judgment Petition was filed herein. Petitioners urge that this court acquired dominant jurisdiction of both the Estate and Trust res to the exclusion of coordinate courts over matters incident to Decedent's estate when the application to probate Decedent's Will was filed herein on May 29, 2007. *Bailey v. Cherokee County Appraisal District*, 862 S.W.2d 581, 586 (Tex. 1993); *Mower v. Boyer*, 811 S.W.2d 560, (Tex. 1991). For purposes of both jurisdiction and venue, a probate proceeding is considered to be initiated when the application to admit the will to probate is filed, and the same proceeding continues with regard to the assets of the estate. As noted above, Section 2(e) of the Probate Code provides that the administration of an estate begins with the filing of the application for probate, on May 29, 2007 in this case, and ends upon the decree of final distribution and the discharge of the last personal representative, and that the proceeding is considered as one proceeding for purposes of jurisdiction. Similarly, Section 8(a) of the Probate Code provides that a proceeding is deemed to have been commenced upon the filing of an application averring facts sufficient to confer venue, and the proceeding which is commenced first extends to all of the property of the estate. As noted above, the administration of the Estate was filed prior to the filing of the Amended Complaint, the administration of the Estate is pending in this Court, Texas law governs the administration of the Trust, and the Declaratory Judgment Petition has been filed in this Court as a matter incident to the administration of the Estate.

{00053831.DOC . 5 }

48.     Respondents characterize one of Petitioners' requests in their Declaratory
Judgment Petition to be a request to "...approve more than $19 million in payments out of the
corpus of the trust..." Respondents apparently misunderstand the nature of Petitioners' request.
Petitioners have requested a declaratory judgment to construe the terms of the Trust to authorize
Petitioners to raise $19,500,000 in liquidity by borrowing cash from a limited partnership in
which the Trust owns a limited partnership interest. Petitioners have determined that it is in the
best interest of the Trust and its beneficiaries, which include Respondents, to borrow the needed
liquidity from the partnership at this time. Petitioners anticipate that the loan will be repaid in
the future and upon the sale of assets which are illiquid at this time. While payments of interest
would be made on the loan, Petitioners do not anticipate that the loan would require $19,500,000
in payments from the principal of the Trust. Petitioners anticipate that the relief requested in the
Petition for Declaratory Judgment will provide sufficient liquidity to allow the Co-Trustees to
distribute the gifts of cash which are distributable to Krystal Wheeler and Tiffany Wheeler
pursuant to the terms of the Trust Agreement. Petitioners believe that the actions described in
the Petitioner for Declaratory Judgment are in the best interest of the beneficiaries of the Trust,
including Respondents.

49.     In summary, Petitioners assert that the factual allegations made by Respondents in
the Motion are erroneous, reckless, and in contravention of the information contained in the
Memorandum of Law and supporting affidavits from the New York action, which was in
Respondents' possession at the time that the Motion was filed. Moreover, Respondents
misunderstand or misapply Texas law regarding the matters described above. The real issue
raised by Respondents is whether this Court has jurisdiction over the Estate. Because Decedent

27

was a resident and domiciliary of El Paso County, Texas on the date of his death, venue and jurisdiction are clearly appropriate in this Court. Any discovery should be strictly limited to the issue of Decedent's domicile on the date of death. Texas courts have held that admission of a will to probate without personal service on all of the legatees and devisees does not violate due process, *Estate of Ross*, 672 S.W.2d at 318, and is binding upon all persons unless the Will is directly attacked. *Ladehoff*, 436 S.W.2d at 336-37. Because probate proceedings are in rem proceedings, the Will has been admitted to probate and has not been attacked, and the actions which are requested by Petitioners in their Declaratory Judgment Petition are matters incident to the administration of the Estate, in personam jurisdiction is irrelevant. Respondents have notice of the Petition for Declaratory Judgment and they must now either decide to participate in that proceeding or not to participate. Respondents have not provided any information or evidence which justifies a delay in proceeding to hear and consider the Declaratory Judgment Petition filed by Petitioners.

**WHEREFORE, PREMISES CONSIDERED**, Petitioners pray that this Court:

1. Deny Respondents' Motion for Special Appearance Pursuant to TRCP 120a;

2. Deny Respondents' Plea to the Jurisdiction pursuant to TRCP 85;

3. Deny Respondents' Plea in Abatement and find that this Court has jurisdiction and venue over the Estate and the Trust;

4. Consider the matters described in Petitioner's Declaratory Judgment Petition at the hearing scheduled on June 10, 2008;

5. Grant the relief requested by Petitioners in the Declaratory Judgment Petition; and

{00053831.DOC . 5 }

28

6.      Grant such other relief to which Petitioners may now or hereafter be entitled, general or special, at law or equity.

Petitioners pray for general relief.

Respectfully submitted,

**RYAN SANDERS & GLUTH, LLP**
310 N. Mesa Street, Suite 300
El Paso, Texas 79901
(915) 351-1100 Telephone
(915) 351-1101 Facsimile

By: _Amy Stewart Sanders_
**AMY STEWART SANDERS**
State Bar No. 19202055
**Attorneys for Petitioners**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was sent by certified mail, return receipt requested, to: (i) Carlos Rincon, Rincon Mounts, P.C., 1014 N. Mesa, Suite 200, El Paso County, Texas 79901; (ii) Max D. Higgs, Attorney at Law, 615 E. Schuster, Building 6, El Paso, Texas 79902; (iii) Katharine J. Hodgins, Assistant Attorney General, Charitable Trusts Section, Consumer Protection & Public Health Division, 300 West 15th Street, Austin, Texas 78701; and (iv) Tiffany Wheeler, 43 West 64th Street, Unit 4A, New York, New York 10023, on this the 29 day of April, 2008.

_Amy Stewart Sanders_
**AMY STEWART SANDERS**

29

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHARLENE ROYCE, as parent and guardian of:   :
TIFFANY M. WHEELER, a Minor,           :

                    Plaintiff,   :

          v.                     :

THOMAS R. WHEELER, LISA W.      :
HUZELLA, and MICHAELON A. WRIGHT,  :
each individually and as acting successor trustee :
of the Thomas M. Wheeler Revocable Trust, u/a :
dated April 9, 1986, as Amended and Restated, :
43 WEST 64TH STREET LLC, a Michigan   :
corporation, and WHEELER FAMILY     :
FOUNDATION, INC., a Delaware nonprofit  :
corporation,                     :

              Defendants,  :

   – and –                   :

KRYSTAL WHEELER,          :

          Nominal Defendant.  :

Civil Action No.: 07-CV-10968 (RWS)

AFFIDAVIT OF
DONALD R. BROOKS

---

STATE OF FLORIDA       )
                     ) ss:
COUNTY OF PALM BEACH  )

DONALD R. BROOKS, being duly sworn, hereby deposes and says:

1.    I have known Thomas M. Wheeler ("Mr. Wheeler" or the "Decedent") for approximately 25 years, and have been a business associate, confidante and close personal friend of his during that time.

**Exhibit "A"**

2.     I submit this affidavit in support of the Defendants' Motion to Dismiss the above-captioned action for lack of subject matter jurisdiction. I base this affidavit upon my personal knowledge and a review of relevant records and public filings. I am not related to the Decedent and I am not entitled to receive any portion of his Estate or Trust.

**Mr. Wheeler's Business Interests and Contacts With Texas**

3.     For approximately twenty years prior to his death, Mr. Wheeler was domiciled in and owned property in El Paso, Texas, where he had his primary residence.

4.     Mr. Wheeler was a businessman and entrepreneur. Mr. Wheeler started the company now known as TMW Enterprises, Inc. ("TMW Enterprises," formerly known as Electro-Wire Products, Inc. ("Electro-Wire")) in the early 1980's. From the inception of Electro-Wire and up until the time of his death, Mr. Wheeler served as the Chairman or Vice Chairman of the company. Mr. Wheeler, through the Thomas M. Wheeler Trust, arising under agreement originally dated April 9, 1986, as amended and restated thereafter (the "Trust"), owned approximately 70% of the issued and outstanding stock of TMW Enterprises.

5.     From inception through the sale of principally all of the operating assets in 1995, the company maintained its principal manufacturing headquarters in El Paso, Texas. From this base of operations, the company operated 8 plants in Mexico, three in El Paso and approximately 5 others around the U.S. and one in Canada. At the time of the sale in 1995, the company employed over 6,000 employees. As a result of the sale, the company maintained the real estate used in the operations of the manufacturing business and only 6 employees remained with Mr. Wheeler.

6.     After Mr. Wheeler sold the core operations of Electro-Wire in 1995, the successor company was renamed TMW Enterprises. TMW Enterprises is engaged in a variety of business and real estate ventures.

2

7.     After 1995, and separate from TMW Enterprises, Mr. Wheeler and his Trust were involved in different business activities, including the acquisition of certain businesses in El Paso, Texas, which were subsequently combined into what is today known as Millennium Plastics Technologies, LLC ("Millennium"). Millennium employs approximately 100 people and operates from leased facilities in El Paso, Texas. The Trust has made financial accommodations to and for the benefit of Millennium over the years.

8.     Mr. Wheeler and/or his Trust were involved in construction and development activities, including a development of approximately 225 residential apartments in El Paso, Texas, and a development of approximately 275 residential apartments in Alamogordo, New Mexico.

9.     Up until his death, Mr. Wheeler was active in the operations of TMW Enterprises and frequently communicated from his home in El Paso, Texas.

**Events Leading Up To Mr. Wheeler's Death**

10.     In approximately late 2005, Mr. Wheeler was diagnosed with kidney cancer. Mr. Wheeler had received treatment for his cancer since early 2006, and was responding well to the treatment.

11.     In or around September of 2006, Mr. Wheeler sought cancer treatment at the Mayo Clinic in Arizona. To avoid staying in a hotel, Mr. Wheeler stayed at the Arizona vacation home of his son, Thomas R. Wheeler, in Fountain Hills, Arizona.

12.     During this time, Mr. Wheeler gave regular instruction regarding the operation of his business ventures and the disposition of his assets, including his request to amend his estate and trust planning through modifications to his will and Trust. He conducted planning meetings with various managers of his businesses for which I

3

attended in person on one or more occasions. For several months leading up to his death, Mr. Wheeler and I discussed changes to his will and Trust.

13. While in Arizona, Mr. Wheeler obtained permission from his doctor to travel to Florida in late January or early February 2007. Mr. Wheeler came to my home in Florida where he stayed to attend the Super Bowl, which was being held in Miami, Florida, and to meet with a real estate broker to view property in Florida which had been referred to him by his daughter, Michaelon A. Wright. Mr. Wheeler also authorized Ms. Wright to enter into a contract to purchase the property, which Mr. Wheeler anticipated would become his primary residence.

14. At various times, Mr. Wheeler discussed with me his succession plan. Mr. Wheeler also requested that I become a member of the Board of Directors of TMW Enterprises, so that I could provide counsel and guidance to his eldest children in the administration of TMW Enterprises, as well as the Trust and his estate.

15. Approximately a day after arriving at my home in Juno Beach, Florida, Mr. Wheeler suffered a setback, causing him to be hospitalized. He subsequently died on February 9, 2007.

**Administration of the Estate and Trust**

16. Mr. Wheeler planned his estate and Trust under the assumption that he would consummate the purchase of the Florida property and move there, but his plans were never realized.

17. Following his death, Mr. Wheeler's three eldest children, Michaelon A. Wright, Thomas R. Wheeler and Lisa W. Huzella, acting in their capacities as Independent Co-Executors of the Estate of Thomas M. Wheeler, deceased ("Co-Executors"), and in their capacities as Co-Trustees of the Thomas M. Wheeler Trust ("Co-Trustees"), arising under an agreement originally dated April 9, 1986, as amended

4

thereafter ("Trust"), began the process of complying with the provisions of the Will and Trust by collecting Mr. Wheeler's assets, identifying his debts and making initial tax payments.

18.    Because of Mr. Wheeler's relationship to El Paso, Texas, including the location of his permanent residence, the Co-Executors of the Estate filed a probate petition in a Texas court, and undertook other Trust activities in Texas.

\*        \*        \*        \*        \*

The above facts are true and correct, to the best of my knowledge, information and belief.

DATED:        Palm Beach, Florida
                  March /4, 2008



Donald R. Brooks

Sworn to and subscribed
before me this /4th day of March, 2008.

Notary

WILLIAM B. COBB
Notary Public - State of Florida
My Commission Expires Sep 30, 2008
Commission # DD 359028
Bonded By National Notary Assn.

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLENE ROYCE, as parent and guardian of:  :
TIFFANY M. WHEELER, a Minor,

                     Plaintiff,  :

    v.  :

THOMAS R. WHEELER, LISA W.  :
HUZELLA, and MICHAELON A. WRIGHT,  :   Civil Action No.: 07-CV-10968 (RWS)
each individually and as acting successor trustee :
of the Thomas M. Wheeler Revocable Trust, u/a :
dated April 9, 1986, as Amended and Restated,  :   **AFFIDAVIT OF**
43 WEST 64TH STREET LLC, a Michigan  :   **ROBERT T. HOWARD**
corporation, and WHEELER FAMILY  :
FOUNDATION, INC., a Delaware nonprofit  :
corporation,  :

                   Defendants,  :

   – and –  :

KRYSTAL WHEELER,  :

             Nominal Defendant.  :

STATE OF MICHIGAN  )
                ) ss:
COUNTY OF OAKLAND )

    ROBERT T. HOWARD, being duly sworn, hereby deposes and says:

    1.    I am the President and Chief Executive Officer ("CEO") of TMW

Enterprises Inc. ("TMW Enterprises"), located at 201 West Big Beaver, Suite 201, Troy,

Michigan 48084. I have known Thomas M. Wheeler ("Mr. Wheeler" or the "Decedent")

for approximately 17 years, and have been a business associate during that time.

                        Exhibit "B"

2.      I submit this affidavit in support of the Defendants' Motion to Dismiss the
above-captioned action for lack of subject matter jurisdiction. I base this affidavit upon
my personal knowledge and a review of relevant records and public filings. I am not
related to the Decedent and I am not entitled to receive any portion of his Estate or Trust.

### Mr. Wheeler's Business Interests and Contacts with Texas

3.      Mr. Wheeler ("Mr. Wheeler" or the "Decedent") died in West Palm Beach,
Florida, on February 9, 2007.

4.      Prior to his death, Mr. Wheeler was domiciled in and owned property in El
Paso, Texas, where he had his primary residence.

5.      Mr. Wheeler was a businessman and entrepreneur. Mr. Wheeler started the
company now known as TMW Enterprises (formerly known as Electro-Wire Products,
Inc. ("Electro-Wire") in the early 1980's. From the inception of Electro-Wire and up
until the time of his death, Mr. Wheeler served as the Chairman or Vice Chairman of the
company. Mr. Wheeler, through the Thomas M. Wheeler Trust, arising under agreement
originally dated April 9, 1986, as amended and restated thereafter (the "Trust"), owned
approximately 70% of the issued and outstanding stock of TMW Enterprises.

6.      From inception through the sale of principally all of the operating assets in
1995, the company maintained its principal manufacturing headquarters in El Paso,
Texas. From this base of operations, the company operated 8 plants in Mexico, three in
El Paso and approximately 5 others around the U.S. and one in Canada. At the time of
the sale in 1995, the company employed over 6,000 employees. As a result of the sale,
the company maintained the real estate used in the operations of the manufacturing
business and only 6 employees remained with Mr. Wheeler.

7.      As of the date of this affidavit, certain of those manufacturing plants still
exist (primarily the plants in Mexico) and are leased to third parties, but are "locked"

2

D03        NO. 923        12125763600 → TMW        12:33        03/14/2008        PAGE 3/5 · RCVD AT 3/14/2008 13:33:34 [Eastern Daylight Time] · SVR:

Case 1: 07-cv-00909-RDM-WCB Document 1-9 Filed 05/16/2008 Page 32 of 64

inside the corporate structure that existed when the company had operations. This structure is not easily liquidated as it consists of TMW Enterprises, which is a subchapter "S" corporation, owning an U.S. "C corporation", which in turn owns three Mexican corporations, which in turn own the eight plants in Mexico.

8. After Mr. Wheeler sold the core operations of Electro-Wire in 1995, the successor company was renamed TMW Enterprises. TMW Enterprises is engaged in a variety of business and real estate ventures.

9. After 1995 and separate from TMW Enterprises, Mr. Wheeler and his Trust were involved in different business activities, including the acquisition of certain businesses in El Paso, Texas, which were subsequently combined into what is today known as Millennium Plastics Technologies, LLC ("Millennium"). Millennium employs approximately 100 people and operates from leased facilities in El Paso, Texas. The Trust has made financial accommodations to and for the benefit of Millennium over the years.

10. Mr. Wheeler and/or his Trust were involved in construction and development activities, including a development of approximately 225 residential apartments in El Paso, Texas, and a development of approximately 275 residential apartments in Alamogordo, New Mexico.

11. Up until his death, Mr. Wheeler was actively involved in the business and management of the operations of TMW Enterprises and his personal wealth, which included assets in the Trust.

12. Mr. Wheeler frequently communicated from his home in El Paso, Texas. During the 17 years until his death, Mr. Wheeler and I have had numerous discussions regarding the operations of TMW and his Estate and Trust planning. During the month of January 2007 I participated in a number of telephone conversations with Mr. Wheeler

3

(and sometimes, with others) from his temporary location in Arizona wherein pending
business matters were discussed, including strategy discussions concerning continuing
matters associated with a recent asset disposition.

*　　　*　　　*　　　*　　　*

The above facts are true and correct, to the best of my knowledge, information and
belief.

DATED:　　Troy, Michigan
　　　　　March 14, 2008

Robert T. Howard

Sworn to and subscribed
before me this 14th day of March, 2008.

Notary

TINA SMARCH
Notary Public, State of Michigan
County of Oakland
My Commission Expires Apr. 8, 2008
Acting in the County of

4

**2006**

# TOWNSHIP OF BLOOMFIELD

4200 Telegraph Road • P.O. Box 489
Bloomfield Hills, Michigan 48303-0489
248-433-7710

**NOTICE OF ASSESSMENT,
TAXABLE VALUATION, AND
PROPERTY CLASSIFICATION**
This form is issued under the authority of
P.A. 206 of 1983, Sec. 211.24 (c), as amended.

## THIS IS NOT A TAX BILL

Name and Address of Owner or Person Named on Assessment Roll

WHEELER, TOM
C/O TMW ENTERPRISES
2120 AUSTIN
ROCHESTER HILLS MI 48309-0000

Property Identification
C -19-25-126-040        30

5568 PINE BROOKE

T2N, R10E, SEC 25 OAKLAND
COUNTY CONDOMINIUM PLAN NO
442 PINEBROOKE MANOR OF
BIRMINGHAM UNIT 11 L 9281 P
482 7-8-86 FR 029

THIS PROPERTY IS CLASSIFIED AS: 405

PRIOR YEAR'S CLASSIFICATION IF DIFFERENT: 405

Proposal A, passed by the voters on March 15, 1994, places a limit on the value used to compute property taxes. Starting in 1995, your property taxes were calculated on Taxable Value (see line 1 below). If there is a number entered in the "Change" column at the right side of the Taxable Value line, that number is NOT your change in taxes, it is the change in Taxable Value.

Prior to 1995, your taxes were calculated on State Equalized Value (see line 4 below). State Equalized Value (SEV) is the Assessed Value multiplied by the Equalization Factor, if any (see line 3 below). State Equalized Value must approximate 50% of market value.

**IF THERE WAS A TRANSFER OF OWNERSHIP** on your property in 2005, your 2006 Taxable Value will be the same as your 2006 State Equalized Value. Please see line 5 below regarding Transfer of Ownership on your property.

**IF THERE WAS NOT A TRANSFER OF OWNERSHIP** on your property in 2005, your 2006 Taxable Value is calculated by multiplying your 2005 Taxable Value (see line 1 below) by 1.033 (the Inflation Rate Multiplier for the current year). Physical changes in your property may also increase or decrease your Taxable Value. Your 2006 Taxable Value cannot be higher than your 2006 State Equalized Value.

|  | PRIOR AMOUNT YEAR: 2005 | CURRENT AMOUNT YEAR: 2006 | CHANGE |
|---|---|---|---|
| 1. TAXABLE VALUE (current amount is tentative): | 333,850 | 341,150 | 7,300 |
| 2. ASSESSED VALUE: | 340,510 | 341,150 | 640 |
| 3. TENTATIVE EQUALIZATION FACTOR:    1.00 |  |  |  |
| 4. STATE EQUALIZED VALUE (current amount is tentative): | 340,510 | 341,150 | 640 |
| 5. There WAS / WAS NOT a transfer of ownership on this property in 2005: Was Not |  |  |  |

If you believe that these values, the property classification, or the property transfer information is incorrect, you may protest to the Local Board of Review which will meet according to the schedule on the reverse of this notice.

YOUR ASSESSMENT CHANGED FOR THE FOLLOWING REASONS:  MARKET ADJUSTMENT

% Exempt as "Principal Residence": 0%

% Exempt as "Qualified Agricultural Property":

**Exhibit "C"**

## SEE REVERSE SIDE FOR UNDERLINE YOUR RIGHTS OF APPEAL

The Bloomfield Township Assessor's Office updates its assessments each year. Please feel free to discuss your assessed valuation with the Assessor's Office at any time prior to the Board of Review.

The exemption from the 18 mills of local school operating tax for "qualified agricultural properties" may be appealed to the local Board of Review. The March Board of Review has no authority over "homeowner's principal residence" exemptions. The exemption from the same 18 mills for a "homeowner's principal residence" may be appealed to the Michigan Tax Tribunal following a denial of the exemption.

Protest at the Board of Review is necessary to protect your right to further appeals to the Michigan Tax Tribunal for valuation and exemption appeals and/or State Tax Commission for classification appeals.

Please use the Parcel Identification Number when referring to your property so that your records can be quickly located.

All appointments must be scheduled **and all letters** of appeal must be received by 4:00 P.M., Tuesday, March 14, 2006.

The 2006 Board of Review will meet:

| | | | |
|---|---|---|---|
| Monday, March 13, 2006 | 9:00 A.M. to 12:00 Noon | 1:30 P.M. to 4:30 P.M. | |
| Tuesday, March 14, 2006 | | 1:00 P.M. to 4:00 P.M. | 6:30 P.M. to 9:30 P.M. |

All appellants should detail their reason for appeal including comparable properties, sale data of similar properties, differences and similarities between compared property, and any additional factors from which the Board of Review can render a determination.

**HOMEOWNER'S PRINCIPAL RESIDENCE EXEMPTION AFFIDAVIT INFORMATION REQUIRED BY P.A. 237 OF 1994 AS AMENDED:** If you purchased your principal residence after May 1 last year, to claim the exemption for 2006, if you have not already done so, you are required to have filed an affidavit before May 1, 2006.

---

Oakland County Equalization, by contract, prepares all Personal Property Assessments for Bloomfield Township. Questions regarding the valuation of Personal Property should be directed to the Personal Property Auditor at 248-858-0746. An appeal of a Personal Property assessment must be scheduled through Bloomfield Township Board of Review.

---

DAVID PAYNE
SUPERVISOR AND SECRETARY
BOARD OF REVIEW
BLOOMFIELD TOWNSHIP






Exhibit "D"



**Exhibit "E"**

| Form **709** | United States Gift (and Generation-Skipping Transfer) Tax Return | | OMB No. 1545-0020 |
|---|---|---|---|
| Department of the Treasury Internal Revenue Service | (For gifts made during calendar year 2003)  ▶ See separate instructions. | | **2003** |

| 1 Donor's first name and middle initial | 2 Donor's last name | | 3 Donor's social security number |
|---|---|---|---|
| THOMAS M. | WHEELER | | |

| 4 Address (number, street, and apartment number) | | 5 Legal residence (domicile) (county and state) |
|---|---|---|
| c/o TMN ENTERPRISES INC., 2120 AUSTIN AVENUE, STE.100 | | TEXAS |

| 6 City, state, and ZIP code | 7 Citizenship |
|---|---|
| ROCHESTER HILLS, MI  48309 | U.S.A. |

## Part 1 — General Information

| | | | Yes | No |
|---|---|---|---|---|
| 8 | If the donor died during the year, check here ▶ ☐ and enter date of death _____ | | | |
| 9 | If you received an extension of time to file this Form 709, check here ▶ ☒ and attach the Form 4868, 2688, 2350, or extension letter. | | | |
| 10 | Enter the total number of donees listed on Schedule A — count each person only once ▶ **5** | | | |
| 11a | Have you (the donor) previously filed a Form 709 (or 709-A) for any other year? If "No," skip line 11b . . . . . . . . . . . . . . . . . . | | X | |
| 11b | If the answer to line 11a is "Yes," has your address changed since you last filed Form 709 (or 709-A)? . . . . . . . . . . . . . . . . . . | | | X |
| 12 | Gifts by husband or wife to third parties. — Do you consent to have the gifts (including generation-skipping transfers) made by you and by your spouse to third parties during the calendar year considered as made one-half by each of you? (See instructions.) (If the answer is "Yes," the following information must be furnished and your spouse must sign the consent shown below. If the answer is "No," skip lines 13 - 18 and go to Schedule A.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X | |
| 13 | Name of consenting spouse NANCY A. WHEELER | 14 SSN | | |
| 15 | Were you married to one another during the entire calendar year? (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . | | X | |
| 16 | If the answer to 15 is "No," check whether ☐ married ☐ divorced or ☐ widowed, and give date (see instructions) ▶ | | | |
| 17 | Will a gift tax return for this year be filed by your spouse? (If "Yes," mail both returns in the same envelope.) . . . . . . . . . . . . . . . . | | | X |
| 18 | Consent of Spouse — I consent to have the gifts (and generation-skipping transfers) made by me and by my spouse to third parties during the calendar year considered as made one-half by each of us. We are both aware of the joint and several liability for tax created by the execution of this consent. | | | |

Consenting spouse's signature ▶ *Nancy W. Wheeler*   Date ▶ *10-14-04*

## Part 2 — Tax Computation

| | | | |
|---|---|---|---|
| 1 | Enter the amount from Schedule A, Part 4, line 11 . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 | |
| 2 | Enter the amount from Schedule B, line 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | |
| 3 | Total taxable gifts (add lines 1 and 2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | |
| 4 | Tax computed on amount on line 3 (see Table for Computing Tax in separate instructions) . . . . . . . . . | 4 | |
| 5 | Tax computed on amount on line 2 (see Table for Computing Tax in separate instructions) . . . . . . . . . | 5 | |
| 6 | Balance (subtract line 5 from line 4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 | |
| 7 | Maximum unified credit (nonresident aliens, see instructions) . . . . . . . . . . . . . . . . . . . . | 7 | |
| 8 | Enter the unified credit against tax allowable for all prior periods (from Sch. B, line 1, col. C) . . . . . . . . | 8 | |
| 9 | Balance (subtract line 8 from line 7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 | |
| 10 | Enter 20% (.20) of the amount allowed as a specific exemption for gifts made after September 8, 1976, and before January 1, 1977 (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 | |
| 11 | Balance (subtract line 10 from line 9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 | |
| 12 | Unified credit (enter the smaller of line 6 or line 11) . . . . . . . . . . . . . . . . . . . . . . . . | 12 | |
| 13 | Credit for foreign gift taxes (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 | |
| 14 | Total credits (add lines 12 and 13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 | |
| 15 | Balance (subtract line 14 from line 6) (do not enter less than zero) . . . . . . . . . . . . . . . . . . | 15 | |
| 16 | Generation-skipping transfer taxes (from Schedule C, Part 3, col. H, Total) . . . . . . . . . . . . . . | 16 | |
| 17 | Total tax (add lines 15 and 16) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 | |
| 18 | Gift and generation-skipping transfer taxes prepaid with extension of time to file . . . . . . . . . . . . . | 18 | |
| 19 | If line 18 is less than line 17, enter balance due (see instructions) . . . . . . . . . . . . . . . . . . | 19 | |
| 20 | If line 18 is greater than line 17, enter amount to be refunded . . . . . . . . . . . . . . . . . . . . | 20 | |

| Sign Here | Under penalties of perjury, I declare that I have examined this return, including any accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than donor) is based on all information of which preparer has any knowledge. | | |
|---|---|---|---|
| | ▶ *Thomas M. Wheeler* Signature of donor | 10-14-04 Date | |

| Paid Preparer's Use Only | Preparer's signature ▶ | Date | Check if self-employed ▶ ☐ |
|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code ▶ | | Phone no. ▶ |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 12 of the separate instructions for this form.     Form **709** (2003)

ISA
STF FED1495F.1

**Exhibit "F"**

Redacted

Form **709**

United States Gift (and Generation-Skipping Transfer) Tax Return

(For gifts made during calendar year 2004)

OMB No. 1545-0020

Department of the Treasury
Internal Revenue Service

► See separate Instructions.

**2004**

| 1 Donor's first name and middle initial | 2 Donor's last name | 3 Donor's social security number |
|---|---|---|
| THOMAS M. | WHEELER | |

| 4 Address (number, street, and apartment number) | 5 Legal residence (domicile) (county and state) |
|---|---|
| c/o TMW ENTERPRISES INC., 2120 AUSTIN AVENUE, STE. 100 | TEXAS |

| 6 City, state, and ZIP code | 7 Citizenship |
|---|---|
| ROCHESTER HILLS, MI 48309 | U.S.A. |

**Part 1 — General Information**

| | | Yes | No |
|---|---|---|---|
| 8 | If the donor died during the year, check here ► ☐ and enter date of death _____ | | |
| 9 | If you received an extension of time to file this Form 709, check here ► ☒ and attach the Form 4868, 2688, 2350, or 8892 . | | |
| 10 | Enter the total number of donees listed on Schedule A — count each person only once. ► 3 | | |
| 11a | Have you (the donor) previously filed a Form 709 (or 709-A) for any other year? If "No," skip line 11b . . . . . . . . . . . . . . . . . . | X | |
| 11b | If the answer to line 11a is "Yes," has your address changed since you last filed Form 709 (or 709-A)? . . . . . . . . . . . . . . . | | X |
| 12 | Gifts by husband or wife to third parties. — Do you consent to have the gifts (including generation-skipping transfers) made by you and by your spouse to third parties during the calendar year considered as made one-half by each of you? (see instructions.) (If the answer is "Yes," the following information must be furnished and your spouse must sign the consent shown below. If the answer is "No," skip lines 13-18 and go to Schedule A.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| 13 | Name of consenting spouse NANCY A. WHEELER | 14 SSN | |
| 15 | Were you married to one another during the entire calendar year? (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . | X | |
| 16 | If 15 is "No," check whether ☐ married ☐ divorced or ☐ widowed/deceased, and give date (see instructions) ► | | |
| 17 | Will a gift tax return for this year be filed by your spouse? (If "Yes," mail both returns in the same envelope.) . . . . . . . . . . . . | | X |
| 18 | Consent of Spouse — I consent to have the gifts (and generation-skipping transfers) made by me and by my spouse to third parties during the calendar year considered as made one-half by each of us. We are both aware of the joint and several liability for tax created by the execution of this consent. | | |

Consenting spouse's signature ► *Nancy A Wheeler*   Date ► 10-15-05

**Part 2 — Tax Computation**

| | | | |
|---|---|---|---|
| 1 | Enter the amount from Schedule A, Part 4, line 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 | |
| 2 | Enter the amount from Schedule B, line 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | |
| 3 | Total taxable gifts (add lines 1 and 2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | |
| 4 | Tax computed on amount on line 3 (see Table for Computing Tax in separate instructions) . . . . . . . . . . | 4 | |
| 5 | Tax computed on amount on line 2 (see Table for Computing Tax in separate instructions) . . . . . . . . . . | 5 | |
| 6 | Balance (subtract line 5 from line 4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 | |
| 7 | Maximum unified credit (nonresident aliens, see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 | |
| 8 | Enter the unified credit against tax allowable for all prior periods (from Sch. B, line 1, col. C) . . . . . . . . | 8 | |
| 9 | Balance (subtract line 8 from line 7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 | |
| 10 | Enter 20% (.20) of the amount allowed as a specific exemption for gifts made after September 8, 1976, and before January 1, 1977 (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 | |
| 11 | Balance (subtract line 10 from line 9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 | |
| 12 | Unified credit (enter the smaller of line 6 or line 11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 | |
| 13 | Credit for foreign gift taxes (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 | |
| 14 | Total credits (add lines 12 and 13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 | |
| 15 | Balance (subtract line 14 from line 6) (do not enter less than zero) . . . . . . . . . . . . . . . . . . . . . . . . | 15 | |
| 16 | Generation-skipping transfer taxes (from Schedule C, Part 3, col. H, Total) . . . . . . . . . . . . . . . . . . | 16 | |
| 17 | Total tax (add lines 15 and 16) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 | |
| 18 | Gift and generation-skipping transfer taxes prepaid with extension of time to file . . . . . . . . . . . . . . . | 18 | |
| 19 | If line 18 is less than line 17, enter balance due (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . | 19 | |
| 20 | If line 18 is greater than line 17, enter amount to be refunded . . . . . . . . . . . . . . . . . . . . . . . . . . | 20 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including any accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than donor) is based on all information of which preparer has any knowledge.

Signature of donor ►   Date ► 10-15-05

**Paid Preparer's Use Only**

| Preparer's signature ► | | Date | | Check if self-employed ► ☐ |
|---|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ► | | | Phone no. ► | |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 12 of the separate instructions for this form.

Form **709** (2004)

ISA
STF FED1436F.1

Form **709**

Department of the Treasury
Internal Revenue Service

**United States Gift (and Generation-Skipping Transfer) Tax Return**
(For gifts made during calendar year 2005)

► See separate instructions.

OMB No. 1545-0020

**2005**

## Part 1 — General Information

| | | |
|---|---|---|
| 1 Donor's first name and middle initial | 2 Donor's last name | 3 Donor's social security number |
| THOMAS M. | WHEELER | |
| 4 Address (number, street, and apartment number) | | 5 Legal residence (domicile) (county and state) |
| C/O TMW ENTERPRISES INC., 201 W. BIG BEAVER RD., STE. 1420 | | TEXAS |
| 6 City, state, and ZIP code | | 7 Citizenship |
| TROY, MI  48084 | | U.S.A. |

|  |  | Yes | No |
|---|---|---|---|
| 8 | If the donor died during the year, check here ► ☐ and enter date of death | | |
| 9 | If you extended the time to file this Form 709, check here ► ☒ | | |
| 10 | Enter the total number of donees listed on Schedule A. Count each person only once. ► 5 | | |
| 11a | Have you (the donor) previously filed a Form 709 (or 709-A) for any other year? If "No," skip line 11b | | X |
| 11b | If the answer to line 11a is "Yes," has your address changed since you last filed Form 709 (or 709-A)? | | X |
| 12 | Gifts by husband or wife to third parties. Do you consent to have the gifts (including generation-skipping transfers) made by you and by your spouse to third parties during the calendar year considered as made one-half by each of you? (See instructions.) (If the answer is "Yes," the following information must be furnished and your spouse must sign the consent shown below. If the answer is "No," skip lines 13-18 and go to Schedule A.) | | X |
| 13 | Name of consenting spouse NANCY A. WHEELER     14 SSN | | |
| 15 | Were you married to one another during the entire calendar year? (see instructions) | | X |
| 16 | If 15 is "No," check whether ☐ married ☐ divorced or ☐ widowed/deceased, and give date (see instructions) ► | | |
| 17 | Will a gift tax return for this year be filed by your spouse? (If "Yes," mail both returns in the same envelope.) | | X |
| 18 | Consent of Spouse. I consent to have the gifts (and generation-skipping transfers) made by me and by my spouse to third parties during the calendar year considered as made one-half by each of us. We are both aware of the joint and several liability for tax created by the execution of this consent. |

Consenting spouse's signature ► *Nancy A Wheeler*     Date ► 4-15-08

## Part 2 — Tax Computation

| | | | |
|---|---|---|---|
| 1 | Enter the amount from Schedule A, Part 4, line 11 | 1 | |
| 2 | Enter the amount from Schedule B, line 3 | 2 | |
| 3 | Total taxable gifts. Add lines 1 and 2 | 3 | |
| 4 | Tax computed on amount on line 3 (see Table for Computing Gift Tax in separate instructions) | 4 | |
| 5 | Tax computed on amount on line 2 (see Table for Computing Gift Tax in separate instructions) | 5 | |
| 6 | Balance. Subtract line 5 from line 4 | 6 | |
| 7 | Maximum unified credit (nonresident aliens, see instructions) | 7 | |
| 8 | Enter the unified credit against tax allowable for all prior periods (from Sch. B, line 1, col. C) | 8 | |
| 9 | Balance. Subtract line 8 from line 7 | 9 | |
| 10 | Enter 20% (.20) of the amount allowed as a specific exemption for gifts made after September 8, 1976, and before January 1, 1977 (see instructions) | 10 | |
| 11 | Balance. Subtract line 10 from line 9 | 11 | |
| 12 | Unified credit. Enter the smaller of line 6 or line 11 | 12 | |
| 13 | Credit for foreign gift taxes (see instructions) | 13 | |
| 14 | Total credits. Add lines 12 and 13 | 14 | |
| 15 | Balance. Subtract line 14 from line 6. Do not enter less than zero | 15 | |
| 16 | Generation-skipping transfer taxes (from Schedule C, Part 3, col. H, Total) | 16 | |
| 17 | Total tax. Add lines 15 and 16 | 17 | |
| 18 | Gift and generation-skipping transfer taxes prepaid with extension of time to file | 18 | |
| 19 | If line 18 is less than line 17, enter balance due (see instructions) | 19 | |
| 20 | If line 18 is greater than line 17, enter amount to be refunded | 20 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including any accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than donor) is based on all information of which preparer has any knowledge.

Signature of donor     EXECUTOR     Date  4/15/08

**Paid Preparer's Use Only**

| Preparer's signature | | Date | Check if self-employed ► ☐ |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code | | Phone no. ► | |

Attach check or money order here.

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 12 of the separate instructions for this form.
ISA
STF FED1436F.1

Form **709** (2005)

Form **709**

Department of the Treasury
Internal Revenue Service

**United States Gift (and Generation-Skipping Transfer) Tax Return**

(For gifts made during calendar year 2006)

► See separate instructions.

OMB No. 1545-0020

**2006**

| | | |
|---|---|---|
| **1** Donor's first name and middle initial<br>THOMAS M. | **2** Donor's last name<br>WHEELER | **3** Donor's social security number |
| **4** Address (number, street, and apartment number)<br>c/o TMW ENTERPRISES INC., 201 W. BIG BEAVER RD., STE. 1420 | | **5** Legal residence (domicile) (county and state)<br>TEXAS |
| **6** City, state, and ZIP code<br>TROY, MI 48084 | | **7** Citizenship<br>U.S.A. |

**Part 1 — General Information**

|  | | Yes | No |
|---|---|---|---|
| **8** | If the donor died during the year, check here ► ☐ and enter date of death ► | | |
| **9** | If you extended the time to file this Form 709, check here ► ☒ | | |
| **10** | Enter the total number of donees listed on Schedule A. Count each person only once. ► 6 | | |
| **11a** | Have you (the donor) previously filed a Form 709 (or 709-A) for any other year? If "No," skip line 11b | X | |
| **11b** | If the answer to line 11a is "Yes," has your address changed since you last filed Form 709 (or 709-A)? | | X |
| **12** | Gifts by husband or wife to third parties. Do you consent to have the gifts (including generation-skipping transfers) made by you and by your spouse to third parties during the calendar year considered as made one-half by each of you? (See instructions.) (If the answer is "Yes," the following information must be furnished and your spouse must sign the consent shown below. If the answer is "No," skip lines 13 – 18 and go to Schedule A.) | X | |
| **13** | Name of consenting spouse NANCY A. WHEELER   **14** SSN | | |
| **15** | Were you married to one another during the entire calendar year? (see instructions) | X | |
| **16** | If 15 is "No," check whether ☐ married ☐ divorced or ☐ widowed/deceased, and give date (see instructions) ► | | |
| **17** | Will a gift tax return for this year be filed by your spouse? (If "Yes," mail both returns in the same envelope.) | | X |
| **18** | **Consent of Spouse.** I consent to have the gifts and generation-skipping transfers made by me and by my spouse to third parties during the calendar year considered as made one-half by each of us. We are both aware of the joint and several liability for tax created by the execution of this consent.<br>Consenting spouse's signature ► *Nancy A Wheeler*   Date ► 4-15-08 | | |

**Part 2 — Tax Computation**

| | | | |
|---|---|---|---|
| **1** | Enter the amount from Schedule A, Part 4, line 11 | **1** | |
| **2** | Enter the amount from Schedule B, line 3 | **2** | |
| **3** | Total taxable gifts. Add lines 1 and 2 | **3** | |
| **4** | Tax computed on amount on line 3 (see Table for Computing Gift Tax in separate instructions) | **4** | |
| **5** | Tax computed on amount on line 2 (see Table for Computing Gift Tax in separate instructions) | **5** | |
| **6** | Balance. Subtract line 5 from line 4 | **6** | |
| **7** | Maximum unified credit (nonresident aliens, see instructions) | **7** | |
| **8** | Enter the unified credit against tax allowable for all prior periods (from Sch. B, line 1, col. C) | **8** | |
| **9** | Balance. Subtract line 8 from line 7 | **9** | |
| **10** | Enter 20% (.20) of the amount allowed as a specific exemption for gifts made after September 8, 1976, and before January 1, 1977 (see instructions) | **10** | |
| **11** | Balance. Subtract line 10 from line 9 | **11** | |
| **12** | Unified credit. Enter the smaller of line 6 or line 11 | **12** | |
| **13** | Credit for foreign gift taxes (see instructions) | **13** | |
| **14** | Total credits. Add lines 12 and 13 | **14** | |
| **15** | Balance. Subtract line 14 from line 6. Do not enter less than zero | **15** | |
| **16** | Generation-skipping transfer taxes (from Schedule C, Part 3, col. H, Total) | **16** | |
| **17** | Total tax. Add lines 15 and 16 | **17** | |
| **18** | Gift and generation-skipping transfer taxes prepaid with extension of time to file | **18** | |
| **19** | If line 18 is less than line 17, enter balance due (see instructions) | **19** | |
| **20** | If line 18 is greater than line 17, enter amount to be refunded | **20** | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including any accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than donor) is based on all information of which preparer has any knowledge.

Signature of donor   EXECUTOR   Date 4/15/08

**Paid Preparer's Use Only**

| Preparer's signature | | Date | Check if self-employed ► ☐ |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code | | Phone no. ► | |

Attach check or money order here:

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 12 of the separate instructions for this form.

ISA

Form **709** (2006)

STF LJXL1000.1

## NOTICE OF CHANGE OF SITUS

Pursuant to Section 10B(6) of the Thomas M. Wheeler Trust Agreement dated April 9, 1986, as amended (the "*Trust Agreement*"), the Trustees of each of the Trusts thereunder (the "*Trusts*") have transferred the situs and place of administration of each of the Trusts to the State of Texas effective on February 9, 2007. Pursuant to Section 10B(6) of the Trust Agreement and notwithstanding anything to the contrary provided in the Trust Agreement or state law, the administration of each of the Trusts shall be governed by the laws of the State of Texas and all references to state and local law under the Trust Agreement shall be deemed to refer to the relevant law of the State of Texas.

This Notice may be executed in one or more counterparts, each of which shall be deemed an original.

Witnesses:

_____        _____
                                        Michaelon A. Wright, as Trustee

_____

_____        _____
                                        Thomas R. Wheeler, as Trustee

_____

_____        _____
                                        Lisa Wheeler Huzella, as Trustee

_____

STATE OF                    )
                            ) ss:
COUNTY OF                   )

The foregoing instrument was acknowledged before me this 24th day of May_____, 2007, by Michaelon A. Wright, as Trustee.

_____

**TINA SMARCH**
Notary Public, State of Michigan
County of Oakland
My Commission Expires Apr. 8, 2008
Acting in the County of

Notary Name:
Notary Public, _____ County,
My commission expires: 4/8/2008

STATE OF          )
                          ) ss:

COUNTY OF      )

    The foregoing instrument was acknowledged before me this 24th day of _____, 2007, by Thomas R. Wheeler, as Trustee.

TINA SMARCH
Notary Public, State of Michigan
County of Oakland
My Commission Expires Apr. 8, 2008
Acting in the Cou...

Notary Name: _____
Notary Public, _____ County, _____
My commission expires: _____


STATE OF          )
                          ) ss:

COUNTY OF      )

    The foregoing instrument was acknowledged before me this ____ day of _____, 2007, by Lisa Wheeler Huzella, as Trustee.

Notary Name: _____
Notary Public, _____ County, _____
My commission expires: _____


DETROIT.2606648.1

2

## NOTICE OF CHANGE OF SITUS

Pursuant to Section 10B(6) of the Thomas M. Wheeler Trust Agreement dated April 9, 1986, as amended (the *"Trust Agreement"*), the Trustees of each of the Trusts thereunder (the *"Trusts"*) have transferred the situs and place of administration of each of the Trusts to the State of Texas effective on February 9, 2007. Pursuant to Section 10B(6) of the Trust Agreement and notwithstanding anything to the contrary provided in the Trust Agreement or state law, the administration of each of the Trusts shall be governed by the laws of the State of Texas and all references to state and local law under the Trust Agreement shall be deemed to refer to the relevant law of the State of Texas.

This Notice may be executed in one or more counterparts, each of which shall be deemed an original.

Witnesses:

_____

_____        _____
                                         Michaelon A. Wright, as Trustee

_____

_____        _____
                                         Thomas R. Wheeler, as Trustee

_____

_____        _____
                                         Lisa Wheeler Huzella, as Trustee    *as Trustee*

STATE OF                    )
                            ) ss:
COUNTY OF                   )

The foregoing instrument was acknowledged before me this _____ day of _____, 2007, by Michaelon A. Wright, as Trustee.

_____
Notary Name:
Notary Public, _____ County, _____
My commission expires: _____

STATE OF                    )
                           ) ss:
COUNTY OF                   )

The foregoing instrument was acknowledged before me this ____ day of
_____, 2007, by Thomas R. Wheeler, as Trustee.

Notary Name: _____
Notary Public, _____ County, _____
My commission expires: _____

STATE OF Colorado )
                 ) ss:
COUNTY OF Eagle  )

The foregoing instrument was acknowledged before me this 24th day of
May _____, 2007, by Lisa Wheeler Huzella, as Trustee.

_____
Notary Name:
Notary Public, Colorado County, Eagle
My commission expires: 10/08/2009 ,

DETROIT.2606648.1

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHARLENE ROYCE, as parent and guardian of:     :
TIFFANY M. WHEELER, a Minor,         :

                      Plaintiff,     :

      v.                       :

THOMAS R. WHEELER, LISA W.         :
HUZELLA, and MICHAELON A. WRIGHT,   :
each individually and as acting successor trustee :
of the Thomas M. Wheeler Revocable Trust, u/a :
dated April 9, 1986, as Amended and Restated,   :
43 WEST 64TH STREET LLC, a Michigan     :
corporation, and WHEELER FAMILY       :
FOUNDATION, INC., a Delaware nonprofit     :
corporation,                     :

                  Defendants,   :

    – and –                   :

KRYSTAL WHEELER,             :

            Nominal Defendant.   :

---

Civil Action No.: 07-CV-10968 (RWS)

AFFIDAVIT OF
PATRICK T. DUERR

STATE OF MICHIGAN         )
                          ) ss:
COUNTY OF WAYNE           )

      PATRICK T. DUERR, being duly sworn, hereby deposes and says:

      1.       I am an attorney with the law firm of Honigman Miller Schwartz and Cohn

LLP, 2290 First National Building, 660 Woodward Avenue, Detroit, Michigan 48226-

3506, co-counsel to Defendants Thomas R. Wheeler, Lisa W. Huzella and Michaelon A.

Wright, acting in their capacities as Co-Trustees of the Thomas M. Wheeler Revocable

**Exhibit "H"**

Trust, dated April 9, 1986, as amended and restated (the "Trust"), and Defendants 43 West 64th Street LLC, and Wheeler Family Foundation, Inc. (collectively, the "Defendants").

2.    I submit this affidavit in support of the Defendants' Motion to Dismiss the above-captioned action for lack of subject matter jurisdiction, and to put before this court certain documents and information relating thereto. I base this affidavit upon my personal knowledge and a review of relevant records and public filings. I am not related to the Decedent and I am not entitled to receive any portion of his Estate or Trust.

3.    Mr. Wheeler ("Mr. Wheeler" or "Decedent") died in West Palm Beach, Florida, on February 9, 2007.

4.    Mr. Wheeler had two children with Charlene Royce, named Tiffany M. Wheeler and Krystal Wheeler (collectively, the "Royce Group"). Mr. Wheeler and Ms. Royce were never married.

5.    Mr. Wheeler previously purchased an apartment located at 43 West 64th Street, New York, New York (the "New York City Apartment"), which he allowed the Royce Group to occupy as a residence. On information and belief, the Royce Group continues to occupy the New York City Apartment until the present time.

6.    Shortly after Mr. Wheeler's death, the Royce Group was advised of the provisions of the Will and Trust relating to them. As counsel for the Co-Executors and Co-Trustees, I engaged in discussions with Derek Sells and others from the Cochran Firm, The Woolworth Building, 233 Broadway, 5th Floor, New York, New York  10279 (counsel for the Royce Group), in connection with a request for the Royce Group to temporarily occupy the New York City Apartment until approximately November 2007, at which point the Royce Group would be moving to another apartment which they had allegedly acquired on or about February 2007.

7.      In connection with these discussions, counsel for the Royce Group requested copies of the governing Trust and Will documents, as well as prior versions of the documents. After entering into an appropriate non-disclosure agreement to keep the documents confidential, the Royce Group was provided with copies of the relevant documentation.

8.      The Co-Executors and Co-Trustees discussed an agreement with the Royce Group to allow them to remain in the Apartment until November 2007, in exchange for an agreement to pay a monthly charge of $9,000.00 for rent. As an accommodation to the Royce Group, this amount was a significant discount from the fair market rental for the Apartment.

9.      Through October of 2007, the Royce Group did not raise any issue relating to the disposition of the New York City Apartment, as provided in the Trust. Nor did the Royce Group make any claims or arguments such as those contained in the allegations in the Complaint in the above-captioned action.

10.     In early November 2007, the Royce Group, through its counsel, Derek Sells, informed counsel for the Co-Executors and Co-Trustees, that the Royce Group did not acquire the other residence and now wished to consider the purchase of the New York City Apartment. Derek Sells also made an overture whereby the Apartment would be sold with the Royce Group keeping the proceeds after the payment of debts. This proposal was immediately rejected.

11.     In an effort to alternatively pursue an outright sale to the Royce Group, arrangements were discussed with the Royce Group's attorney, Derek Sells, for the real estate brokerage firm Brown Harris Stevens of New York City, to visit the New York City Apartment for the purpose of performing an appraisal to determine a sale price for the sale to the Royce Group.

3

12.     While awaiting for a response from Derek Sells for a mutually agreeable time to conduct a review of the premises by the real estate broker, the Royce Group hired new counsel and for the first time, objected to the validity of Mr. Wheeler's Will and Trust in the form of the initial and amended Complaint in the above-captioned action, when it was filed on December 3, 2007.  Upon inquiry, Derek Sells also advised me that he had no knowledge of the filing of the Complaint.

*       *       *       *       *

The above facts are true and correct, to the best of my knowledge, information and belief.

DATED:     Detroit, Michigan
           March 14, 2008


                                        _____
                                        Patrick T. Duerr


Sworn to and subscribed
before me this 14th day of March, 2008.

_____
Notary

DIANE REICHMANN
Notary Public - Michigan
Macomb County
My Commission Expires Jul 29, 2014
Acting in the County of Wayne

4

S.B. No. 593

1              AN ACT

2    relating to proof of, and providing notice to certain beneficiaries

3    under, a decedent's will.

4         BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

5         SECTION 1.  Section 128A, Texas Probate Code, is amended to

6    read as follows:

7         Sec. 128A.  NOTICE TO CERTAIN BENEFICIARIES [~~ENTITIES~~] AFTER

8    PROBATE OF WILL.  (a)  In this section, "beneficiary" means a

9    person, entity, state, governmental agency of the state, charitable

10   organization, or trust entitled to receive real or personal

11   property under the terms of a decedent's will, to be determined for

12   purposes of this section with the assumption that each person who is

13   alive on the date of the decedent's death survives any period

14   required to receive the bequest as specified by the terms of the

15   will.

16        (b)  Except as provided by Subsection (d) of this section,

17   not later than the 60th day after the date of an order admitting a

18   decedent's will to probate, the personal representative of the

19   decedent's estate, including an independent executor or

20   independent administrator, shall give notice that complies with

21   Subsection (e) of this section to each beneficiary named in the will

22   whose identity and address are known to the personal representative

23   or, through reasonable diligence, can be ascertained.  If, after

24   the 60th day after the date of the order, the personal

**Exhibit "I"**

S.B. No. 593

1   representative becomes aware of the identity and address of a
2   beneficiary who was not given notice on or before the 60th day, the
3   personal representative shall give the notice as soon as possible
4   after becoming aware of that information.

5       (c)  Notwithstanding the requirement under Subsection (b) of
6   this section that the personal representative give the notice to
7   the beneficiary, the personal representative shall give the notice
8   with respect to a beneficiary described by this subsection as
9   follows:

10       (1)  if the beneficiary is a trust, to the trustee,
11  unless the personal representative is the trustee, in which case
12  the personal representative shall give the notice to the person or
13  class of persons first eligible to receive the trust income, to be
14  determined for purposes of this subdivision as if the trust were in
15  existence on the date of the decedent's death;

16       (2)  if the beneficiary has a court-appointed guardian
17  or conservator, to that guardian or conservator;

18       (3)  if the beneficiary is a minor for whom no guardian
19  or conservator has been appointed, to a parent of the minor; and

20       (4)  if the beneficiary is a charity that for any reason
21  cannot be notified, to the attorney general.

22   (d)  A personal representative is not required to give the
23  notice otherwise required by this section to a beneficiary who:

24       (1)  made an appearance in the proceeding with respect
25  to the decedent's estate before the will was admitted to probate; or

26       (2)  received a copy of the will that was admitted to
27  probate and waived the right to receive the notice in an instrument

2

S.B. No. 593

1   that:

2                   (A)   acknowledges the receipt of the copy of the

3   will;

4                   (B)   is signed by the beneficiary; and

5                   (C)   is filed with the court.

6           (e)   The notice required by this section must:

7               (1)   state:

8                   (A)   the name and address of the beneficiary to

9   whom the notice is given or, for a beneficiary described by

10  Subsection (c) of this section, the name and address of the

11  beneficiary for whom the notice is given and of the person to whom

12  the notice is given;

13                  (B)   the decedent's name;

14                  (C)   that the decedent's will has been admitted to

15  probate;

16                  (D)   that the beneficiary to whom or for whom the

17  notice is given is named as a beneficiary in the will; and

18                  (E)   the personal representative's name and

19  contact information; and

20              (2)   contain as attachments a copy of the will admitted

21  to probate and the order admitting the will to probate.

22          (f)   The notice required by this section must be sent by

23  registered or certified mail, return receipt requested.

24          (g)   Not later than the 90th day after the date of an order

25  admitting a will to probate, the personal representative shall file

26  with the clerk of the court in which the decedent's estate is

27  pending a sworn affidavit of the personal representative, or a

3

S.B. No. 593

1   certificate signed by the personal representative's attorney,

2   stating:

3          (1)  for each beneficiary to whom notice was required

4   to be given under this section, the name and address of the

5   beneficiary to whom the personal representative gave the notice or,

6   for a beneficiary described by Subsection (c) of this section, the

7   name and address of the beneficiary and of the person to whom the

8   notice was given;

9          (2)  the name and address of each beneficiary who filed

10  a waiver of the notice;

11         (3)  the name of each beneficiary whose identity or

12  address could not be ascertained despite the personal

13  representative's exercise of reasonable diligence; and

14         (4)  any other information necessary to explain the

15  personal representative's inability to give the notice to or for

16  any beneficiary as required by this section.

17     (h)  The affidavit or certificate required by Subsection (g)

18  of this section may be included with any pleading or other document

19  filed with the clerk of the court, including the inventory,

20  appraisement, and list of claims or an application for an extension

21  of the deadline to file the inventory, appraisement, and list of

22  claims, provided that the pleading or other document with which the

23  affidavit or certificate is included is filed not later than the

24  date the affidavit or certificate is required to be filed as

25  provided by Subsection (g) of this section [If the address of the

26  entity can be ascertained with reasonable diligence, an applicant

27  under Section 81 of this code shall give the state, a governmental

4

S.B. No. 593

1  ~~agency of the state, or a charitable organization notice that the~~
2  ~~entity is named as a devisee in a written will, a written will not~~
3  ~~produced, or a nuncupative will that has been admitted to probate.~~
4      ~~[(b)  The notice required by Subsection (a) of this section~~
5  ~~must be given not later than the 30th day after the date of the~~
6  ~~probate of the will.~~
7      ~~[(c)  The notice must be in writing and state the county in~~
8  ~~which the will was admitted to probate.  A copy of the application~~
9  ~~and the order admitting the will to probate and, if the application~~
10 ~~is for probate of a written will, a copy of the will must be attached~~
11 ~~to the notice.~~
12     ~~[(d)  An entity entitled to notice under Subsection (a) of~~
13 ~~this section must be notified by registered or certified mail,~~
14 ~~return receipt requested.~~
15     ~~[(e)  The applicant must file a copy of the notice with the~~
16 ~~court in which the will was admitted to probate].~~
17     SECTION 2.  The heading to Section 128B, Texas Probate Code,
18 is amended to read as follows:
19     Sec. 128B.  NOTICE <u>TO HEIRS ON APPLICATION TO PROBATE</u> [~~WHEN~~]
20 WILL [~~PROBATED~~] AFTER FOUR YEARS.
21     SECTION 3.  Subsection (a), Section 149C, Texas Probate
22 Code, is amended to read as follows:
23     (a)  The county court, as that term is defined by Section 3 of
24 this code, on its own motion or on motion of any interested person,
25 after the independent executor has been cited by personal service
26 to answer at a time and place fixed in the notice, may remove an
27 independent executor when:

5

S.B. No. 593

1      (1)  the  independent  executor  fails  to  return  within

2  ninety days after qualification, unless such time is extended by

3  order of the court, an inventory of the property of the estate and

4  list of claims that have come to the independent executor's [his]

5  knowledge;

6      (2)  sufficient  grounds  appear  to  support  belief  that

7  the independent executor [he] has misapplied or embezzled, or that

8  the independent executor [he] is about to misapply or embezzle, all

9  or any part of the property committed to the independent executor's

10  [his] care;

11      (3)  the  independent  executor  [he]  fails  to  make  an

12  accounting which is required by law to be made;

13      (4)  the independent executor [he] fails to timely file

14  the affidavit or certificate [notice] required by Section 128A of

15  this code;

16      (5)  the  independent  executor  [he]  is  proved  to  have

17  been  guilty  of  gross  misconduct  or  gross  mismanagement  in  the

18  performance of the independent executor's [his] duties; or

19      (6)  the  independent  executor  [he]  becomes  an

20  incapacitated person, or is sentenced to the penitentiary, or from

21  any  other  cause  becomes  legally  incapacitated  from  properly

22  performing the independent executor's [his] fiduciary duties.

23      SECTION 4.  Subsection (b), Section 222, Texas Probate Code,

24  is amended to read as follows:

25      (b)  With  Notice.   The  court  may  remove  a  personal

26  representative  on  its  own  motion,  or  on  the  complaint  of  any

27  interested person, after the personal representative has been cited

6

S.B. No. 593

1    by personal service to answer at a time and place fixed in the

2    notice, when:

3            (1)  Sufficient grounds appear to support belief that

4    the personal representative [he] has misapplied, embezzled, or

5    removed from the state, or that the personal representative [he] is

6    about to misapply, embezzle, or remove from the state, all or any

7    part of the property committed to the personal representative's

8    [his] care;

9            (2)  The personal representative [He] fails to return

10   any account which is required by law to be made;

11           (3)  The personal representative [He] fails to obey any

12   proper order of the court having jurisdiction with respect to the

13   performance of the personal representative's [his] duties;

14           (4)  The personal representative [He] is proved to have

15   been  guilty  of  gross  misconduct,  or  mismanagement  in  the

16   performance of the personal representative's [his] duties;

17           (5)  The  personal  representative  [He]  becomes  an

18   incapacitated person, or is sentenced to the penitentiary, or from

19   any other cause becomes incapable of properly performing the duties

20   of the personal representative's [his] trust;

21           (6)  As  executor  or  administrator,  the  personal

22   representative [he] fails to make a final settlement within three

23   years after the grant of letters, unless the time be extended by the

24   court upon a showing of sufficient cause supported by oath; or

25           (7)  As  executor  or  administrator,  the  personal

26   representative [he] fails to timely file the affidavit or

27   certificate [notice] required by Section 128A of this code.

7

S.B. No. 593

1    SECTION 5.  Section 6.02, H.B. No. 391, Acts of the 80th

2    Legislature, Regular Session, 2007, as effective September 1, 2007,

3    is amended to read as follows:

4        SECTION 6.02.  The changes in law made by this article apply

5    only to [:

6        [(1)  the estate of a decedent who dies before the

7    effective date of this article, if the probate or administration of

8    the estate is pending on or commenced on or after the effective date

9    of this article; and

10        [(2)] the estate of a decedent who dies on or after the

11    effective date of this article.

12        SECTION 6.  The changes in law made by Sections 1, 2, 3, and 4

13    of this Act apply only to the estate of a decedent who dies on or

14    after the effective date of this Act.  The estate of a decedent who

15    dies before the effective date of this Act is governed by the law in

16    effect on the date of the decedent's death, and the former law is

17    continued in effect for that purpose.

18        SECTION 7.  This Act takes effect September 1, 2007.

8

S.B. No. 593

---

President of the Senate      Speaker of the House

    I hereby certify that S.B. No. 593 passed the Senate on May 28, 2007, by the following vote: Yeas 30, Nays 0; May 4, 2007, Senate refused to concur in House amendment and requested appointment of Conference Committee; May 14, 2007, House granted request of the Senate; May 26, 2007, Senate adopted Conference Committee Report by the following vote: Yeas 30, Nays 0.

---

Secretary of the Senate

    I hereby certify that S.B. No. 593 passed the House, with amendment, on May 2, 2007, by the following vote: Yeas 147, Nays 0, two present not voting; May 14, 2007, House granted request of the Senate for appointment of Conference Committee; May 26, 2007, House adopted Conference Committee Report by the following vote: Yeas 143, Nays 0, two present not voting.

---

Chief Clerk of the House

Approved:

---

Date

---

Governor

9

# SANDERS AFFIDAVIT

# EXHIBIT 2

IN THE STATUTORY PROBATE COURT NO. 2

EL PASO COUNTY, TEXAS

FILED *MAY 06 2008*

COUNTY CLERK, EL PASO CO., TEXAS
DELIA BRIONES
BY _____
                    DEPUTY

IN THE MATTER OF THE ESTATE    §
                               §
OF                             §    NO. 2007-P00529
                               §
THOMAS M. WHEELER, Deceased.   §

---

### Order Granting Respondents' Motions to Continue the April 2, 2008 Hearing

On March 25, 2008, the Court considered the motion to continue filed by the temporary guardian *ad litem* for Respondent Tiffany M. Wheeler, attorney Robert Warach. Also on said date, the Court considered Respondents' Motion to Continue the April 2, 2008 Hearing, which was filed subject to Respondents' special appearance and other jurisdictional objections. After considering said motions, the Court is of the opinion that they should be GRANTED.

THEREFORE, IT IS HEREBY ORDERED that said motions to continue are GRANTED, and that the April 2, 2008 hearing in the above-referenced cause is CONTINUED. Further, in order to allow the parties to engage in discovery strictly limited to the determination of the domicile of Thomas M. Wheeler, deceased, at the time of his death and necessary for the determination of the Court's subject matter jurisdiction, the next hearing in this case IS HEREBY SET for June 16, 2008 at 2:00 p.m., at which time the Court will: (i) first consider Respondents' Motion for Special Appearance pursuant to T.R.C.P. 120a, and subject to said Special Appearance and in the Alternative, Plea to the Jurisdiction Pursuant to T.R.C.P. 85; and (ii) subject to a determination that the Court has appropriate subject matter jurisdiction, proceed to hold another status/scheduling conference at which time a scheduling order will be issued controlling matters such as the discovery periods and jury trial date.

{00053894.DOC . 4 }

IT IS SO ORDERED.

SIGNED this _6_ day of _May_, 2008.

ORIGINAL SIGNED BY
JUDGE EDUARDO A. GAMBOA
PROBATE COURT NO. 2

**THE HONORABLE EDUARDO GAMBOA**

AGREED~~as~~ to form.

Carlos Rincon
State Bar No. 16932700
John Anderson
State Bar No. 24011465
RINCON MOUNTS, P.C.
1014 North Mesa Street, Suite 200
El Paso, Texas 79902
(915) 532-6800 (Telephone)
(915) 532-6808 (Facsimile)

and

for, and with permission

Max D. Higgs, Esq.
State Bar No. 09603500
MAX HIGGS LAW OFFICE
615 E. Schuster, Building 6
El Paso, Texas 79902
(915) 351-1963 (Telephone)
(915) 975-6529 (Facsimile)

*Attorneys for Respondents Krystal Wheeler*
*And Charlene Royce, Natural Guardian of*
*Tiffany M. Wheeler*

and

- 2 -

{00053894.DOC . 4 }

Amy Stewart Sanders
State Bar No. 19202055
Ryan Sanders & Gluth, L.L.P.
310 North Mesa Street, Suite 300
El Paso, Texas 79901
(915) 351-1100 (Telephone)
(915) 351-1101 (Facsimile)
*Attorneys for Petitioners Thomas R. Wheeler,*
*Michaelon A. Wright, and Lisa W. Huzella,*
*Independent Co-Executors of the Estate of*
*Thomas M. Wheeler and Co-Trustees of*
*the Thomas M. Wheeler Trust*

# SANDERS AFFIDAVIT

# EXHIBIT 3

# RINCON MOUNTS, P.C.

### ATTORNEYS AT LAW
### 1014 N. MESA, STE. 200
### EL PASO, TEXAS 79902

John L. Anderson
Ruben Duarte
Jaclyn J. Gerban
James A. Mounts, III
Carlos Rincon *

Telephone:
(915) 532-6800
Toll Free:
(888) 532-6630
Facsimile:
(915) 532-6808
www.rinconmounts.com

\* Board Certified-Personal Injury Trial Law

May 7, 2008

*Via Hand Delivery*

Ms. Amy Stewart Sanders
Ryan & Sanders, L.L.P.
310 North Mesa Street, Suite 300
El Paso, Texas 79901

Re:    *In the Matter of the Estate of Thomas M. Wheeler, Deceased*; Case No. 2007-P00529-A in the Statutory Probate Court No. 2 of El Paso County, Texas

Dear Ms. Sanders:

Enclosed is (1) Respondents' First Requests for Production of Documents by Petitioners Relating to Decedent's Domicile, Propounded Subject to Respondents' Special Appearances and (2) Certificate of Written Discovery.

Cordially,

Carlos Rincon

CR/jf
Enclosures

cc (w/encls):    Hon. Max Higgs (Retired)
Law Office of Max Higgs
615 E. Schuster, Bldg. 6
El Paso, Texas 79902
*(Via E-Mail)*

{RM Files\0102\0001\00029909.DOC /}

May 7, 2008
Page 2 of 2

       Mr. Robert Warach
       Robert Warach & Associates
       7300 Viscount Blvd., Suite 101
       El Paso, Texas 79925
       *(Via Certified Mail,*
       *Return Receipt Requested)*

       Ms. Bea Castillo
       Court Coordinator
       Probate Court No. 2
       500 E. San Antonio, 8th Floor
       El Paso, Texas 79901
       *(Via Hand Delivery)*

IN THE STATUTORY PROBATE COURT NO. 2

EL PASO COUNTY, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE | § | |
| | § | |
| OF | § | NO. 2007-P00529-A[1] |
| | § | |
| THOMAS M. WHEELER, Deceased. | § | |

## Respondents' First Requests for Production of Documents by Petitioners Relating to Decedent's Domicile, Propounded Subject to Respondents' Special Appearances

COME NOW Respondents, Charlene Royce, Krystal Wheeler and Tiffany Wheeler ("Respondents"), and, subject to Respondents' special appearances and pursuant to Rule 196 of the Texas Rules of Civil Procedure, hereby serve their First Requests for Production of Documents by Petitioners relating to Decedent's Domicile, Propounded Subject to Respondents' Special Appearances.

### I.
### Instructions

Petitioners, Thomas R. Wheeler, Michaelon A. Wright and Lisa W. Huzella, are requested to provide written responses and produce all documents and/or other tangible items responsive to the following Requests for Production under the provisions of Texas Rules of Civil Procedure 191, 192, 193, and 196.2, and other applicable Rules, to Respondents' undersigned counsel by hand delivery **on or before June 6, 2008**, which is thirty (30) days after receipt of

---

[1] Although Petitioners served their "Original Petition for Declaratory Judgment," dated February 19, 2008, under the original probate caption, with the original probate cause number, No. 2007-P00529, they should have revised the cause number, as indicated hereon (No. 2007-P00529-A), to reflect that this is a separate proceeding from the underlying probate action.

personal service being made of these Requests for Production.  Please separately identify and segregate the documents produced in response to each Request for Production.

Pursuant to Rule 193.1, when responding to written discovery, a party must make a complete response based on all information reasonably available to the responding party or its attorney at the time the response is made.

The responding party's answers, objections, and other responses must be preceded by the request to which they apply.

SUPPLEMENTATION REQUIRED:  If a party learns that the party's response to written discovery was incomplete or incorrect when made, or, although complete and correct when made, is no longer complete and correct, the party must amend or supplement the response in accordance with Rule 193.5.

The responding party should also abide by the following instructions:

1.  Whenever appropriate, the singular form of a word shall be interpreted in the plural, or *vice versa*; verb tenses shall be interpreted to include past, present, and future tenses; the terms "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any documents that might otherwise be construed as outside its scope; and words in the masculine, feminine, or neuter form include the others.

2.  Any reference to a person, corporation, association, partnership, company, joint venture, trust or other entity shall mean that person or entity, any parents, affiliates, divisions, controlled companies, subsidiaries, or otherwise related persons or entities, and all of his, her, or its current or former agents, representatives, employees, attorneys, accountants, officers, directors, auditors, and consultants, or other persons or entities acting or purporting to act on his, her or its behalf.

2

3.  The responding party must provide all responsive documents in the responding party's possession, custody, or control, or otherwise known and available to such party, regardless of whether such documents are possessed directly by such party or by such party's agents, officers, directors, employees, representatives, or investigators, or such party's attorneys or their agents, employees, representatives or investigators.

5.  Produce all copies of each document requested, together with all non-identical copies and drafts thereof.

6.  All documents should be produced in the same order as they are kept or maintained by the responding party in the normal course of business or in a manner that makes clear the precise request to which the document is responsive.

7.  Documents attached to each other should not be separated.

8.  All documents are to be produced in their entirety, without redaction, including all attachments and enclosures. If, for any reason, a document cannot be produced in full, state with particularity the reason or reasons it is not produced in full, and describe, to the best of the responding party's knowledge, information, and belief and with as much particularity as possible those portions of the document that are not produced. When a document is only in part responsive to any request herein, it shall nevertheless be produced in its entirety. If documents that are produced are normally kept in a file or other folder, that file or folder must also be produced.

9.  If any of the requests cannot be responded to in full, then respond to the extent possible, specifying the reasons for your inability to respond to the remainder.

10.  For any document withheld on a claim of privilege, provide the following information: (1) the date the document was prepared or the date it bears; (2) the author of the

document; (3) the addressee(s) and recipient(s) of the document; (4) the title and/or subject

matter of the document; (5) the source of the document; (6) the identity of persons to whom the

document or any portion thereof has already been revealed; and (7) the basis for withholding the

document.

11.    If the response to any request is that any document or thing is no longer in the

responding party's custody or control, for each such document or thing, explain whether the

document or thing is (a) missing or lost, (b) destroyed, (c) transferred voluntarily or involuntarily

to others, and/or, (d) otherwise disposed of.  Additionally, set forth: (i) a brief statement of the

general nature of the contents; (ii) the identity of the person(s) who prepared the same; (iii) the

place where the same was prepared; (iv) the date of preparation; (v) if the document or thing was

directed to another person, the identity of the addressee; (vi) the identity of the person or persons

presently in possession of the original and/or copies; and (vii) the title of the document or thing.

12.    If a document requested herein has been destroyed, then state the date of its

destruction, identify each person having any knowledge of its destruction and identify each

person responsible for its destruction.

13.    When there are no documents in the responding party's custody, control or

possession that are responsive to any paragraph hereof, please so state.

14.    When these requests do not specifically request a particular document but the

document would help to make the production complete, comprehensible or not misleading,

please produce the document.

15.    Unless otherwise noted, the time period applying to all requests is from February

9, 2002 through February 9, 2007.

4

## II.
## Definitions

As used herein, the following terms and phrases shall have the following meanings:

A.    The term "document" is intended to have the broadest possible meaning under the applicable Texas Rules of Civil Procedure, and includes, without limitation, all handwritten, typed, printed, photocopied, graphic and/or computer-stored matter, such as:  correspondence, faxes, memoranda, notes, desk calendars, pocket calendars, logs, drafts, work papers, drawings or sketches; minutes or recordings of meetings, conversations or telephone calls (whether recorded in writing, mechanically or electronically); desk files, appointment books, appraisals, articles from publications, books, books of account, account statements, confirmations; records, studies, analyses, reports, forecasts and schedules; surveys, invoices, receipts, bank statements and check stubs; databases, computer files, CD-ROM, computer data, computer printouts and emails (including "sent" emails, deleted but recoverable emails, and filed or archived emails); financial statements, balance sheets, profit and loss statements, statements of earnings, statements of assets, statements of net worth, statements of operations, credit reports, audit reports and financial summaries; affidavits, other sworn statements, and transcripts of testimony; figures, statistics, agreements, government filings, inquiries and reports; contracts, assignments and transfers; expense reports, photographs, slides, films and videos.  "Document" also means an authentic copy where the original is not in Plaintiff's possession, custody or control and every copy of a document where the copy is not an identical duplicate of the original.

B.    "Concerning" means, without limitation, referring to, relating to, constituting, discussing, addressing, covering or supporting or contradicting, directly or indirectly, in any way.

5

C.      The term "the Trust," as used herein, shall mean the Thomas M. Wheeler Revocable Trust created by Decedent, originally dated April 9, 1986, as Amended and Restated.

D.      The term "Decedent," as used herein, shall mean Thomas M. Wheeler.

E.      The term "Petition," as used herein, shall mean the "Original Petition for Declaratory Judgment" filed by Petitioners herein on or about February 19, 2008.

F.      The term "Petitioners" (also, as appropriate "you" or "your"), as used herein, shall collectively mean the petitioners herein, namely, Thomas R. Wheeler, Michaelon A. Wright and Lisa W. Huzella, in both their individual and their fiduciary capacities.

G.      The term "Respondents," as used herein, shall collectively mean the named individual respondents herein, namely, Krystal Wheeler, Tiffany M. Wheeler, and Charlene Royce, as Mother and Legal Guardian of Tiffany Wheeler at the time of commencement of the action.

H.      The term "Sanders Response," as used herein, shall refer to the unverified "Response to Motion for Special Appearance Pursuant to TCRP 120a; Response to Plea to the Jurisdiction pursuant to TCRP 85; Response to Plea in Abatement; and Response to Original Answer," submitted herein on behalf of Petitioners and executed by their attorney, Amy Stewart Sanders, and served on or about April 29, 2008.

I.      The term "TMW", as used herein, shall refer to TMW Enterprises, Inc., presently with offices located at 201 West Big Beaver, Suite 201, Troy, Michigan 48084, and any and all predecessor and affiliate companies and entities, wherever located and of whatever name.

**III.**
**Requests for Production of Documents,**
**Propounded Subject to Respondents' Special Appearances**

**Request for Production No. 1:**  Produce any and all documents showing that Decedent was physically present in El Paso County, Texas at any time between February 9, 2002 and February 9, 2007.

*Response:*


**Request for Production No. 2:**  Produce any and all documents supporting your contention that Decedent was domiciled in Texas for the last twenty (20) years of his life, as alleged in the Sanders Response (¶ 8, p.5).

*Response:*


**Request for Production No. 3:**  Produce any and all documents supporting your contention that Decedent was domiciled in El Paso County for the last twenty (20) years of his life, as alleged in the Sanders Response (¶ 8, p.5).

*Response:*


**Request for Production No. 4:**  Produce any and all documents containing or evidencing any statement or declaration by or on behalf of Decedent (a) to the effect that he intended to reside in Texas or in any other state, including, without limitation, Michigan, Florida and Colorado, or (b) as to what his mental attitude or personal feelings were towards Texas or any other state, including, without limitation, Michigan, Florida and Colorado.

*Response:*


**Request for Production No. 5:**  Produce any and all documents tending to show that at any time in the last ten (10) years of Decedent's life he resided in or was domiciled in any state other than Texas, regardless of whether he also resided in or was domiciled in Texas.

*Response:*


7

**Request for Production No. 6:** Produce all tax returns, whenever filed, submitted by or on behalf of Decedent to the I.R.S. or any state or local taxing authority for any year or other period of taxation within the last ten years of his life. This includes, without limitation, returns with respect to income, gift, real estate and any other taxes, and returns that were filed after Decedent's death for periods prior to his death.

*Response:*

**Request for Production No. 7:** Produce all tax returns, whenever filed, submitted by or on behalf of any entity owned or controlled by Decedent (including, without limitation, the Trust) to the I.R.S. or any state or local taxing authority for any year or other period of taxation within the last ten years of his life. This includes, without limitation, returns with respect to income, gift, real estate and any other taxes, and returns that were filed after Decedent's death for periods prior to his death.

*Response:*

**Request for Production No. 8:** Produce all calendars, appointment books, diaries, logs and documents of any kind whatsoever that record or reflect Decedent's planned or actual whereabouts, maintained at any time within the last ten years of his life.

*Response:*

**Request for Production No. 9:** Produce all flight records and/or pilot's logs created during the last ten years of Decedent's life concerning any private airplane used by Decedent or owned or leased by or on behalf of Decedent or any entity owned or controlled by him.

*Response:*

**Request for Production No. 10:** Produce all flight records and/or pilot's logs created during the last ten years of Decedent's life concerning any airplane pilot who was employed by or otherwise worked for Decedent with respect to flights made while employed by or working for Decedent.

*Response:*

**Request for Production No. 11:** Produce all records created during the last ten years of Decedent's life with respect to the mooring and all voyages of any and all yachts or vessels owned or leased by or on behalf of Decedent or any entity owned or controlled by him (including, without limitation, the Trust and TMW).

*Response:*

**Request for Production No. 12:** Produce all agreements or any other document signed by or on behalf of Decedent referring in any way to any residential or business address or any claimed domicile for him.

*Response:*

**Request for Production No. 13:** Produce all bills and other records evidencing that Decedent stayed at any hotel, resort or other short-term residence in El Paso or anywhere else.

*Response:*

**Request for Production No. 14:** Produce all legal memoranda and other communications from or to any legal counsel (a) for Decedent or on behalf of him or any entity owned or controlled by him or (b) for Petitioners, addressing in whole or part any advice with respect to the issue of Decedent's domicile at the time of his death or at any time within the last twenty (20) years of his life, including, without limitation, the review conducted by "[l]egal counsel for Petitioners," referred to in the Sanders Response (¶ 23, pp. 14-15) on the question of "whether it would be appropriate to file the Will for probate in Florida, Michigan and other venues" and "determin[ing] that it would not be appropriate because Decedent was domiciled in Texas for approximately twenty years prior to and on the date of his death."

*Response:*

**Request for Production No. 15:** Produce any and all documents reflecting or relating in any way to (a) any litigation to which the Decedent was a party or in which he gave testimony, in written or oral form, at any time within ten (10) years of his death, and (b) any litigation in which any entity owned or controlled by Decedent was a party within the same period.

*Response:*

**Request for Production No. 16:**  Produce any and all documents reflecting the location of all personal or real property owned or controlled by (a) Decedent, (b) the Trust or (c) any other entity owned or controlled by Decedent during the last five (5) years of his life.

*Response:*

**Request for Production No. 17:**  Produce any and all documents reflecting all memberships held by or on behalf of Decedent or any entity owned or controlled by him in or on (a) any private, social or athletic club, (b) any civic or political organization or board, (c) any church, congregation or religious institution, (d) any charitable or non-profit organization or (e) the board of directors or governing body of any for-profit or non-profit organization, during the last ten (10) years of his life.

*Response:*

**Request for Production No. 18:**  Produce all documents reflecting contributions made by or on behalf of Decedent or any entity owned or controlled by him to any (a) charitable organization, (b) any civic or political organization, group, candidate or entity, and/or (c) any educational institution.

*Response:*

**Request for Production No. 19:**  Produce any and all documents constituting records of all bank accounts maintained by or for the benefit of Decedent, including, without limitation, all bank statements and copies of all cancelled checks.

*Response:*

**Request for Production No. 20:**  Produce any and all documents constituting records of (a) all securities or brokerage accounts and (b) charge accounts maintained by or for the benefit of Decedent, including, without limitation, all monthly or other statements.

*Response:*

**Request for Production No. 21:**  Produce any and all documents indicating the location at which documents were maintained by or for Decedent evidencing ownership by him, the Trust or any other entity owned or controlled by him of intangible property, including, without limitation, shares of stock, bonds, partnership interests, notes receivable and other securities and rights in intangible property.

*Response:*

10

**Request for Production No. 22:**  Produce any and all powers of attorney signed by or on behalf of Decedent at any time within the last twenty (20) years of his life, including, without limitation, all authorizations given by him designating another person or persons to sign checks or authorize payments for him from any account held by or for him or any entity owned or controlled by him (including, without limitation, the Trust).

*Response:*


**Request for Production No. 23:**  Produce any and all documents relating to any real property in El Paso, Texas owned or leased by Decedent at any time during the last twenty (20) years of his life, including, without limitation, the "home" alleged in the Sanders Response to have been sold by Decedent in 2004 (¶ 8, p. 6).

*Response:*


**Request for Production No. 24:**  Produce any and all documents relating to (a) the real property in El Paso, Texas where Lizeth Modesto presently resides (whether at 6616 Wind Ridge or elsewhere) and (b) the home (and architectural plans therefor) that the Sanders Response alleges Decedent "intended to build on Singing Hills in El Paso County, Texas, and in which he and Ms. Modesto would reside" (¶ 8, p. 6).

*Response:*


**Request for Production No. 25:**  Produce any and all documents relating to any right of possession in the residence of Lizeth Modesto (whether at 6616 Wind Ridge or elsewhere) that Decedent had or claimed at the time of his death.

*Response:*


**Request for Production No. 26:**  Produce any and all documents relating to any and all gifts or payments ever made at any time by or on behalf of Decedent to or for the benefit of Ms. Modesto, described in the Sanders Response and other submissions by Petitioners as Decedent's "companion" (¶ 13, p. 9), including, without limitation, any gift tax return ever filed with respect to any such gift or payment.

*Response:*

**Request for Production No. 27:** Produce any and all documents relating to all communications between Ms. Modesto and any of Petitioners or any of their representatives or attorneys at any time, including both prior to and after Decedent's death.

*Response:*

**Request for Production No. 28:** Produce any and all documents relating to any and all gifts or payments of any kind ever made to or for the benefit of Ms. Modesto by or on behalf of any of Petitioners at any time, prior to or after Decedent's death.

*Response:*

**Request for Production No. 29:** Produce any and all documents substantiating the contention in the Sanders Response that Ms. Modesto is "the person who is in the best position to know where Decedent was domiciled at the time of his death" (¶ 14, p. 10).

*Response:*

**Request for Production No. 30:** Produce any and all calendars, appointment books, diaries and other documents reflecting the whereabouts of Ms. Modesto during the last five (5) years of Decedent's life.

*Response:*

**Request for Production No. 31:** Produce any and all documents relating to the location of any office maintained by, for or on behalf of Decedent, or at which his personal or business affairs were handled, during the last five (5) years of his life.

*Response:*

**Request for Production No. 32:** Produce any and all documents describing the role and responsibilities of Margaret Bargardi in connection with Decedent's affairs at any time during the last ten (10) years of his life.

*Response:*

**Request for Production No. 33:** Produce any and all documents relating to real property other than in El Paso, Texas that was owned or leased by Decedent or any entity owned or controlled by him (including the Trust) at any time during the last twenty (20) years of his life.

*Response:*

**Request for Production No. 34:** Produce any and all documents relating to the real property located at 530 North Ocean Drive, Unit 1003, Juno Beach, Florida 33408, that is referred to in the death certificate filed with respect to Decedent in the State of Florida.

*Response:*

**Request for Production No. 35:** Produce any and all documents relating to the real property in Florida that the Sanders Response alleges Decedent intended to purchase (¶ 10, p. 7), including, without limitation, all correspondence and agreements with respect thereto.

*Response:*

**Request for Production No. 36:** Produce any and all documents, whenever created, relating to the condominium at 5568 Pine Brooke, Bloomfield, Michigan, including without limitation, documents evidencing the purchase of such property by Decedent or the Trust and the use and/or maintenance of such condominium during the last five(5) years of Decedent's life.

*Response:*

**Request for Production No. 37:** Produce all documents evidencing the location of all property listed on the "Inventory, Appraisement and List of Claims" filed with this Court on February 11, 2008 (the "Inventory").

*Response:*

**Request for Production No. 38:** Produce all documents (a) identifying the "miscellaneous household goods, furnishings and personal effects" listed on the Inventory, and any documents indicating whether any of such personal property had previously been located in Texas or was moved from Texas and (b) identifying (i) any personal property formerly located at the "home" in El Paso allegedly sold in 2004 (Sanders Response ¶ 8, p. 6), (ii) the present location of such property and (iii) whether such property was moved outside the State of Texas after the aforementioned "home" was sold.

*Response:*

13

**Request for Production No. 39:**  Produce all documents relating to Palm Beach Gardens, LLC and any property owned or contemplated to be owned by it, including, without limitation, all documents concerning the formation of that company or Decedent's interest therein.

*Response:*


**Request for Production No. 40:**  Produce all documents concerning the note receivable from "a Michigan limited liability company" reflected on the Inventory.

*Response:*


**Request for Production No. 41:**  Produce all documents concerning the "57% interest in Huzella Development Company" reflected on the Inventory.

*Response:*


**Request for Production No. 42:**  Produce any documents showing that Decedent paid real property taxes in El Paso County, Texas at any time during the last fifteen (15) years of his life.

*Response:*


**Request for Production No. 43:**  Produce any documents showing that Decedent paid real property taxes in any state other than Texas (including, without limitation, Michigan, Florida, Colorado and New York) at any time during the last fifteen (15) years of his life.

*Response:*


**Request for Production No. 44:**  Produce all driver's licenses or renewals issued to Decedent, and applications therefor submitted by him or on his behalf, by any state at any time during the last fifteen (15) years of his life.

*Response:*


**Request for Production No. 45:**  Produce a copy of any voter registration or related document issued to Decedent by any state or local government, or application therefor, at any time during the last fifteen (15) years of his life.

*Response:*

14

**Request for Production No. 46:**  Produce any documents showing when and where during the last five years of Decedent's life he actually (a) drove a car or other vehicle or (b) voted in an election in any state or locality that required him to be registered to vote.

*Response:*

**Request for Production No. 47:**  Produce a copy of all bills and/or statements from any telephone company (including, without limitation, cellular service), Internet provider or other communications company, reflecting telephone calls or Internet usage made or incurred by Decedent, whether such bills or statements were addressed to him personally or to some other person or entity on his behalf.

*Response:*

**Request for Production No. 48:**  Produce all documents evidencing all telephone numbers of all telephone lines (cellular or otherwise) that were registered/assigned to Decedent or known to have been used by him in the last five (5) years of his life.

*Response:*

**Request for Production No. 49:**  Produce any billing and insurance records or other documents indicating that Decedent obtained medical treatment in El Paso County, Texas at any time during the last five (5) years of his life.

*Response:*

**Request for Production No. 50:**  Produce all billing and insurance records or other documents concerning Decedent's medical treatment in locations other than El Paso County, Texas at any time during the last five (5) years of his life, including, without limitation, treatment at (i) the Cleveland Clinic in Cleveland, Ohio, (ii) any of the Beaumont Hospitals in southeastern Michigan, (iii) any of the Mayo Clinics, in Arizona, Minnesota or elsewhere and (iv) the Good Samaritan Medical Center in West Palm Beach, Florida.

*Response:*

**Request for Production No. 51:**  Produce all medical records and bills for all medical services rendered to Decedent during the last five (5) years of his life.

*Response:*

**Request for Production No. 52:**  Produce all medical records and bills for all medical services rendered to Decedent as a result of his final illness or concerning his treatment for renal cancer.

*Response:*


**Request for Production No. 53:**  Produce all documents concerning bills or statements for legal services rendered by any lawyer or firm during the last five (5) years of Decedent's life to or for the benefit of Decedent or any entity owned or controlled by him (including, without limitation, the Trust, TMW, Palm Beach Gardens LLC, and Huzella Development Company) or paid by or on behalf of him or any such entity.  This request includes, without limitation, bills rendered after Decedent's death for services rendered prior to his death.

*Response:*


**Request for Production No. 54:**  Produce all documents concerning the recitation in the purported Last Will and Testament dated January 6, 2007, which was offered for and admitted to probate in this Court (the "Will"), that Decedent was "of the City of Palm Beach Gardens, County of Palm Beach, and the State of Florida."

*Response:*


**Request for Production No. 55:**  Produce all wills, codicils and other testamentary instruments executed or prepared for Decedent at any time during the last twenty (20) years of his life (including all drafts of such instruments) that contain a recitation of his address, residence or domicile.

*Response:*


**Request for Production No. 56:**  Produce all documents concerning Decedent's travel to Florida in the final week of his life, and his whereabouts at all times from when he left Fountain Hills, Arizona until he died.

*Response:*


**Request for Production No. 57:**  Produce all documents concerning any communication by or to Decedent during the last week of his life.

*Response:*

**Request for Production No. 58:** Produce all documents concerning (a) the initial completion of the death certificate with respect to Decedent filed in the State of Florida and (b) the amendment thereof.

*Response:*


**Request for Production No. 59:** Produce all documents concerning the "Notice of Change of Situs" executed by each of Petitioners on May 24, 2007, and the reasons for such notice and for designating that it be effective on February 9, 2007, the date of Decedent's death.

*Response:*


**Request for Production No. 60:** Produce all documents concerning any deliberations conducted or consideration undertaken at any time (prior to or after Decedent's death) by Petitioners or their attorneys or other representatives with respect to filing the Will in Florida, Michigan or any other state.

*Response:*


**Request for Production No. 61:** Produce all documents concerning any deliberations conducted or consideration undertaken at any time (prior to or after Decedent's death) by Petitioners or their attorneys or other representatives with respect to Decedent's domicile.

*Response:*


**Request for Production No. 62:** Produce all contracts and agreements executed by Decedent, or on Decedent's behalf, for the purchase of real estate intended to be used as a residence in any state within the United States during the last twenty (20) years of Decedent's life.

*Response:*


Dated: El Paso, Texas
       May 7, 2008

                    Respectfully submitted,

                    RINCON MOUNTS, P.C.
                    1014 North Mesa Street, Suite 200
                    El Paso, Texas 79902
                    (915) 532-6800 (Telephone)
                    (915) 532-6808 (Facsimile)

By: _____

CARLOS RINCON
State Bar No. 16932700
JOHN L. ANDERSON
State Bar No. 24011465

and

MAX HIGGS LAW OFFICE
615 E. Schuster, Building 6
El Paso, Texas 79902
(915) 351-1963 (Telephone)
(915) 975-6529 (Facsimile)

By: _____

MAX D. HIGGS, ESQ.
State Bar No. 09603500

*Attorneys for Respondents Krystal Wheeler, Tiffany Wheeler and Charlene Royce, Mother and Natural Guardian of Tiffany Wheeler*

18

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served by hand delivery on this ___7th___ day of May 2008 to:

Ms. Amy Stewart Sanders
Ryan Sanders & Gluth, L.L.P.
310 North Mesa Street, Suite 300
El Paso, Texas 79901
*Attorneys for Petitioners*

Mr. Robert Warach
Robert Warach & Associates
7300 Viscount Blvd., Suite 101
El Paso, Texas 79925

CARLOS RINCON

IN THE STATUTORY PROBATE COURT NO. 2

EL PASO COUNTY, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE | § | |
| | § | |
| OF | § | NO. 2007-P00529-A[1] |
| | § | |
| THOMAS M. WHEELER, Deceased. | § | |

---

## <u>CERTIFICATE OF WRITTEN DISCOVERY</u>

Undersigned counsel hereby certifies that the following instrument(s) were served upon counsel of record on the 7<u>th</u> day of <u>May</u>, 2008:

1.   Respondents' First Requests for Production of Documents by Petitioners Relating to Decedent's Domicile, Propounded Subject to Respondents' Special Appearances.

Dated: May 7, 2008, El Paso, Texas.

Respectfully submitted,

RINCON MOUNTS, P.C.
1014 North Mesa Street, Suite 200
El Paso, Texas 79902
(915) 532-6800
(915) 532-6808 (fax)

By: _____
Carlos Rincon
State Bar No. 16932700
John Anderson
State Bar No. 24011465

and

---

[1] Although Petitioners have not modified the cause number to reflect that this action is derivative of the underlying probate action, Respondent does so at this time.

{RM Files\0102\0001\00029914.DOC /}

MAX HIGGS LAW OFFICE
615 E. Schuster, Bldg. 6
El Paso, Texas 79902
(915) 351-1963
(915) 975-6529 (fax)


By: _____

Max D. Higgs, Esq.
State Bar No. 09603500

*Attorneys for Respondents Krystal Wheeler, Tiffany Wheeler, and Charlene Royce, Mother and Natural Guardian of Tiffany Wheeler*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on this 7th day of May, 2008 to the following individuals:

Ms. Amy Stewart Sanders
Ryan & Sanders, L.L.P.
310 N. Mesa St., Suite 300
El Paso, Texas 79901
*Attorneys for Petitioners*

Mr. Robert Warach
Robert Warach & Associates
7300 Viscount Blvd., Suite 101
El Paso, Texas 79925


_____

Carlos Rincon

# SANDERS AFFIDAVIT

# EXHIBIT 4

IN THE STATUTORY PROBATE COURT NO. 2

EL PASO COUNTY, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE | § | |
| | § | |
| OF | § | NO. 2007-P00529-A |
| | § | |
| THOMAS M. WHEELER, Deceased. | § | |

---

## Respondents' First Interrogatories to Petitioners Relating to Decedent's Domicile, Propounded Subject to Respondents' Special Appearances

COME NOW Respondents, Krystal Wheeler, Tiffany Wheeler and Charlene Royce ("Respondents"), and, subject to Respondent's special appearance and pursuant to Rule 197 of the Texas Rules of Civil Procedure, hereby serve their First Interrogatories to Petitioners Relating to Decedent's Domicile, Propounded Subject to Respondents' Special Appearances.

### I.
### Instructions

Petitioners, Thomas R. Wheeler, Michaelon A. Wright and Lisa W. Huzella, are requested to serve a written response to the following Interrogatories to Respondent's undersigned counsel within thirty (30) days after service of these Interrogatories in accordance with the terms, provisions and requirements of Rules 191, 192, 197.2, and other applicable Rules of the Texas Rules of Civil Procedure.

Pursuant to Rule 193.1, when responding to written discovery, a party must make a complete response based on all information reasonably available to the responding party or its attorney at the time the response is made.

The responding party's answers, objections, and other responses must be preceded by the request to which they apply.

If, in responding to these Interrogatories, you produce or reference records or a compilation, abstract or summary of the records pursuant to the provisions of Rule 197.2(c), such records must be specified in sufficient detail to permit the requesting party to locate and identify them as readily as can the responding party.

VERIFICATION REQUIRED:  The Interrogatories must be answered under oath excepting those matters described by Rule 197.2(d).

SUPPLEMENTATION REQUIRED:  If a party learns that the party's response to written discovery was incomplete or incorrect when made, or, although complete and correct when made, is no longer complete and correct, the party must amend or supplement the response in accordance with Rule 193.5.

The responding party should also abide by the following instructions:

1.      If you object to any part of an Interrogatory, answer all parts of the Interrogatory to which you do not object, and as to each part to which you do object, set forth the basis for the objection.

2.      When a response to an Interrogatory requires the identification of a business organization, the Interrogatory shall be interpreted so as to also require the answering party to identify any natural person who acted as an agent for that business entity with respect to matters that are relevant to the Interrogatory involved.

3.      If you refuse to respond to any Interrogatory on the grounds that it seeks privileged information, specify the exact ground on which the claim of privilege is based, and with regard to such claimed privileged documents and communications set forth: (i) the date of each document or communication; (ii) the nature or type of each document or communication (*i.e.,* letter, memorandum, report, telephone conversation, etc.); (iii) the identities of the speaker

2

or author and the hearing recipients of each oral or written document; (iv) the identities of the

parties to each oral communication; and (v) the general subject matter of each document or

communication.

4.      These Interrogatories shall be deemed continuing until the time of trial.

5.      Unless otherwise indicated, the time period covered by these Interrogatories is

February 9, 2002 to February 9, 2007.

## II.
## DEFINITIONS

A.      "Concerning" means relating to, referring to, describing, evidencing, or

constituting.

B.      The term "document" includes, but is not limited to, any written, printed, typed,

recorded, videotaped, filmed, punched, transcribed, taped or other graphic matter of any kind or

nature held or produced or reproduced, whether sent or received, including the original, drafts,

copies and non-identical copies bearing notation or marks not found on the original, and

includes, but is not limited to, all correspondence, records, drawings, calculations, memoranda,

reports, financial statements, telegrams, cables, contracts, tabulations, studies, analyses,

evaluations, work appointment books, diaries, comparisons, questionnaires, surveys, charts,

graphs, books, pamphlets, booklets, articles, magazines, newspapers, microfilm, microfiche,

photographs, tapes or other recordings, punched cards, magnetic tapes, discs, printouts, computer

generated reports and printouts, other data compilations from which information can be obtained,

and includes all such documents that are in your possession, custody or control, or to which you

otherwise have access.

C.      "Communication" means the exchange of information by any means of transmission, including without limitation face-to-face conversation, mail, overnight delivery, Internet, telephone, electronic mail, or facsimile.

D.      When referencing a person, "identify" means to provide the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.   When referencing a communication, transaction, occurrence, or instance of any behavior, "identify" means to provide the date, persons involved, place of occurrence, and a complete description of the communication, transaction, occurrence, or instance of behavior and all documents related thereto.

E.      The words "and", "or", "any" and "all" shall be construed in their broadest form and the singular shall include the plural and the plural shall include the singular whenever necessary so as to bring within the scope of these Interrogatories requests all information that might otherwise be construed to be outside their scope.

F.      "Person" means any natural person or any business, legal or governmental entity or association.

G.      The term "the Trust," as used herein, shall mean the Thomas M. Wheeler Revocable Trust created by Decedent, originally dated April 9, 1986, as Amended and Restated.

H.      The term "Decedent," as used herein, shall mean Thomas M. Wheeler.

I.      The term "Petition," as used herein, shall mean the "Original Petition for Declaratory Judgment" filed by Petitioners herein on or about February 19, 2008.

J.      The term "Petitioners" (also, as appropriate "you" or "your"), as used herein, shall collectively mean the petitioners herein, namely, Thomas R. Wheeler, Michaelon A. Wright and Lisa W. Huzella, in both their individual and their fiduciary capacities.

4

K.    The term "Respondents," as used herein, shall collectively mean the named individual respondents herein, namely, Krystal Wheeler, Tiffany M. Wheeler, and Charlene Royce, as Mother and Legal Guardian of Tiffany Wheeler at the time of commencement of the action.

L.    The term "Sanders Response," as used herein, shall refer to the unverified "Response to Motion for Special Appearance Pursuant to TCRP 120a; Response to Plea to the Jurisdiction pursuant to TCRP 85; Response to Plea in Abatement; and Response to Original Answer," submitted herein on behalf of Petitioners and executed by their attorney, Amy Stewart Sanders, and served on or about April 29, 2008.

M.    The term "TMW", as used herein, shall refer to TMW Enterprises, Inc., presently with offices located at 201 West Big Beaver, Suite 201, Troy, Michigan 48084, and any and all predecessor and affiliate companies and entities, wherever located and of whatever name.

### III.
### Respondent Krystal Wheeler's First Interrogatories to Petitioners, Propounded Subject to Respondent's Special Appearance

**Interrogatory No. 1:** Identify and describe the factual and legal basis of your contention that Decedent's domicile was in El Paso, Texas for the last twenty (20) year of his life, as alleged in the Sanders Response (¶ 8, p.5).

*Response:*


**Interrogatory No. 2:** Identify with as much specificity as possible all dates and times on which Decedent was physically present in El Paso, Texas between February 9, 2002 and February 9, 2007, and briefly describe your bases for such factual contentions.

*Response:*


**Interrogatory No. 3:** Identify—by listing the full name, address, and telephone number of—each person you intend to call as a witness at the hearing, presently scheduled for June 16, 2008,

on the issue of Decedent's domicile, and give a brief description of the matter(s) upon which you believe each such person will testify.

*Response:*

**Interrogatory No. 4:** Identify any statements made by Decedent or on his behalf (a) to the effect he intended to reside in Texas or in any other state, including, without limitation, Michigan, Florida, Colorado, or Nevada, or (b) as to what his mental attitude or personal feelings were towards Texas or any other state.

*Response:*

**Interrogatory No. 5:** Describe the factual and legal bases for your contention that Decedent's "principal property," "principal estate" and/or "nearest of kin"—as those terms are used in Section 6 of the Texas Probate Code—were, or are, located in El Paso County, Texas.

*Response:*

**Interrogatory No. 6:** Describe the review conducted by "legal counsel for Petitioners," referred to in the Sanders Response (¶ 23, pp 14-15) on the question of "whether it would be appropriate to file the Will for probate in Florida, Michigan, or other venues," and identify the reasons for which it was determined that filing the Will for probate in any state other than Florida was inappropriate.

*Response:*

**Interrogatory No. 7:** Identify any and all property belonging to Decedent's estate or the Trust, whether tangible or intangible, real or personal, which you believe is situated in El Paso County, Texas (including, without limitation, the property described in the Inventory as bank accounts at "Bessemer Trust" and "Huntington National Bank," "miscellaneous household goods, furnishings and personal effects," "notes receivable" from "a Michigan limited liability company" and from "TMW Imuebles, S. de R.L. de C.V.," tax refunds from Michigan and Colorado," a "retainer credit for prepayment of legal services Greenberg Trager & Herbst LLP," and a "75% interest in Huzella Development Company") and identify any and all legal and factual grounds for your contention that any such property is located in El Paso County, Texas.

*Response:*

6

**Interrogatory No. 8:** Identify any and all property belonging to Decedent's estate or the Trust, whether tangible or intangible, real or personal (including, without limitation, the property described in the Inventory as bank accounts at "Bessemer Trust" and "Huntington National Bank," "miscellaneous household goods, furnishings and personal effects," "notes receivable" from "a Michigan limited liability company" and from "TMW Imuebles, S. de R.L. de C.V.," tax refunds from Michigan and Colorado," a "retainer credit for prepayment of legal services Greenberg Trager & Herbst LLP," and a "75% interest in Huzella Development Company"). For each piece of property of you have listed, identify the state or states where you contend that piece of property is located, and identify any and all legal and factual grounds for your contention.

*Response:*

**Interrogatory No. 9:** With respect to any item of property not identified in Interrogatories Nos. 7 and 8, identify any and all property, whether tangible or intangible, real or personal, which belonged to Decedent or to any entity controlled by Decedent during the period from February 9, 2002 to February 9, 2007. For each piece of property of you have listed, identify the state or states where you contend that piece of property is located, and identify any and all legal and factual grounds for your contention. For each piece of property listed, identify any and all factual and legal reasons why it does not belong to Decedent's Estate or the Trust at present. If the property was sold, gifted, or otherwise transferred to another person, identify the person to whom it was sold, gifted or otherwise transferred.

*Response:*

**Interrogatory No. 10:** Identify all legal and factual reasons for the purported selection of Texas as the "situs and place of administration" by the "Notice of the Change of Situs" executed by Respondents on May 24, 2007, and identify all legal and factual reasons why the selection was retroactively designated to be effective from February 9, 2007, the date of Decedent's death.

*Response:*

**Interrogatory No. 11:** Identify all legal and factual bases for your contention that "situs and place of administration" of the Trust is presently in Texas, and has been in Texas since February 9, 2007.

*Response:*

7

**Interrogatory No 12:**    Identify all legal and factual grounds for the identification of the Decedent's state of domicile as Florida in the initial completion of the death certificate with respect to Decedent filed in the State of Florida, and identify all legal and factual grounds for the amendment thereof.

*Response:*

**Interrogatory No. 13:** Describe the factual and legal bases for your contention that the Court, in this independent administration, has jurisdiction to consider and rule upon Petitioners' requests for any relief.

*Response:*

**Interrogatory No. 14:** Describe the nature of the relationship between Decedent and Lizeth Modesto, including, without limitation, (1) any and all financial arrangements or transactions between Decedent and Ms. Modesto at any time, (2) the nature and character of their personal relationship, (3) the dates and locations of their spending time together, and (4) the basis for the contention in the Sanders Response that Ms. Modesto is "the person who is in the best position to know where Decedent was domiciled at the time of his death" (¶ 14, p.10).

*Response:*

**Interrogatory No. 15:** Describe the nature of the relationship between any of Petitioners and Lizeth Modesto within the last five years, and identify, without limitation, (1) any financial arrangement or transactions between any of them and Ms. Modesto during this period and (2) any communications between any of them and Ms. Modesto during this period.

*Response:*

**Interrogatory No. 16:** Identify any and all memberships held by or on behalf of Decedent or any entity owned or controlled by him in or on (a) any private, social or athletic club, (b) any civic or political organization or board, (c) any church, congregation or religious organization, (d) any charitable or non-profit organization or (e) the board of director or governing body for any for-profit or non-profit organization, during the last ten (10) years of his life.

*Response:*

8

**Interrogatory No. 17:** Identify any contributions made by or on behalf of Decedent or any entity controlled or owned by him to any (a) charitable organization, (b) any civic or political organization, group, candidate or entity, and/or (c) any education institution.

*Response:*

Dated: El Paso, Texas
      May 8, 2008

                Respectfully submitted,

                RINCON MOUNTS, P.C.
                1014 North Mesa Street, Suite 200
                El Paso, Texas 79902
                (915) 532-6800 (Telephone)
                (915) 532-6808 (Facsimile)

By:                  
                CARLOS RINCON
                State Bar No. 16932700
                JOHN L. ANDERSON
                State Bar No. 24011465

                and

                MAX HIGGS LAW OFFICE
                615 E. Schuster, Building 6
                El Paso, Texas 79902
                (915) 351-1963 (Telephone)
                (915) 975-6529 (Facsimile)

By:                  
                MAX D. HIGGS, ESQ.
                State Bar No. 09603500

                *Attorneys for Respondents*

9

## CERTIFICATE OF SERVICE

     I certify that a true and correct copy of the foregoing instrument was served on this _8th_ day of May, 2008 to:

Ms. Amy Stewart Sanders
Ryan Sanders & Gluth, L.L.P.
310 North Mesa Street, Suite 300
El Paso, Texas 79901

Mr. Robert Warach
Robert Warach & Associates
7300 Viscount Blvd., Suite 101
El Paso, Texas 79925

Carlos Rincon

IN THE STATUTORY PROBATE COURT NO. 2

EL PASO COUNTY, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE | § | |
| | § | |
| OF | § | NO. 2007-P00529-A[1] |
| | § | |
| THOMAS M. WHEELER, Deceased. | § | |

## **CERTIFICATE OF WRITTEN DISCOVERY**

Undersigned counsel hereby certifies that the following instrument(s) were served upon counsel of record on the 8th day of May, 2008:

1. Respondents' First Interrogatories to Petitioners Relating to Decedent's Domicile, Propounded Subject to Respondents' Special Appearances.

Dated: May 8, 2008, El Paso, Texas.

Respectfully submitted,

RINCON MOUNTS, P.C.
1014 North Mesa Street, Suite 200
El Paso, Texas 79902
(915) 532-6800
(915) 532-6808 (fax)

By: _____
Carlos Rincon
State Bar No. 16932700
John Anderson
State Bar No. 24011465

and

---

[1] Although Petitioners have not modified the cause number to reflect that this action is derivative of the underlying probate action, Respondent does so at this time.

{RM Files\0102\0001\00029983.DOC /}

MAX HIGGS LAW OFFICE
615 E. Schuster, Bldg. 6
El Paso, Texas 79902
(915) 351-1963
(915) 975-6529 (fax)


By: _____

Max D. Higgs, Esq.
State Bar No. 09603500

*Attorneys for Respondents Krystal Wheeler, Tiffany
Wheeler, and Charlene Royce, Mother and Natural
Guardian of Tiffany Wheeler*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on this ____8th____ day of May, 2008 to the following individuals:

Ms. Amy Stewart Sanders
Ryan & Sanders, L.L.P.
310 N. Mesa St., Suite 300
El Paso, Texas 79901
*Attorneys for Petitioners*

Mr. Robert Warach
Robert Warach & Associates
7300 Viscount Blvd., Suite 101
El Paso, Texas 79925


_____

Carlos Rincon